**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Blair E. Reed (State Bar No. 316791)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            jsmith@bursor.com
            breed@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (Pro Hac Vice Forthcoming)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENTINO JAVIER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSURANCE IQ, LLC and ACTIVEPROSPECT INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Florentino Javier ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendants Assurance IQ, LLC ("Assurance IQ") and ActiveProspect Inc. ("ActiveProspect") (collectively, "Defendants") for wiretapping the electronic communications of visitors to Defendant Assurance IQ's websites, Assurance.com and Nationalfamily.com (collectively, the "Websites").[1] The wiretaps, which are embedded in the computer code on the Websites, are used by Defendants to secretly observe and record website visitors' keystrokes, mouse clicks,[2] and other electronic communications, including the entry of Personally Identifiable Information ("PII") and Protected Health Information ("PHI"), in real time. By doing so, Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 and invaded Plaintiff's and class members' privacy rights in violation of the California Constitution. Assurance IQ also has violated Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56, *et seq.*

2. In January 2019, Mr. Javier visited Nationalfamily.com. During this visit, Defendants Assurance IQ and ActiveProspect recorded Mr. Javier's electronic communications in real time, used the intercepted data to attempt to learn his identity, zip code, date of birth, height, weight, use of prescription medications and tobacco products, and other PII and PHI.

3. Plaintiff brings this action on behalf of himself and a class of all persons whose electronic communications were intercepted through the use of Defendants' wiretap on the Websites.

//

---

[1] NATIONAL FAMILY, https://app.nationalfamily.com/life?token=184410293-Wi6Hgnf41WcYc9eT-uddhtwJQNnu1S8dVGPtq98patUNRRZP65r7zJZpFa7XRXxM#life_control/Life_Landing_Currently_Insured (last accessed Apr. 17, 2020).

[2] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe," and similar gestures used on touchscreen devices.

# THE PARTIES

4. Plaintiff Florentino Javier is a California resident who lives in San Jose, California. In January 2019, prior to the filing of this lawsuit, Mr. Javier browsed Defendant Assurance IQ's website at Nationalfamily.com while investigating life insurance policies. Mr. Javier was in San Jose when he visited the website. During the visit, Mr. Javier's keystrokes, mouse clicks, and other electronic communications, including the entry of his name, zip code, date of birth, height, weight, information about his use of prescription medications and tobacco products, and other PII and PHI, were intercepted in real time and were disclosed to Assurance IQ and ActiveProspect through the wiretap. Mr. Javier was unaware at the time that his keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real-time and would be disclosed to ActiveProspect, nor did Mr. Javier consent to the same.

5. Defendant Assurance IQ is a Washington limited liability company with its principal place of business at 10500 Northeast 8th Street, Suite 1450, Bellevue, Washington 98004. It is a wholly owned subsidiary of Prudential Financial.

6. Assurance IQ describes itself on its website as a "leading insurance platform."

7. Assurance IQ does business throughout California and the entire United States.

8. Assurance IQ owns and operates Assurance.com.

9. As of at least January 2019, Assurance IQ owned and operated a website called Nationalfamily.com.

10. Defendant ActiveProspect is a Nevada corporation with its principal place of business at 4203 Guadalupe Street, Austin, Texas 78751.

11. ActiveProspect is a marketing software-as-a-service ("SaaS") company.

12. ActiveProspect provides a product called "TrustedForm," which is a "lead certification product that helps [businesses] comply with regulations like the [Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (hereinafter the "TCPA")] by documenting consumer consent."

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

14. This Court has personal jurisdiction over Defendants because each of the Defendants have purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of each of the Defendants' forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

15. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## STATEMENT OF FACTS

**Overview Of The Wiretaps**

16. Defendant ActiveProspect provides a variety of "real time" products for companies who engage in telemarketing.

17. One of ActiveProspect's products is called "TrustedForm," which purports to help businesses comply with the Telephone Consumer Protection Act by documenting evidence of consent to receive telemarketing calls.

18. On its website, ActiveProspect says that one of the "key features and benefits" of TrustedForm is the "VideoReplay" feature, which records, in real time, a website visitor's keystrokes, mouse clicks and other interactions with a website:

//
//
//
//
//
//

> **+ VideoReplay**
>
> Captures how the user interacted with the form, including data entries, mouse movements and mouse clicks, for the most authoritative proof of consent.

