1 | KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
2 | ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
3 | JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
4 | MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
5 | San Francisco, California  94105-2907
Telephone:    (415) 512-4000
6 | Facsimile:    (415) 512-4077

7 | NEFI D. ACOSTA (State Bar No. 311178)
nefi.acosta@mto.com
8 | MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
9 | Los Angeles, California  90071-3426
Telephone:    (213) 683-9100
10 | Facsimile:    (213) 687-3702

11 | Attorneys for Defendants
ASSURANCE IQ, LLC and
12 | ACTIVEPROSPECT, INC

13

14 | UNITED STATES DISTRICT COURT

15 | NORTHERN DISTRICT OF CALIFORNIA

16 | OAKLAND DIVISION

17 | FLORENTINO JAVIER, on behalf of himself
and all others similarly situated,

Case No. 4:20-cv-02860-JSW

18 | Plaintiff,

**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**

19 | vs.

20 | ASSURANCE IQ, LLC and
ACTIVEPROSPECT, INC.,

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

22 | Defendants.

23 | Date:  August 7, 2020
Time: 9:00 a.m.
24 | Ctrm: 5 – 2nd Floor

25 | [Filed concurrently:  Declaration of Gulliver Swenson; [Proposed] Order]

**NOTICE OF MOTION AND MOTION TO DISMISS**

To Plaintiff Florentino Javier ("Plaintiff") and his counsel of record:

PLEASE TAKE NOTICE that on August 7, 2020, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom No. 5 – 2nd Floor, United States Courthouse, 1301 Clay Street, Oakland, California 94612, before the Honorable Jeffrey S. White, United States District Judge, defendants Assurance IQ, LLC ("Assurance") and ActiveProspect, Inc. ("ActiveProspect") (jointly, "Defendants"), will and hereby do move the Court for an Order dismissing Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Complaint fails to state any claim upon which relief may be granted.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the contemporaneously filed Declaration of Gulliver Swenson ("Swenson Decl.") and [Proposed] Order; all other materials supporting the Motion or the Reply filed in support thereof; all pleadings on file in this matter; and any other materials or arguments the Court may receive at or before the hearing on the Motion.

DATED:  June 30, 2020                     MUNGER, TOLLES & OLSON LLP

By:    */s/ Kelly M. Klaus*
              KELLY M. KLAUS

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ............................................................................................. i

I.     BACKGROUND .................................................................................................... 1

       A.     Assurance And Its Use Of ActiveProspect's TrustedForm ........................ 1

       B.     Plaintiff's Use Of Assurance's Website And His Complaint ...................... 2

II.    ARGUMENT .......................................................................................................... 5

       A.     All Of Plaintiff's Claims Must Be Dismissed Because He Consented To
              The Collection Of Information He Provided For A Life Insurance Quote ... 5

       B.     Plaintiff's CIPA Claim Fails On Independent Grounds ............................. 8

              1.     Plaintiff's Claim Is Time-Barred ................................................... 8

              2.     Assurance Cannot Be Liable Under Section 631 Because It Was A
                     Party To Plaintiff's Alleged Communication ................................. 9

       C.     Plaintiff's Constitutional Privacy Claim Fails On Independent Grounds ... 10

       D.     Plaintiff's CMIA Claim Fails On Independent Grounds .......................... 12

              1.     Plaintiff Fails To Plead That CMIA Applies To This Case .......... 12

              2.     Plaintiff's CMIA Claim Fails Because Assurance Did Not Disclose
                     Confidential Medical Information ................................................ 14

III.   CONCLUSION .................................................................................................... 15

No. 4:20-cv-02860-JSW
MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................................5

*Church v. Rouillard*,
2016 WL 3688422 (E.D. Cal. July 11, 2016) ...........................................................13

*Cordas v. Uber Technologies, Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ........................................................................6

*Crawford v. Beachbody, LLC*,
2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) .............................................................6

*Derby v. AOL, Inc.*,
2015 WL 5316403 (N.D. Cal. Sept. 11, 2015)..........................................................7

*Dolemba v. Kelly Services, Inc.*,
2017 WL 429572 (N.D. Ill. Jan. 31, 2017) ................................................................7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).......................................................................... i, 9, 10

*Faulkner v. ADT Security Services, Inc.*,
706 F.3d 1017 (9th Cir. 2013)........................................................................................5

*Fernandez v. Leidos, Inc.*,
127 F. Supp. 3d 1078 (E.D. Cal. 2015) ....................................................................13

*Fodor v. AOL Time Warner, Inc.*,
217 F. App'x 622 (9th Cir. 2007)..................................................................................8

*Garcia v. Enterprise Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........................................................ i, 5, 6, 7

*Gardner v. Health Net, Inc.*,
2010 WL 11571242 (C.D. Cal. Nov. 29, 2010)......................................................13

*In re Google Android Consumer Privacy Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) .......................................................11

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................................10

-iv-

## <u>TABLE OF AUTHORITIES</u>
(Continued)

<u>Page(s)</u>

*Heldt v. Guardian Life Insurance Co. of America,*
  2019 WL 651503 (S.D. Cal. Feb. 15, 2019) ............................................................................14