19. ActiveProspect also advertises other data that TrustedForm can acquire, including the "time on page," "lead age," and "geographic location of user":

> **+ WEBSITE OF ORIGIN**
> Tracking the true source of the lead is critical for campaign optimization. It allows you to identify your top performing sources and block leads originating from unwanted sources.
>
> **+ TIME ON PAGE**
> Capture the amount of time it takes for the consumer to fill out the lead form. Time on page is also a strong indicator of consumer intent and lead quality.
>
> **+ LEAD AGE**
> Know the real age of the lead you just received. Was this lead delivered in real-time or was it actually created a couple of days ago? Leads exceeding the age threshold can be blocked in real-time.
>
> **+ PRESENCE OF CONSENT**
> With our page scan feature you can verify that consent language was present on the form where the lead was collected, before you contact the lead.
>
> **+ GEOGRAPHIC LOCATION OF USER**
> Know where the user is actually filling out the lead form based on their IP address. Was this lead submitted in the US or India? Leads submitted from outside your desired geographic area can be flagged or blocked.

20. ActiveProspect instructs prospective partners to "simply paste the TrustedForm javascript into the html of your form page, and it will automatically generate a unique Certificate for every lead." "The script will pass the Certificate as a hidden field with the rest of the lead data."



21. This parcel of code allows Defendants to record the keystrokes, mouse clicks, data entry, and other electronic communications of visitors to websites where the code is installed. It also allows Defendants to track the "website of origin" (i.e., part of the visitors internet browsing history), amount of time spent on the website, geographic location of the visitor, and other information described above.

22. The recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with the Websites.

23. ActiveProspect's business model involves entering into voluntary partnerships with various companies and providing their software to their partners.

24. One of ActiveProspect's partners is Defendant Assurance IQ.

25. Assurance IQ utilizes TrustedForm on Assurance.com.

26. Assurance IQ utilizes TrustedForm on Nationalfamily.com.

27. Assurance IQ knows that TrustedForm captures the key strokes, mouse clicks and

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                               5

other communications of visitors to its website, and pays ActiveProspect to supply that information.

28. Pursuant to an agreement with ActiveProspect, Assurance IQ enabled TrustedForm by voluntarily embedding ActiveProspect's software code on Nationalfamily.com and Assurance.com.

29. As currently deployed, TrustedForm, as employed by Assurance IQ, functions as a wiretap.

**Defendants Wiretapped Plaintiff's Electronic Communications**

30. In January 2019, Plaintiff visited Nationalfamily.com.

31. During that visit, the TrustedForm VideoReplay feature created a video capturing Plaintiff's keystrokes and mouse clicks on the website.  The TrustedForm wiretap also captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, his location at the time of the visit, his browser type, and the operating system on his device.

32. When Plaintiff visited Nationalfamily.com, he was on the website for 3 minutes and 35 seconds.  The TrustedForm VideoReplay feature captured every second of that visit.  Still images of the video of Plaintiff's interactions on Nationalfamily.com are shown in the paragraphs that follow.

33. Beginning at approximately four seconds into the video, the TrustedForm video captures Plaintiff entering information about his gender:



34. Beginning at approximately eight seconds into the video, the TrustedForm video captures Plaintiff entering information about whether he smokes:



35. Beginning at approximately eleven seconds into the video, the TrustedForm video captures Plaintiff entering information about his marital status and children:

 

36. Beginning at approximately twenty-six seconds into the video, the TrustedForm product captures Plaintiff entering information about his age, which is redacted here:



37. Beginning at approximately thirty-two seconds into the video, the TrustedForm product captures Plaintiff entering information about his height and weight:



//
//
//
//
//

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                          8

1        38.     Beginning at approximately fifty-eight seconds into the video, the TrustedForm
product captures Plaintiff responding to a series questions about his medical history, including
whether Plaintiff suffered from anxiety or depression, heart or circulatory disorders, cancer, chronic
pain, diabetes, or other medical conditions.  Screenshots of those portions of the video are
intentionally excluded here.