*In re iPhone Application Litig.,*
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................................11

*Khoja v. Orexigen Therapeutics, Inc.,*
  899 F.3d 988 (9th Cir. 2018)......................................................................................................1

*Low v. LinkedIn,*
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................................10

*Lukovsky v. City & County of San Francisco,*
  535 F.3d 1044 (9th Cir. 2008)....................................................................................................8

*Meyer v. Bebe Stores, Inc.,*
  2015 WL 431148 (N.D. Cal. Feb. 2, 2015)................................................................................1

*Mireskandari v. Daily Mail & Gen. Tr. PLC,*
  2013 WL 12114762 (C.D. Cal. Oct. 8, 2013) ...........................................................................8

*Mitchell v. Regional Serv. Corp.,*
  2014 WL 12607809 (N.D. Cal. Apr. 23, 2014) .......................................................................12

*Moretti v. Hertz Corp.,*
  2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ...........................................................................6

*Namby Consulting, Inc. v. UnitedHealthcare Insurance Co.,*
  2018 WL 6430119 (C.D. Cal. July 11, 2018) .........................................................................13

*Organic Cannabis Foundation, LLC v. Commissioner of Internal Revenue,*
  2020 WL 3278718 (9th Cir. June 18, 2020) ...........................................................................13

*Powell v. Union Pacific Railroad Co.,*
  864 F. Supp. 2d 949 (E.D. Cal. 2012)........................................................................................9

*Revitch v. New Moosejaw, LLC,*
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .....................................................................9, 11

*Silha v. ACT, Inc.,*
  2014 WL 11370441 (N.D. Ill. Dec. 15, 2014) ..........................................................................7

*Smith v. Facebook, Inc.,*
  745 F. App'x 8 (9th Cir. 2018)...................................................................................................6

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001)......................................................................................................5

## **TABLE OF AUTHORITIES**
### (Continued)

**Page(s)**

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) ........................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .....................................................................................................1

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010).......................................................................8

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ..........................................................11

**STATE CASES**

*Eisenhower Medical Center v. Superior Court*,
   226 Cal. App. 4th 430 (2014)........................................................................ i, 14, 15

*Fogelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011).....................................................................................12

*Hill v. National Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (1994)........................................................................................................5

*Lackner v. Dep't of Health Services*,
   29 Cal. App. 4th 1760 (1994).....................................................................................10

*Montalti v. Catanzariti*,
   191 Cal. App. 3d 96 (1987)..........................................................................................8

*Rea v. Blue Shield of Cal.*,
   226 Cal. App. 4th 1209 (2014)...................................................................................13

*Warden v. Kahn*,
   99 Cal.App.3d 805 (1979).............................................................................................9

**FEDERAL STATUTES**

47 U.S.C. § 227 .................................................................................................1, 2, 7

**STATE STATUTES**

Cal. Civ. Code § 56 .......................................................................................... *passim*

Cal. Civ. Code § 56.05 ..............................................................................................13, 14

Cal. Civ. Code § 56.10 .........................................................................................i, 5, 12

1

**TABLE OF AUTHORITIES**
(Continued)

2                                                                                                    **Page(s)**

3

4   Cal. Health & Safety Code § 1345 ...............................................................................13, 14

5   Cal. Penal Code § 631 ................................................................................................... i, 5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUMMARY OF ARGUMENT**

1

2          Plaintiff went to an Assurance website, requested a life insurance quote, provided

3   information related to his request in response to a series of "webform" questions, and expressly

4   consented to the collection and use of that information.  Assurance used a third-party vendor,

5   ActiveProspect, to document and verify user consent to be contacted.  Plaintiff now claims that

6   Assurance and ActiveProspect violated the California Invasion of Privacy Act, Cal. Penal Code

7   § 631 ("CIPA"), and other provisions of state law because they collected his responses.  The

8   complaint fails as a matter of law and should be dismissed.

9          The Privacy Policy that Plaintiff accepted forecloses his claims.  *See Garcia v. Enter.*

10  *Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015).  It disclosed that Assurance: (i) was

11  collecting Plaintiff's "personal information," including "health information" and "information

12  about how you use our Services"; (ii) used "third party vendors" for "monitoring and analyzing

13  Site activity"; and (iii) could "share your personal information with these third parties."  Swenson

14  Decl. Ex. B.

15         Plaintiff's claims have multiple additional defects.  The CIPA claim, filed over a year after

16  the alleged violation, is time-barred.  And it cannot be asserted against Assurance, a party to his

17  communication.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020).

18         Next, the constitutional privacy claim fails because Defendants did not collect the

19  information for any improper purpose.  Collecting responses to webform questions and verifying

20  consent to be contacted regarding a life insurance quote, initiated and agreed to by Plaintiff, are

21  routine commercial practices.  They come nowhere near being an "egregious breach of the social

22  norms such that the breach is highly offensive."  *Id.* at 601 (quotation omitted).

23         Finally, Plaintiff's claim under the Confidentiality of Medical Information Act, Cal. Civ.

24  Code § 56 ("CMIA"), fails because Plaintiff does not, and cannot, allege that Assurance, which is

25  not a "provider of health care, health care service plan, or contractor," Cal. Civ. Code § 56.10(a),

26  is subject to CMIA, or that (even if it were) Assurance shared any confidential "medical

27  information."  *Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 435 (2014).