         39.     Beginning at approximately 3 minutes and 5 seconds into the video, the
TrustedForm product captures Plaintiff entering his name and contact information, which is
partially redacted here:



         40.     As shown at the end of the video, at the end of the process, Plaintiff and class
members who visited the Websites were presented with the following message:

> By clicking 'View My Quote', IÂ [SIC] provide my electronic signature as
> an indication of my intent to agree to this website'sÂ [SIC] Privacy
> Policy,Â [SIC]Terms of Service, and expressly consent to receive
> marketing & telemarketing contact, including cellular phones, via
> automatic telephone dialing system, artificial/pre-recorded message
> (including pre-recorded messages using soundboard technology), email,
> and/or text message from insurance companies or their agents, the owner
> of this website, andÂ [SIC] partner companies, at the telephone number

and email address I have provided. I understand that my consent to receive communications in this manner is not required as a condition of purchasing any goods or services, my telephone company may impose charges for these contacts, and my consent can be revoked at any time. If you are Medicare-eligible a representative may call you about a Medicare Advantage plan, Medicare Prescription Drug plan, Medicare Supplement plan or other Medicare plans. Not affiliated with the United States Government or the federal Medicare program.

41. The above-quoted disclosure does not say anything about wiretaps, and by the time a visitor reaches this point in the process, the wiretap has already been deployed.

42. Assurance IQ did not tell visitors to its Websites that their keystrokes, mouse clicks and other communications were being recorded and shared with ActiveProspect. Alternatively, any purported disclosure was made *after* the wiretap had already begun.

43. Neither Plaintiff nor any Class member consented to being wiretapped on the Websites, or to have their communications recorded and shared with ActiveProspect. Any purported consent that was obtained was ineffective because (i) the wiretapping began from the moment Plaintiff and Class members accessed the Website; (ii) the Privacy Policy did not disclose the wiretapping or ActiveProspect; (iii) the Privacy Policy was located at bottom of the webpage or tucked away in obscure corners of the website where users were unlikely to see it; and (iv) the "consent" option at the end of the form on the Websites only discloses telemarketing communications and not wiretapping.

44. Any applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment of the facts alleged in this complaint. Plaintiffs and Class members could not have reasonably discovered the wiretapping at issue here, and Defendants' role in the wiretapping, until shortly before this class action litigation was commenced.

45. Visitors of NationalFamily.com and Assurance.com saw substantially the same messaging, with both websites asking similar questions. More importantly, both Websites utilized TrustedForm through ActiveProspect and the wiretap worked exactly the same no matter which site a person visited.

//
//

## CLASS ACTION ALLEGATIONS

46. Plaintiff seeks to represent a class all California residents who visited Assurance.com or Nationalfamily.com, and whose electronic communications were intercepted or recorded by ActiveProspect. Plaintiff reserves the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

47. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

48. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 and invaded Plaintiff's privacy rights in violation of the California Constitution; whether Assurance IQ violated Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56, *et seq.*; and whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

49. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited one of the Websites and had his electronic communications intercepted and disclosed to ActiveProspect through the use of ActiveProspect's wiretaps.

50. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

51. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation

necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

52. Plaintiff brings all claims in this action individually and on behalf of members of the Class against Defendants.

# COUNT I
## Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631

53. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

54. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

55. To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

56. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, --- F.3d --- 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

57. ActiveProspect's TrustedForm product is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

58. At all relevant times, by using ActiveProspect's technology, Defendants intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and class members on the one hand, and Assurance IQ's Websites on the other hand.

59. At all relevant times, by using ActiveProspect's technology, Defendants willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

60. Defendants aided, agreed with, and conspired with each other to implement ActiveProspect's technology and to accomplish the wrongful conduct at issue here. In addition, Assurance IQ employed ActiveProspect to accomplish the wrongful conduct at issue here.

61. Plaintiff and Class Members did not consent to any of Defendants' actions in implementing ActiveProspect's wiretaps on the Websites. Nor have Plaintiff or Class Members

consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiff and Class Members' electronic communications.

62. The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

63. Unless enjoined, Defendants will continue to commit the illegal acts alleged here. Plaintiff continues to be at risk because he frequently uses the internet to search for information about products or services.  He continues to desire to use the internet for that purpose, including for the purpose of shopping for various forms of insurance.  Defendant Assurance IQ operates different websites using various names, and partners with many other companies who operate their own websites, such as Allstate, Liberty Mutual, and AIG.  Defendant ActiveProspect provides its TrustedForm product to many other website operators who offer a wide array of services.  For many websites that Plaintiff may or is likely to visit in the future, he has no practical way to know if his website communications will be monitored or recorded by ActiveProspect, or by both Defendants.

64. Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

### COUNT II
### Invasion Of Privacy Under California's Constitution

65. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

66. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

67. Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII and PHI; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

68. At all relevant times, by implementing ActiveProspect's wiretaps on Assurance IQ's Websites, each Defendant intentionally invaded Plaintiff and Class Members' privacy rights under the California Constitution, and procured the other Defendant to do so.

69. Plaintiff and Class Members had a reasonable expectation that their PII, PHI, and other data would remain confidential and that Defendants would not install wiretaps on the Websites.

70. Plaintiff and Class Members did not consent to any of Defendants' actions in implementing ActiveProspect's wiretaps on the Websites.

71. This invasion of privacy is serious in nature, scope and impact.

72. This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

73. Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

## COUNT III
### Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq.*

74. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

75. Plaintiff brings this claim on behalf of himself and all members of the proposed Class against Defendant Assurance IQ.

76. Assurance IQ is a provider of a "health care service plan," within the meaning of Cal. Civ. Code § 56.05(g), and maintained and continues to maintain "medical information," within the meaning of Cal. Civ. Code § 56.05(j), of "enrollees" or "subscribers" of Assurance IQ, within the meaning of Cal. Civ. Code § 56.05(k).

77. Plaintiff and the Class members are "enrollees" or "subscribers" of Assurance IQ within the meaning of Cal. Civ. Code §§ 56.05(f) and 56.05(o) respectively, and are "endanger[ed]" within the meaning of Cal. Civ. Code § 56.05(e) because Plaintiff and the Class members fear that disclosure of their medical information could subject them to harassment or abuse.

78. Furthermore, Plaintiff and the Class members, as enrollees or subscribers of Assurance IQ, had their individually identifiable "medical information," within the meaning of Cal. Civ. Code § 56.05(j), created, maintained, preserved, and stored on Assurance IQ's computer network.

79. By allowing ActiveProspect to wiretap users on Assurance IQ's Websites, Defendant negligently created, maintained, preserved, stored, and then exposed Plaintiff and the Class members' "medical information," within the meaning of Cal. Civ. Code § 56.05(j), including Plaintiff and the Class members' medical history and mental or physical condition.

80. This information was "individually identifiable" within the meaning of Cal. Civ. Code § 56.05(j) because it included information such the names, addresses, electronic mail addresses, and telephone numbers of Plaintiff and Class members that "allow the identification of the individual."

81. Assurance IQ allowed Plaintiff and the Class members' medical information to become available to an unauthorized recipient, ActiveProspect, through ActiveProspect's wiretaps on the Websites.

82. Assurance IQ allowed to be published Plaintiff and the Class members' medical information to an unauthorized recipient, ActiveProspect, without the prior written authorization of Plaintiff and the Class, as required by Cal. Civ. Code § 56.10.

83. Assurance IQ's failure to obtain the written consent of Plaintiff and the Class members before allowing to be published Plaintiff and the Class members' medical information that was being shared with an unauthorized third party, ActiveProspect, without the prior written authorization of Plaintiff and the Class members, constitutes a negligent release of Plaintiff and the Class members' confidential, individual identifiable "medical information" to an unauthorized person or persons in violation of Cal. Civ. Code § 56.101 of CMIA.

84. Furthermore, Assurance IQ's publishing of Plaintiff and the Class members' medical information to an unauthorized recipient, ActiveProspect, was not permissible without written authorization from the Plaintiff and the Class members under any exemption under Cal. Civ. Code § 56.l0(c).

85. As a result of Assurance IQ's above-described conduct, Plaintiff and the Class members have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by CMIA.

86. Because Civil Code § 56.101 allows for the remedies and penalties provided under Cal. Civ. Code § 56.36(b), Plaintiff and the Class members seek statutory damages of one thousand dollars ($1,000) per violation under Cal. Civ. Code § 56.36(b)(1), and actual damages suffered, if any, pursuant to Cal. Civ. Code § 56.36(b)(2).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. For an order certifying the Class under Rule 23 and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b. For an order declaring that the Defendants' conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

| | |
|---|---|
| 1 | Dated: April 24, 2020 |

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    /s/ *Joel D. Smith*
        Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Blair E. Reed (State Bar No. 316791)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
       jsmith@bursor.com
       breed@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (Pro Hac Vice Forthcoming)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com

*Attorneys for Plaintiff*