28

-i-

# I.   BACKGROUND

The following facts are taken from the non-conclusory factual allegations in Plaintiff's Complaint, and from documents incorporated by reference into the Complaint.[1]

### A.   Assurance And Its Use Of ActiveProspect's TrustedForm

Assurance is an online platform that allows users to obtain life insurance quotes, either from Assurance or from its insurance company partners.  Compl. ¶¶ 6-9, 63.  A user requesting an insurance quote is thus a lead for a potential sale; she or he may be contacted by Assurance or one of those partner insurers.  *Id*. ¶ 40.  The telephone follow-up triggers the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), which restricts businesses calling sales leads without prior express written consent.  *See, e.g.*, *Meyer v. Bebe Stores, Inc.*, 2015 WL 431148, at *2 (N.D. Cal. Feb. 2, 2015).  Lead consent validation by a third party is a prudent component of legal compliance and protects against false claims—often through the vehicle of class action litigation—that such calls were made without consent.

ActiveProspect's TrustedForm is a "lead certification product that helps [businesses] comply with regulations like the TCPA by documenting consumer consent."  Compl. ¶ 12 (internal alterations omitted).  A website owner that uses TrustedForm (here, Assurance) can "paste the TrustedForm javascript into the html of [the customer's] form page."  *Id.* ¶ 20.  When a user clicks a button indicating their consent, *id*. ¶ 40, TrustedForm generates a certificate documenting that consent.  *Id.* ¶ 20.  Either the website owner (here, Assurance) or a third party to whom it transfers the lead (such as a partner insurer) can claim the certificate to obtain the documentation of consent.  *Id.*  To maintain "the most authoritative proof of consent," TrustedForm logs "how the user interacted with the form, including data entries, mouse movements and mouse clicks."  *Id*. ¶ 18.  TrustedForm provides verification tools, including:  (i) a rendering of the log that graphically depicts a user's navigation and clicks through a webform;

---

[1] "[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The incorporation by reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

(ii) a "page scan feature," which allows the website owner to "verify that consent language was present on the form where the lead was collected"; and (iii) geolocation information, so that visitors impersonating users from the target geographic area "can be flagged or blocked." *Id.* ¶ 19.

TrustedForm is a legal compliance tool that benefits consumers, website owners, and marketers.  Consumers benefit because websites using TrustedForm adhere to consent protocols in compliance with the law.  Website owners benefit because TrustedForm enables them to document and verify consent, which safeguards against false post-hoc claims that a user did not consent to be called.  And marketers benefit for the same reason that consumers benefit, because TrustedForm helps ensure that online lead generation practices comply with the law and that marketers are contacting only consumers who request to be contacted[2]

**B.      Plaintiff's Use Of Assurance's Website And His Complaint**

Plaintiff visited Assurance's NationalFamily.com website in January 2019 to request a life insurance quote.  Compl. ¶¶ 2, 4, 30.  He completed the webform in under four minutes.  *Id.* ¶ 32. Plaintiff includes multiple screenshots of his responses to the webform questionnaire, *id.* ¶ 43, but omits several screenshots of responses that undercut his claims.  The included screenshots show Plaintiff's responses to a series of questions relevant to a request for a life insurance quote, including gender, use of tobacco products, marital and parental status, birthdate, height, and weight.  *Id.* ¶¶ 33-37.  Notably, Plaintiff's screenshots show that when he clicked a button to respond to a question, the text of that button was replaced with the word "Loading," which would indicate to any website user that the answer was being collected as the user proceeded through the webform.  *Id.* ¶¶ 34-35.

Plaintiff further alleges that he was asked "a series [of] questions about his medical history, including whether Plaintiff suffered from anxiety or depression, heart or circulatory disorders, cancer, chronic pain, diabetes, or other medical conditions," but notes he has "intentionally excluded" these screenshots.  Compl. ¶ 38.  This statement is intended to suggest that the omitted

---

[2] Lead certification is an obvious frustration to class action lawyers, since it deprives them of potential targets to sue.  Plaintiff's counsel in this case actively promotes its practice in class action TCPA cases.  *See* https://www.bursor.com/category/unwanted-calls-texts/.

No. 4:20-cv-02860-JSW
MOTION TO DISMISS

1  screenshots show Plaintiff revealing a specific medical condition.  The omitted screenshots in fact

2  show that Plaintiff *did not* make any such revelations.  Instead, ███████████████████████

3  █████████████████████████████████████████████████████████████████████████

4  █████████████████████████████████████████████████████████  Swenson

5  Decl. Ex. A at 1-2.  █████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ███████████████████████████████  *Id.*

9          At the end of the questionnaire, Plaintiff was presented with a screen entitled, "Last Step!

10  Your quote is ready"—with a "View My Quote" button—that explained to Plaintiff:

11          By clicking 'View My Quote', *I provide my electronic signature as an indication*
        *of my intent to agree to this website's* Privacy Policy, Terms of Service, and

12        expressly consent to receive marketing & telemarketing contact ….

13  Compl. ¶¶ 39-40 (emphasis added).  The words "Privacy Policy" and "Terms of Service" are

14  hyperlinks—conspicuously highlighted in blue text—which allow easy access to the relevant

15  documents for review.  Swenson Decl. ¶ 4.  While Plaintiff shows how the screen was presented to

16  him, he omits the screenshot showing that he clicked the "View My Quote" button and therefore

17  consented to Assurance's Privacy Policy and Terms of Service:

18

19

20    

21

22

23

24

25

26

27

28

Compl. ¶ 39 & Swenson Decl. Ex. A at 4.

The Court may take judicial notice of the Privacy Policy, which included the following provisions covering the collection of information Plaintiff now claims he did not consent to and upon which all of his claims are based:

> This privacy policy (the "Privacy Policy") describes the information that we collect from you when you use our Site or our Services and what we do with this information.....
>
> INFORMATION WE COLLECT
>
> Personal Information You Provide
>
> *We collect the content and other personal information that may be used to identify you as an individual you provide when you use our Services*, including when you request an insurance quote, apply for insurance, and sign up for an account. *This can be personally identifiable information, health information*, and information about property you own or lease. *We also collect information about how you use our Services, such as the types of content you view or engage with or the frequency and duration of your activities.*
>
> ....
>
> The personal information we may collect includes, but is not limited to: name, address, date of birth, phone number, email address, height, weight, social security number, vehicle details, personal and family health information, arrest records, credit score, properties you own or rent, and similar information about family members and dependents.
>
> *We may use third party vendors to assist us with the Service. Some examples of the assistance that may be provided by third party service providers are: monitoring and analyzing Site activity*, operations and marketing, hosting the Site, and maintaining our database."
>
> ....
>
> *By submitting your personal information either to us or to any of your partners, you consent to the use of your personal information as set forth above, and to the transfer of that data to our partners or those individuals or entities we engage to provide Services in connection with your transaction.*

Swenson Decl. Ex. B (emphasis added).

Plaintiff filed his Complaint as a putative class action on April 24, 2020, Dkt. 1, 15 months after he alleges his information was collected without his consent. Plaintiff asserts three claims for relief: (1) that Assurance and ActiveProspect both violated CIPA by collecting without Plaintiff's

-4-

consent his answers to the webform questions; (2) that both Defendants invaded his right to privacy under the California Constitution; and (3) that Assurance violated CMIA by transferring Plaintiff's confidential medical information to ActiveProspect.

## II.     ARGUMENT

The Complaint must be dismissed if it does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  Plaintiff must do more than plead "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do." *Id*.  Although well-pleaded allegations of material fact are taken as true, *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013), the Court does not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### A.     All Of Plaintiff's Claims Must Be Dismissed Because He Consented To The Collection Of Information He Provided For A Life Insurance Quote

Plaintiff's consent undermines each of his claims.  *See* Cal. Penal Code § 631(a) (CIPA prohibits wiretapping "without the consent of all parties to the communication"); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994) (holding that, for invasion of privacy claim under the California Constitution, "[i]f voluntary consent is present, a defendant's conduct will rarely be deemed highly offensive to a reasonable person so as to justify tort liability") (quotation omitted); Cal. Civ. Code § 56.10(a) (CMIA bars disclosure of medical information "without first obtaining an authorization").

Plaintiff agreed to Assurance's Privacy Policy and therefore consented to the collection of the information he provided to obtain a life insurance quote.  "[T]he touchstone of an agreement formed on the Internet is a mutual manifestation of assent, which must be conveyed verbally, in writing or by conduct." *Garcia*, 78 F. Supp. 3d at 1137.  "A binding contract is created if a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the I accept button and admittedly clicked accept.  It is sufficient to require a user to affirmatively accept the terms, even if the terms are not presented on the same page as the

-5-

acceptance button as long as the user has access to the terms of service." *Moretti v. Hertz Corp.*, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) (White, J.) (quoting *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 914 (N.D. Cal. 2011) (internal alterations omitted); *see also Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990-91 (N.D. Cal. 2017) (plaintiff agreed to terms and conditions when he clicked "DONE" to complete sign-up on page that stated: "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy."); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (same; collecting cases). That is exactly what occurred here.

Plaintiff was presented with hyperlinks to Assurance's Privacy Policy and Terms of Service, along with a statement making clear that clicking "View My Quote" indicated agreement to those terms—and *Plaintiff clicked the button*. Swenson Decl. Ex. A at 4. The Privacy Policy explains the fact that information was being collected, what type of information was being collected, and what would be done with it. This requires dismissal of Plaintiff's claims. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018) (consent established for Wiretap Act and other claims given that "Terms and Policies contain numerous disclosures related to information collection on third-party websites"); *Garcia*, 78 F. Supp. 3d at 1135-37 (dismissing CIPA claim where app provider's terms and privacy policy provided consent for the alleged disclosures).

Specifically, Plaintiff complains that Assurance collected personally identifiable information ("PII") and protected health information ("PHI"). *E.g.,* Compl. ¶¶ 4, 42. But the Privacy Policy explains that PII and PHI are collected and therefore, by agreeing to the Privacy Policy, Plaintiff consented to the collection of such information:

> We collect the content and other personal information that may be used to identify you as an individual you provide when you use our Services . . . This can be *personally identifiable information* [or] *health information*.
>
> . . .
>
> The personal information we collect includes, but is not limited to: *name, address, date of birth, phone number, email address, height, weight, . . . personal and family health information . . . and similar information about family members and dependents*."

Swenson Decl. Ex. B (emphasis added).  The Privacy Policy also disclosed that Assurance could collect "information about how you use our Services, such as the types of content you view or engage with or the frequency and duration of your activities."  *Id.*

Plaintiff likewise complains he had no notice Assurance was using a vendor (ActiveProspect) to collect this information, Compl. ¶ 42, or that Assurance would share the information he provided with the vendor.  *E.g.*, *id.* ¶¶ 42-43.  Here, too, the Privacy Policy explains plainly that Assurance uses third-party vendors in monitoring and analyzing site activity, and shares information with vendors, establishing Plaintiff's consent to these practices as well:

> *We may use third party vendors to assist us with the Service*.  Some examples of the assistance that may be provided by third party service providers are: *monitoring and analyzing Site activity*, operations and marketing, hosting the Site, and maintaining our database."

Swenson Decl. Ex. B (emphasis added).

> By submitting your personal information either to us or to any of your partners, *you consent* to the use of your personal information as set forth above, and *to the transfer of that data to our partners or those individuals or entities we engage to provide Services in connection with your transaction.*

*Id.* (emphasis added).

The screenshot showing that Plaintiff consented to Assurance's Privacy Policy is incorporated by reference.  Swenson Decl. Ex. A at 4.  It shows, as a matter of law, that Plaintiff consented to the practices upon which each of his claims is based.  Because this is fatal to his claims, Plaintiff's Complaint should be dismissed.  *See Garcia.*, 78 F. Supp. 3d at 1137 (dismissing complaint "given the express provisions of the Privacy Policy and TOS, which ostensibly contradict [plaintiff's] bare allegation that he did not consent.").[3]

---

[3] While dismissal of an initial complaint often is without prejudice, the fact of Plaintiff's consent is irrefutable and dismissal with prejudice therefore would be appropriate.  *See Derby v. AOL, Inc.*, 2015 WL 5316403, at *4 (N.D. Cal. Sept. 11, 2015) (dismissing TCPA claims with prejudice and holding amendment would be futile where recipients of defendant's communications consented to them); *Silha v. ACT, Inc.*, 2014 WL 11370441, at *4 (N.D. Ill. Dec. 15, 2014) ("[A]ny amendment would be futile because Plaintiffs admit in their allegations that they consented to Defendants sharing their PII with colleges, universities and other third parties."); *Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572, at *4 (N.D. Ill. Jan. 31, 2017) (same).

**B.      Plaintiff's CIPA Claim Fails On Independent Grounds**

Independently, Plaintiff's CIPA claims should be dismissed as time-barred and because Assurance was a party to the communication in issue.

**1.      Plaintiff's Claim Is Time-Barred**

CIPA has a one-year statute of limitations. *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 (1987). All of Plaintiff's claims arise from his interaction with Assurance's website in January 2019. Compl. ¶ 2. Because he did not file suit until 15 months later, in April 2020, Plaintiff's CIPA claim is time-barred.

Plaintiff tries to avoid CIPA's statute of limitations by asserting, without any factual basis, that Defendants are equitably estopped from asserting the statute of limitations. *See* Compl. ¶ 44 ("Any applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment of the facts alleged in this complaint[,]" and Plaintiff "could not have reasonably discovered the wiretapping at issue here . . . until shortly before this class action litigation was commenced."). To show equitable estoppel, "the plaintiff must point to some fraudulent concealment, some active conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Lukovsky v. City & Cty. of S.F.*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (equitable estoppel "focuses primarily on actions taken by the *defendant* to prevent a plaintiff from filing suit.").

Plaintiff does not come close to meeting this standard. He does not plead any facts demonstrating *how* or *when* Defendants supposedly engaged in active concealment, and he cannot fill this gap by incorporating the alleged CIPA violation. *See, e.g.*, *Fodor v. AOL Time Warner, Inc.*, 217 F. App'x 622, 623 (9th Cir. 2007) (plaintiff could not rely on the delayed discovery rule to save a time-barred wiretapping claim, because the allegations in his complaint do "not explain why he could not have discovered this alleged wrongdoing earlier"); *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12114762, at *14 (C.D. Cal. Oct. 8, 2013) (dismissing wiretap act and privacy-related claims where "plaintiff allege[d] no facts that would support his invocation of the discovery rule"); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1133 (C.D. Cal. 2010) ("Because Yumul has failed to plead facts sufficient to establish tolling under the delayed

discovery rule or the fraudulent concealment rule . . . the court dismisses Yumul's complaint to the extent that it alleges conduct occurring outside the relevant statutes of limitations").  Plaintiff's CIPA claim is time-barred and should be dismissed.

> ## 2. Assurance Cannot Be Liable Under Section 631 Because It Was A Party To Plaintiff's Alleged Communication

"[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and *not to recording by a participant to a conversation."  In re Facebook*, 956 F.3d at 607 (emphasis added) (quoting *Warden v. Kahn*, 99 Cal.App.3d 805, 811 (1979)); *see also Powell v. Union Pacific R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) ("Published cases are in accord that section 631 applies only to third parties and not participants.") (collecting cases).  Plaintiff admits he visited Assurance's website and voluntarily entered information to obtain a life insurance quote.  Compl. ¶¶ 1, 4, 30-40.  Assurance was the intended recipient of Plaintiff's information—and a party to the communication—when he provided Assurance with information to "investigat[e] life insurance policies."  *Id.* ¶ 4.  Therefore, Plaintiff's CIPA claim fails as to Assurance.

Plaintiff cannot avoid this result by claiming that Assurance is liable for aiding or conspiring with ActiveProspect's alleged violation of Section 631.  In *Powell*, the plaintiff alleged that a third party surreptitiously eavesdropped on a call between him and his supervisor.  864 F. Supp. 2d at 953.  Because California law barred Plaintiff from claiming his supervisor eavesdropped on the call, Plaintiff alleged the supervisor "should be liable for aiding or conspiring with [the] third party."  *Id.* at 954.  The court rejected this argument on the ground that the "settled nature" of Section 631 squarely focuses on the liability of a third party—not a party—to the communication.  *Id.* at 955-56 (citation omitted).[4]

---

[4] Plaintiff will rely on *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), a case from this District filed by the same counsel that represents him.  In *Revitch*, the court declined to follow *Powell* and held that plaintiff alleged a Section 631 claim against the website with which he communicated by enabling a third party's collection of that communication.  *Id.* at *2 n.2.  *Revitch*, however, does not respond to the basis for the holding in *Powell*, namely, the "settled nature" of Section 631 as focusing on liability of persons *other than* parties to the communication.  864 F. Supp. 2d at 955-56.  *Revitch* should not control here.

-9-

1   The same result follows here:  Assurance was a party to Plaintiff's communications.  The

2   CIPA claim against Assurance therefore fails.

3   **C.     Plaintiff's Constitutional Privacy Claim Fails On Independent Grounds**

4   "The California Constitution and the common law set a high bar for an invasion of privacy

5   claim . . . [as] [e]ven disclosure of personal information, including social security numbers, does

6   not constitute an egregious breach of the social norms to establish an invasion of privacy claims*."*

7   *Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (citations omitted).  Whether

8   allegations are sufficiently serious to meet this "high bar" may "be adjudicated as a matter of law."

9   *Id.*; *Lackner v. Dep't of Health Servs.*, 29 Cal. App. 4th 1760, 1765 (1994) (the question whether

10  conduct "constitutes a serious invasion of privacy" is a "matter of law for the court").

11  To establish a claim for an invasion of privacy under the California Constitution,

12  "Plaintiff[] must show that (1) [he] possess[es] a legally protected privacy interest, (2) [he]

13  maintain[s] a reasonable expectation of privacy, and (3) the intrusion is so serious as to constitute

14  an egregious breach of the social norms such that the breach is 'highly offensive.'"  *In re*

15  *Facebook*, 956 F.3d at 601 (citation and internal ellipses omitted).  Here, Plaintiff could not have

16  had any "reasonable expectation of privacy" in the collection and use of his information because

17  he admittedly provided the information to obtain a life insurance quote and because he consented

18  to the Privacy Policy, which disclosed the collection and use of the information he provided.[5]

19  Plaintiff also fails to plead that the collection of his information constituted an egregious

20  breach of the social norms that is highly offensive.  "Courts in this district have consistently

21  refused to characterize the disclosure of common, basic digital information to third parties as

22  serious or egregious violations of social norms," regardless of whether Plaintiff consented.  *In re*

23  *Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 985, 987-88 (N.D. Cal. 2014) (alleged

24  disclosure of user data (such as PII, browsing habits, search queries, demographic information and

25

26  _____

27  [5] Plaintiff tries to avoid this result by claiming he did not confront the "View My Quote" button
    until he was three minutes into his visit and had already entered information.  Compl. ¶¶ 41-42.
    That contention makes no sense, since Plaintiff, knowing that he had provided the information,

28  nevertheless agreed to the Privacy Policy.

1  other information) "to third-party developers contrary to Google's own policies," did not

2  demonstrate an intrusion "highly offensive to a reasonable person"); *In re iPhone Application*

3  *Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("[e]ven assuming" defendants collected and

4  disclosed plaintiff's unique device number, personal data, and geolocation "without Plaintiff's

5  knowledge and consent . . . such disclosure does not constitute an egregious breach of social

6  norms").

7        Indeed, this Court and others have held that a defendant does not commit an egregious

8  breach of the social norms by collecting and disclosing this type of information even where—

9  unlike in this case—the plaintiff alleged such conduct violated the website's own privacy policies.

10  *See Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (White,

11  J.) (rejecting constitutional privacy claim where plaintiff alleged "Pandora obtained his PII and

12  provided that information to advertising libraries for marketing purposes, in violation of the terms

13  of Pandora's Privacy Policy"); *see also In re Google Android Consumer Privacy Litig.*, 2013 WL

14  1283236, at *2, *11 (N.D. Cal. Mar. 26, 2013) (rejecting constitutional privacy claim where

15  plaintiffs alleged that Google used hidden code to collect, inter alia, names, gender, zip codes, app

16  activity (including search terms or selections), geolocation, and unique device IDs, while allegedly

17  "misrepresent[ing] that users' PII would be anonymized").[6]

18        Plaintiff also does not plead an egregious breach of the social norms by alleging that

19  Defendants collected and disclosed what he labels PHI, by which Plaintiff means his responses

20  regarding gender, parental status, prior tobacco use, height and weight, and prior medical

21  diagnosis.  Compl. ¶¶ 33-37.  There is nothing offensive or egregious about asking for such

22  information from someone requesting a quote for *life insurance*.  To the contrary, this is the type

23

---

24  [6] Here, too, Plaintiff will rely on *Revitch,* specifically that court's holding that a constitutional
25  privacy claim could proceed.  But Revitch's holding on that issue is inapposite.  There, the
   plaintiff alleged the defendant embedded code into its website that allowed a third party to redirect
26  plaintiff's communications while he browsed the site.  2019 WL 5485330, at *1.  The court held
   that plaintiff stated a constitutional privacy claim by alleging the third party "*scanned [his]*
27  *computer* for files that revealed his identity and browsing habits.  *Id.* at *3 (emphasis added).  The
   Complaint here alleges no comparable conduct.

28

-11-

1  of information necessary to generate what Plaintiff concedes he requested—a life insurance

2  quote.[7]  Likewise, there is nothing offensive or egregious about the use of ActiveProspect's

3  TrustedForm in collecting Plaintiff's information.  TrustedForm simply verified Plaintiff's

4  responses on Assurance's website, including his acceptance of the Privacy Policy and his consent

5  to be contacted.  *See* Section II.A, *supra*.  Plaintiff does not, and cannot, allege that

6  ActiveProspect did anything with this information other than for legitimate business purposes,

7  namely, to preserve it for verification purposes.  That use is not a highly offensive, egregious

8  breach of the social norms.  *See, e.g.*, *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993

9  (2011) ("we have found no case which imposes liability based on the defendant obtaining

10  unwanted access to the plaintiff's private information which did not also allege that the *use* of

11  plaintiff's information was highly offensive."); *Mitchell v. Regional Serv. Corp.*, 2014 WL

12  12607809, at *5 (N.D. Cal. Apr. 23, 2014) (defendant's physical trespass onto plaintiff's property

13  while taking photos of occupants was not an egregious breach of social norms where defendant

14  used the information for legitimate business purposes (to remove the occupants because of a

15  mortgage default)).

16       **D.     Plaintiff's CMIA Claim Fails On Independent Grounds**

17       Plaintiff's CMIA claim, based on Assurance's alleged disclosure of information to

18  ActiveProspect, also should be dismissed because Plaintiff fails to plead that (1) Assurance or his

19  interactions with the website are subject to CMIA, or (2) even if they were, Assurance disclosed

20  any statutorily protected medical information.

21            **1.     Plaintiff Fails To Plead That CMIA Applies To This Case**

22       CMIA generally covers only (1) "provider[s] of health care, health care service plan[s], or

23  contractor[s]," and (2) "medical information regarding a patient of the provider of health care or

24  an enrollee or subscriber of a health care service plan."  Cal. Civ. Code § 56.10(a).  Plaintiff does

25  not plead facts showing that this case involves either covered area.

26

27  _____

[7] Moreover, as Plaintiff's responses make clear, ███████████████████████████████

28  ████████████████████████████████████████  *See* Section II.B, *supra*.

*First*, Plaintiff asserts that Assurance is a "health care service plan," but does not allege any facts to support this allegation. Compl. ¶ 76.  A "[h]ealth care service plan" is specifically defined as "any entity regulated pursuant to the Knox-Keene Health Care Service Plan Act of 1975," Cal. Civ. Code § 56.05(g).  That Act defines the term as "[a]ny person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost" for the same.  Cal. Health & Safety Code § 1345(f)(1).  "Health maintenance organizations ('HMOs') and other structured managed care organizations ('MCOs') are 'health care service plans'" under the Knox-Keene Act (and CMIA).  *Church v. Rouillard*, 2016 WL 3688422, at *1 (E.D. Cal. July 11, 2016).  Moreover, health care service plans are regulated by the State Department of Managed Health Care ("DMHC").  *Id.*; *Rea v. Blue Shield of Cal.*, 226 Cal. App. 4th 1209, 1215 (2014).  Plaintiff does not allege that any of these things is true with respect to Assurance.[8]  Rather, Plaintiff alleges only that he went to Assurance's website to obtain a quote for *life insurance*, not health care services.

*Gardner v. Health Net, Inc.* is instructive.  2010 WL 11571242, at *8 (C.D. Cal. Nov. 29, 2010).  In arguing the defendant was subject to CMIA, the plaintiffs there alleged the defendant was "an integrated [MCO] that delivers managed health care services *through* health plans and government-sponsored managed care plans."  *Id.* (emphasis added).  The Court held plaintiffs' argument was "fundamentally flawed," because they "d[id] not contend that the Defendant *itself* arranges for the provision of health care services or receives charges paid by enrollees."  *Id.* (emphasis added).  Here, Plaintiff does not allege Assurance is an HMO or otherwise satisfies the criteria for being a health care service plan.  Plaintiff's pleading failure requires dismissal of his CMIA claim.  *See Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1089-90 (E.D. Cal. 2015)

---

[8] Health care service plans are regulated under the Knox-Keene Act.  The California DMHC lists these plans on its website—and Assurance is not listed.  *See* http://wpso.dmhc.ca.gov/hpsearch/viewLicensedhealthplan.aspx (DMHC List of Licensed Plans).  The Court may take judicial notice of this State information, which is posted on a government website and is not subject to reasonable dispute.  *Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*, 2020 WL 3278718, at *10-11 (9th Cir. June 18, 2020); *Namby Consulting, Inc. v. UnitedHealthcare Ins. Co.*, 2018 WL 6430119, at *3 n.1 (C.D. Cal. July 11, 2018) (taking judicial notice of California DMHC website listing licensed health service plans).

1  (plaintiff failed to state a CMIA claim because he "has not alleged facts from which a plausible

2  inference could be drawn that Defendant" was a health care provider or contractor "governed by

3  CMIA"); *Heldt v. Guardian Life Ins. Co. of Am.*, 2019 WL 651503, at *3 (S.D. Cal. Feb. 15,

4  2019) (no CMIA claim where "[t]here is no evidence that Defendant provided any health care

5  services or that Defendant is a health care service plan.").

6         *Second*, even if Plaintiff alleges Assurance is subject to CMIA (he does not), Plaintiff's

7  conclusory allegation that he is an "enrollee" or "subscriber" of a health care service plan (and

8  thus eligible for CMIA's protections), Compl. ¶ 77, is not sufficient.  To be an enrollee or

9  subscriber, Plaintiff must be "a person who is enrolled in a [health service] plan and who is a

10 recipient of services from the plan," or "the person who is responsible for payment to a plan or

11 whose employment or other status . . . is the basis for eligibility for membership in the plan."  Cal.

12 Civ. Code § 56.05(f), (*o*); Cal. Health & Safety Code § 1345(c), (p).  Plaintiff does not allege any

13 facts showing that he enrolled in or subscribed to a *health care* plan.  To the contrary, Plaintiff

14 alleges only that he visited Assurance's website "while investigating *life insurance* policies."

15 Compl. ¶ 4 (emphasis added).  Accordingly, Plaintiff's own allegations make clear that CMIA

16 does not apply to his interaction with Assurance's website.

17              **2.    Plaintiff's CMIA Claim Fails Because Assurance Did Not Disclose
                       Confidential Medical Information**

18

19         CMIA protects "[m]edical information," which is defined as "any individually identifiable

20 information, in electronic or physical form, in possession of or derived from a provider of health

21 care, health care service plan, pharmaceutical company, or contractor regarding a patient's

22 medical history, mental or physical condition, or treatment."  Cal. Civ. Code § 56.05(j).  Medical

23 information "cannot mean just any patient-related information held by a health care provider, but

24 must be 'individually identifiable information' and also include 'a patient's medical history,

25 mental or physical condition, or treatment.'"  *Eisenhower*, 226 Cal. App. 4th at 435.  In

26 *Eisenhower*, the defendant hospital's full index of the "name, medical record number (MRN), age,

27 date of birth, and last four digits of the person's Social Security number (SSN)" of over 500,000

28 patients was not "medical information" under CMIA; this information revealed only "[t]he mere

1  fact that a person may have been a patient at the hospital at some time." *Id.* at 432, 435.  Here,

2  Plaintiff asserts that "medical information within the meaning of [CMIA]" was "created,

3  maintained, preserved, and stored" by Assurance, Compl. ¶ 78, but his own Complaint and

4  documents incorporated by reference disprove that assertion.

5          Plaintiff's answers to questions about his age, height, weight, and use of tobacco products

6  do not reveal his "medical history, mental or physical condition, or treatment."  Nor do his

7  answers to questions about his medical history—answers that Plaintiff intentionally omits from the

8  Complaint.  Compl. ¶ 38.  As explained above, ████████████████████████████████

9  ████████████████████████████████████████  *See* Section II.B, *supra*.  Plaintiff

10  therefore does not allege any disclosure of "medical information" to support a CMIA claim.

11  *Eisenhower*, 226 Cal. App. 4th at 435.

12  **III.    CONCLUSION**

13          Defendants respectfully request that the Court dismiss Plaintiff's Complaint.

14  DATED:  June 30, 2020                          MUNGER, TOLLES & OLSON LLP

15

16

17                                                By:  _____/s/ Kelly M. Klaus_____

18                                                      KELLY M. KLAUS

19                                                *Attorneys for Defendants*

20

21

22

23

24

25

26

27

28

-15-