KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California  94105-2907
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

NEFI D. ACOSTA (State Bar No. 311178)
nefi.acosta@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California  90071-3426
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

Attorneys for Defendants
ASSURANCE IQ, LLC and
ACTIVEPROSPECT, INC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| FLORENTINO JAVIER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ASSURANCE IQ, LLC and ACTIVEPROSPECT, INC.,<br><br>Defendants. | Case No. 4:20-cv-02860-JSW<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  September 11, 2020<br>Time: 9:00 a.m.<br>Ctrm: 5 – 2nd Floor<br><br>[Filed concurrently:  Declaration of Gulliver Swenson; Declaration of Kelly M. Klaus; [Proposed] Order] |

45370973.1

# NOTICE OF MOTION AND MOTION TO DISMISS

To Plaintiff Florentino Javier ("Plaintiff") and his counsel of record:

PLEASE TAKE NOTICE that on September 11, 2020, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom No. 5 – 2nd Floor, United States Courthouse, 1301 Clay Street, Oakland, California 94612, before the Honorable Jeffrey S. White, United States District Judge, defendants Assurance IQ, LLC ("Assurance") and ActiveProspect, Inc. ("ActiveProspect") (jointly, "Defendants"), will and hereby do move the Court for an Order dismissing Plaintiff's First Amended Complaint ("FAC") (Dkt. 24), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that (1) the FAC fails to state any claim upon which relief may be granted, and (2) Plaintiff has availed himself of the opportunity to amend, and any further amendment would be futile.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the contemporaneously filed Declarations of Gulliver Swenson ("Swenson Decl.") and Kelly M. Klaus ("Klaus Decl.") and [Proposed] Order; all other materials supporting the Motion or the Reply filed in support thereof; all pleadings on file in this matter; and any other materials or arguments the Court may receive at or before the hearing on the Motion.

DATED:  August 4, 2020                MUNGER, TOLLES & OLSON LLP


By:    _/s/ Kelly M. Klaus_____
                    KELLY M. KLAUS

*Attorneys for Defendants*

45370973.1

1

<u>**TABLE OF CONTENTS**</u>

2

<u>**Page**</u>

3    SUMMARY OF ARGUMENT ................................................................................. i

4    I.      BACKGROUND..........................................................................................1

5            A.      Assurance And Its Use Of ActiveProspect's TrustedForm........................1

6            B.      Plaintiff's Use Of Assurance's Website And His Complaint.....................2

7            C.      Procedural History.....................................................................4

8    II.     ARGUMENT ..............................................................................................5

9            A.      Plaintiff's Claims Must Be Dismissed Because He Consented To The
                     Collection Of Information He Provided For A Life Insurance Quote .....................5

10

             B.      Plaintiff's CIPA Claim Fails On Independent Grounds ...........................10
11
                     1.      Plaintiff's Claim Is Time-Barred................................................10
12
                     2.      Assurance Cannot Be Liable Under Section 631 Because It Was A
13                           Party To Plaintiff's Alleged Communication................................12

14           C.      Plaintiff's Constitutional Privacy Claim Fails On Independent Grounds ..............12

15           D.      The FAC Should Be Dismissed With Prejudice .....................................15

16   III.    CONCLUSION ..........................................................................................15

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Allen v. City of Beverly Hills,*
    911 F.2d 367 (9th Cir. 1990)................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..........................................................................5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..........................................................................5

*Cordas v. Uber Technologies, Inc.,*
    228 F. Supp. 3d 985 (N.D. Cal. 2017) ...............................................6, 9

*Crawford v. Beachbody, LLC,*
    2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ........................................6, 9

*DeBruyne v. Equitable Life Assurrance Society of U.S.,*
    920 F.2d 457 (7th Cir. 1990)..............................................................11

*Derby v. AOL, Inc.,*
    2015 WL 5316403 (N.D. Cal. Sept. 11, 2015).....................................15

*DeVries v. Experian Information Solutions, Inc.,*
    2017 WL 733096 (N.D. Cal. Feb. 24, 2017)........................................9

*Dolemba v. Kelly Services, Inc.,*
    2017 WL 429572 (N.D. Ill. Jan. 31, 2017) .........................................15

*El Dorado Community Service Center v. County of Los Angeles,*
    2017 WL 6017297 (C.D. Cal. Jan. 3, 2017).........................................15

*In re Facebook Biometric Information Privacy Litig.,*
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..............................................6

*In re Facebook, Inc. Internet Tracking Litig.,*
    956 F.3d 589 (9th Cir. 2020)......................................................1, 11, 13

*Faulkner v. ADT Security Services, Inc.,*
    624 F. App'x 544 (9th Cir. 2015).......................................................15

*Faulkner v. ADT Security Services, Inc.,*
    706 F.3d 1017 (9th Cir. 2013).............................................................5

*Garcia v. Enterprise Holdings, Inc.,*
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) ............................................1, 10

1

**TABLE OF AUTHORITIES**
(Continued)

2

**Page(s)**

3

*In re Google Android Consumer Privacy Litig.*,
 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ...........................................................13

4

5

*In re Google, Inc. Privacy Policy Litig.*,
 58 F. Supp. 3d 968 (N.D. Cal. 2014) .......................................................................13

6

*Graf v. Match.com, LLC*,
 2015 WL 4263957 (C.D. Cal. July 10, 2015) ..........................................................9

7

8

*Grice v. Uber Technologies, Inc.*,
 2020 WL 497487 (C.D. Cal. Jan. 7, 2020)...........................................................8, 10

9

10

*In re iPhone Application Litig.*,
 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................13

11

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018)..................................................................................1

12

13

*Low v. LinkedIn*,
 900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................................12, 13

14

15

*Melo v. Zumper, Inc.*,
 439 F. Supp. 3d 683 (E.D. Va. 2020).......................................................................9

16

*Meyer v. Bebe Stores, Inc.*,
 2015 WL 431148 (N.D. Cal. Feb. 2, 2015)..........................................................1, 9

17

18

*Meyer v. Uber Technologies, Inc.*,
 868 F.3d 66 (2d Cir. 2017)...................................................................................8, 9

19

20

*Mitchell v. Regional Service Corp.*,
 2014 WL 12607809 (N.D. Cal. Apr. 23, 2014) ......................................................14

21

*Moretti v. Hertz Corp.*,
 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ..........................................................5

22

23

*Moule v. United Parcel Service Co.*,
 2016 WL 3648961 (E.D. Cal. July 7, 2016) .............................................................6

24

25

*Nguyen v. Barnes & Noble Inc.*,
 763 F.3d 1171 (9th Cir. 2014)........................................................................5, 7, 8

26

*Nicosia v. Amazon.com, Inc.*,
 384 F. Supp. 3d 254 (E.D.N.Y. 2019).................................................................6, 8

27

*NYC Topanga, LLC v. Bank of America*,
 2015 WL 4075844 (C.D. Cal. July 2, 2015) ...........................................................11

28

1

**TABLE OF AUTHORITIES**
(Continued)

2

**Page(s)**

3

*Peter v. DoorDash, Inc.*,
  2020 WL 1967568 (N.D. Cal. Apr. 23, 2020) ..............................................................9

4

5

*Powell v. Union Pacific Railroad Co.*,
  864 F. Supp. 2d 949 (E.D. Cal. 2012) .......................................................................12

6

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)........................................................12, 14

7

8

*Selden v. Airbnb, Inc.*,
  2016 WL 6476934 (D.D.C. Nov. 1, 2016) ..................................................................9

9

10

*Silha v. ACT, Inc.*,
  2014 WL 11370441 (N.D. Ill. Dec. 15, 2014) ...........................................................15

11

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .......................................................................................5

12

13

*Starke v. Gilt Groupe, Inc.*,
  2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) .............................................................9

14

15

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................................................................5, 9

16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .....................................................................................................1

17

18

*United States v. Raygoza-Garcia*,
  902 F.3d 994 (9th Cir. 2018)........................................................................................8

19

20

*Yunker v. Pandora Media, Inc.*,
  2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .........................................................13

21

*Zadrozny v. Bank of New York Mellon*,
  720 F.3d 1163 (9th Cir. 2013).....................................................................................15

22

23

**STATE CASES**

24

*Fogelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011)......................................................................................14

25

26

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005)...........................................................................................10, 11

27

*Hill v. NCAA*,
  7 Cal. 4th 1 (1994)........................................................................................................5

28

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Lackner v. Department of Health Services,*
29 Cal. App. 4th 1760 (1994) ................................................................................... 13

*Montalti v. Catanzariti,*
191 Cal. App. 3d 96 ................................................................................................... 10

*Warden v. Kahn,*
99 Cal. App. 3d 805 (1979) ....................................................................................... 12

**FEDERAL STATUTES**

47 U.S.C. § 227
Telephone Consumer Protection Act ................................................................. *passim*

**STATE STATUTES**

Cal. Civ. Code § 56 ........................................................................................................... 4

Cal. Civ. Code § 1798.100 ................................................................................................ 7

Cal. Penal Code § 631 ............................................................................................... 1, 5, 12

# SUMMARY OF ARGUMENT

Plaintiff went to an Assurance website, requested a life insurance quote, provided information related to his request in response to a series of "webform" questions, and expressly consented to the collection and use of that information.  Assurance used a third-party vendor, ActiveProspect, to document and verify user consent to be contacted.  Plaintiff and his lawyers originally threatened a class action suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), but were stymied when presented with ActiveProspect's record of Plaintiff's consent.  FAC ¶ 46.  Frustrated with a product that verifies consent (and prevents manufactured TCPA claims), Plaintiff and his lawyers now claim Assurance and ActiveProspect violated the California Invasion of Privacy Act, Cal. Penal Code § 631 ("CIPA"), and the State Constitution's right of privacy because they collected his responses.  These claims fail and should be dismissed.

The Privacy Policy that Plaintiff accepted forecloses his claims.  *See Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015).  It disclosed that Assurance: (i) was collecting Plaintiff's "personal information," including "health information" and "information about how you use our Services"; (ii) used "third party vendors" for "monitoring and analyzing Site activity"; and (iii) could "share your personal information with these third parties."  Swenson Decl. Ex. B, at 1.  Plaintiff's claim he was not on notice of the Privacy Policy—disclosed with a conspicuous hyperlink *in the same sentence* that disclosed his TCPA consent—is meritless.

Plaintiff's claims have multiple additional defects.  The CIPA claim, filed over a year after the alleged violation, is time-barred.  And it cannot be asserted against Assurance, a party to his communication.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020).

Plaintiff's constitutional privacy claim fails because Defendants did not collect his information for any improper purpose.  Collecting responses to webform questions and verifying consent to be contacted regarding a life insurance quote, initiated and agreed to by Plaintiff, are routine commercial practices.  They come nowhere near being an "egregious breach of the social norms such that the breach is highly offensive."  *Id.* at 601 (quotation omitted).

# I.        BACKGROUND

The following facts are taken from the non-conclusory factual allegations in the FAC and from documents it incorporates by reference.[1]

## A.        Assurance And Its Use Of ActiveProspect's TrustedForm

Assurance is an online platform that allows users to obtain life insurance quotes, from either Assurance or its insurance company partners.  FAC ¶¶ 6-9, 63.  A user requesting a quote is thus a lead for a potential sale; she or he may be contacted by Assurance or one of those partner insurers.  *Id*. ¶ 40.  The telephone follow-up triggers the TCPA, which restricts businesses calling sales leads without prior express written consent.  *See, e.g.*, *Meyer v. Bebe Stores, Inc.*, 2015 WL 431148, at *2 (N.D. Cal. Feb. 2, 2015).  That is where ActiveProspect comes in.  ActiveProspect's TrustedForm is a "lead certification product that helps [businesses] comply with regulations like the [TCPA] by documenting consumer consent."  FAC ¶ 12 (internal alterations omitted).  Lead consent validation is a prudent component of legal compliance and protects against false claims— often through class action litigation—that such calls were made without consent.

A website owner that uses TrustedForm (here, Assurance) can "paste the TrustedForm javascript into the html of [the customer's] form page."  FAC ¶ 20.  When a user clicks a button indicating their consent, *id*. ¶ 40, TrustedForm generates a certificate documenting that consent.  *Id*. ¶ 20.  Either the website owner (here, Assurance) or a third party to whom it transfers the lead (such as a partner insurance company) can claim the certificate to obtain consent documentation.  *Id*.  To maintain "the most authoritative proof of consent," TrustedForm logs "how the user interacted with the form, including data entries, mouse movements and mouse clicks."  *Id*. ¶ 18.

The TrustedForm legal compliance tool benefits consumers, marketers, website owners, and courts.  Consumers and marketers benefit because TrustedForm ensures that online lead-generation practices comply with the law and that marketers only contact consumers who request

---

[1] "[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The incorporation by reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

to be contacted.  Website owners benefit because TrustedForm enables them to document and verify consent, which safeguards against false post-hoc claims of non-consent.  And courts benefit because the third-party confirmation of consumer consent deters frivolous claims.

**B.      Plaintiff's Use Of Assurance's Website And His Complaint**

Plaintiff visited Assurance's NationalFamily.com website in January 2019 to request a life insurance quote.  FAC ¶¶ 2, 4, 30.  He completed the webform in under four minutes.  *Id*. ¶ 32. Plaintiff includes multiple screenshots of his responses to the webform questionnaire, *id*. ¶ 33-37, but selectively omits screenshots of responses that undercut his claims.  The included screenshots show Plaintiff's responses to a series of questions relevant to a request for a life insurance quote, including gender, use of tobacco products, marital and parental status, birthdate, height, and weight.  *Id*..  Plaintiff's screenshots show that when he clicked a button to respond to a question, the text of that button was replaced with the word "Loading," which would indicate to any website user that the answer was being collected as the user proceeded through the webform.  *Id*. ¶¶ 34-35.

At the end of the questionnaire, Plaintiff was presented with a screen entitled, "Last Step! Your quote is ready"—with a "View My Quote" button—that explained to Plaintiff:

> By clicking 'View My Quote', *I provide my electronic signature as an indication of my intent to agree to this website's* Privacy Policy, Terms of Service, *and* expressly consent to receive marketing & telemarketing contact ....

FAC ¶¶ 39-40 (emphasis added).  The notice was provided immediately next to the button. "Privacy Policy" and "Terms of Service" are hyperlinks, conspicuously highlighted in blue text, which allow easy access to the relevant documents for review.  Swenson Decl. ¶ 4.  Plaintiff includes in the FAC a screenshot showing how the webpage looked before he took any action with the "View My Quote" button—but omits the screenshot showing that he clicked the button and therefore consented to Assurance's Privacy Policy and Terms of Service:

1

2

3

4

5

6

7

8

9

10

11

 

12 FAC ¶ 39 & Swenson Decl. Ex. A.

13        The Court may judicially notice the Privacy Policy, which included provisions about the

14 collection of information to which Plaintiff claims he did not consent and upon which he bases his

15 claims:

16        This privacy policy (the "Privacy Policy") describes the information that we collect
         from you when you use our Site or our Services and what we do with this
17        information.…..

18        INFORMATION WE COLLECT

19        Personal Information You Provide

20        *We collect the content and other personal information that may be used to identify
21        you as an individual you provide when you use our Services*, including when you
         request an insurance quote, apply for insurance, and sign up for an account. *This can
22        be personally identifiable information, health information*, and information about
         property you own or lease. *We also collect information about how you use our
23        Services, such as the types of content you view or engage with or the frequency and
         duration of your activities*. ….
24

25        The personal information we may collect includes, but is not limited to: name,
         address, date of birth, phone number, email address, height, weight, social security
26        number, vehicle details, personal and family health information ….

27        *We may use third party vendors to assist us with the Service.  Some examples of the
         assistance that may be provided by third party service providers are: monitoring and*
28

No. 4:20-cv-02860-JSW
MOTION TO DISMISS

*analyzing Site activity*, operations and marketing, hosting the Site, and maintaining our database. ….

*By submitting your personal information either to us or to any of your partners, you consent to the use of your personal information as set forth above, and to the transfer of that data to our partners or those individuals or entities we engage to provide Services in connection with your transaction.*

Swenson Decl. Ex. B, at 1 (emphasis added).

Plaintiff claims he only discovered in April 2020 his responses were collected—15 months after completing the webform.  FAC ¶ 46.  The circumstances of the claimed "discovery" speak volumes about the motivation for this lawsuit.  Represented by the same lawyers in this lawsuit, Plaintiff sent a letter to the insurance company to which Assurance had transferred the lead (on the same day Plaintiff completed the webform, Swenson Decl. ¶ 8), threatening a class action lawsuit for violating the TCPA "[o]ver the last several months."  FAC ¶ 46); Swenson Decl. Ex. C (letter from Plaintiff's counsel).  That company provided Plaintiff's counsel the TrustedForm certification showing that Plaintiff expressly consented to be called.  *Id*. Ex. D.  In other words, TrustedForm worked exactly as intended: it stopped a meritless TCPA claim in its tracks and avoided an unnecessary drain on party and judicial resources.  Obviously frustrated by the product, Plaintiff and his counsel now take aim at the use of TrustedForm with the instant lawsuit.[2]

### C.    Procedural History

Plaintiff filed this putative class action on April 24, 2020, asserting (1) Defendants each violated CIPA by collecting webform answers without consent; (2) Defendants invaded his state constitutional right to privacy; and (3) Assurance violated California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56 ("CMIA"), by transferring Plaintiff's confidential medical information to ActiveProspect.  On June 30, Defendants moved to dismiss.  Dkt. 19.  Instead of opposing, Plaintiff filed the FAC, dropping the CMIA claim but continuing to press the others.

---

[2] Plaintiff's counsel in this case actively promotes its practice in class action TCPA cases.  *See* https://www.bursor.com/category/unwanted-calls-texts/.  And Plaintiff himself is no stranger to pursuing litigation arising out of his use and agreement to website terms.  *See Aberca  v. Lyft, Inc.*, No. 3:18-cv-07502-WHA, Dkt. 1-1, Ex. A at 35 (N.D. Cal. Dec. 13, 2018) (Plaintiff among Lyft drivers petitioning to compel arbitration based on acceptance online of Lyft terms of service, which included an arbitration agreement).

1    **II.     ARGUMENT**

2          The FAC must be dismissed if it does not "contain sufficient factual matter . . . to state a

3    claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation

4    omitted).  Plaintiff must do more than plead "labels and conclusions."  *Bell Atl. Corp. v. Twombly*,

5    550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not

6    do."  *Id*.  Although well-pleaded allegations of material fact are taken as true, *Faulkner v. ADT*

7    *Security Services, Inc*., 706 F.3d 1017, 1019 (9th Cir. 2013), the Court does not "accept as true

8    allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

9    inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

10         **A.     Plaintiff's Claims Must Be Dismissed Because He Consented To The**
              **Collection Of Information He Provided For A Life Insurance Quote**

11

12         Plaintiff's consent undermines both of his claims.  *See* Cal. Penal Code § 631(a) (CIPA

13   prohibits wiretapping "without the consent of all parties to the communication"); *Hill v. NCAA*, 7

14   Cal. 4th 1, 26 (1994) (for invasion of privacy claim under state constitution, "[i]f voluntary

15   consent is present, a defendant's conduct will rarely be deemed highly offensive to a reasonable

16   person so as to justify tort liability") (quotation omitted).  Plaintiff agreed to the Privacy Policy

17   and thus consented to the collection of information he provided to obtain a life insurance quote.

18         "While new commerce on the Internet has exposed courts to many new situations, it has

19   not fundamentally changed the principles of contract."  *Nguyen v. Barnes & Noble Inc*., 763 F.3d

20   1171, 1175 (9th Cir. 2014) (quotation omitted).  One principle that remains unchanged is that

21   "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the

22   touchstone of contract."  *Id*. (quotation omitted).  This Court, and many others, have held "[a]

23   binding contract is created if a plaintiff is provided with an opportunity to review the terms of

24   service in the form of a hyperlink immediately under the I accept button and admittedly clicked

25   accept.  It is sufficient to require a user to affirmatively accept the terms, even if the terms are not

26   presented on the same page as the acceptance button as long as the user has access to the terms of

27   service."  *Moretti v. Hertz Corp.*, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) (White, J.)

28   (quoting *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011)) (internal

alterations omitted).  *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1166

(N.D. Cal. 2016) (user agreement enforceable where user had to "take some action—a click of a

dual-purpose box—from which assent might be inferred.").[3]  That is exactly what happened here.

Plaintiff was "provided with an opportunity to review the terms" of the Privacy Policy.

*Crawford*, 2014 WL 6606563, at *3.  He was required to take an affirmative step—clicking the

"View My Quote" button—to acknowledge that he was agreeing to the terms of the Privacy

Policy.  He was told the consequences that would follow from clicking the button, including his

acceptance of the Privacy Policy.  *And he clicked the button*.  Swenson Decl. Ex. A.  That is

"enough to form a contract."  *In re Facebook*, 185 F. Supp. 3d at 1166.

The Privacy Policy's terms—to which Plaintiff agreed—end his case.  Plaintiff complains

that Assurance collected personally identifiable information ("PII") and protected health

information ("PHI").  FAC ¶¶ 1-2.  But the Privacy Policy explains that PII and PHI are collected;

by agreeing to the Privacy Policy, Plaintiff consented to the collection of PII and PHI:

> We collect the content and other personal information that may be used to identify
> you as an individual you provide when you use our Services . . . This can be
> *personally identifiable information* [or] *health information*.
>
> . . .
>
> The personal information we may collect includes, but is not limited to: *name,*
> *address, date of birth, phone number, email address, height, weight, social security*
> *number, vehicle details, personal and family health information . . . and similar*
> *information about family members and dependents.*

---

[3] *See also Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 266 (E.D.N.Y. 2019) ("Courts will give effect to hybridwrap terms where the button required to perform the action manifesting assent (e.g., signing up for an account or executing a purchase) is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms.") (collecting cases); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990-91 (N.D. Cal. 2017) (plaintiff agreed to terms and conditions when he clicked "DONE" to complete sign-up on page that stated:  "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy."); *Moule v. United Parcel Serv. Co.*, 2016 WL 3648961, at *5 (E.D. Cal. July 7, 2016) (plaintiff bound by online terms of service where he "had the opportunity to view the Terms and Conditions and clicked the 'Yes' button to process the shipment"); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (same; collecting cases).

Swenson Decl. Ex. B, at 1 (emphasis added).  The Privacy Policy also disclosed that Assurance could collect "information about how you use our Services, such as the types of content you view or engage with or the frequency and duration of your activities."  *Id.*

Plaintiff likewise complains he had no notice Assurance was using a vendor (ActiveProspect) to collect this information, FAC ¶ 42, or that Assurance would share the information he provided with the vendor.  *E.g.*, *id.* ¶¶ 42-43.  Here, too, the Privacy Policy explains plainly that Assurance uses third-party vendors in monitoring and analyzing site activity, and shares information with vendors, establishing Plaintiff's consent to these practices as well:

> *We may use third party vendors to assist us with the Service.*  Some examples of the assistance that may be provided by third party service providers are: *monitoring and analyzing Site activity*, operations and marketing, hosting the Site, and maintaining our database.

Swenson Decl. Ex. B, at 1 (emphasis added).[4]

> By submitting your personal information either to us or to any of your partners, *you consent* to the use of your personal information as set forth above, and *to the transfer of that data to our partners or those individuals or entities we engage to provide Services in connection with your transaction.*

*Id.* (emphasis added).

Recognizing that his assent to the Privacy Policy's terms dooms his claims, Plaintiff amended his Complaint to challenge the sufficiency of Assurance's notice.  *See* FAC ¶ 43 (alleging Plaintiff was "not on notice of the Privacy Policy when [he] click[ed] 'View My Quote'").  The effort fails.

Plaintiff was on notice of the Privacy Policy because the "View My Quote" page "puts a reasonably prudent user on inquiry notice of the terms."  *Nguyen*, 763 F.3d at 1177.[5]  Courts "need not presume that the reasonably prudent smartphone user has never before encountered an app or

---

[4] Notably, the recently enacted California Consumer Privacy Act, the goal of which is to ensure "[t]he right of Californians to know what personal information is being collected about them," requires businesses to provide the "purposes for which the categories of personal information shall be used," 2018 Cal. Legis. Serv. Ch. 55 (A.B. 375) (West); Cal. Civ. Code § 1798.100 and hist. n.: 2018 Legislation, but *does not* require disclosure of a complete list of third party vendors or a detailed description of how personal information is processed.

[5] This is the case regardless of whether Plaintiff read the Privacy Policy.  "[F]ailure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract."  *Nguyen*, 763 F.3d at 1179.

1    entered into a contract using a smartphone as modern cellphones are now such a pervasive and

2    insistent part of daily life." *Grice v. Uber Techs., Inc.*, 2020 WL 497487, at *10 (C.D. Cal. Jan. 7,

3    2020) (internal quotes and alterations omitted).  "[R]easonably prudent internet users know that

4    there are terms and conditions attached when they" use Internet sites to transact commerce.

5    *Nicosia*, 384 F. Supp. 3d at 278.  In evaluating whether a webpage puts a user on inquiry notice,

6    courts look to the "design and content of the website and the agreement's webpage," as well as

7    "the conspicuousness and placement of the" relevant "hyperlink." *Nguyen*, 763 F.3d at 1177.

8         The notice that Plaintiff was agreeing to the Privacy Policy was clearly visible, not

9    obscured by pop-ups, and presented in straightforward, readable text.  *See, e.g.*, *Meyer v. Uber

10   Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (sufficient notice where, among other things, "user

11   d[id] not need to scroll beyond what is immediately visible to find notice of the Terms of

12   Service.").  The notice that Plaintiff would be bound by the Privacy Policy was directly proximate

13   to the button for indicating assent.  *Id.* ("[t]he text, including the hyperlinks to the Terms and

14   Conditions and Privacy Policy, appears directly below the buttons for registration").  And, the

15   notice of agreement to be bound by the Privacy Policy and the hyperlink to it were in *the same

16   sentence* as the notice that Plaintiff would consent to be contacted if he clicked "View My

17   Quote,"—the same consent that stymied Plaintiff's threatened TCPA suit.  In light of all these

18   facts, it is incredible for Plaintiff to claim he was not on notice of the Privacy Policy.[6]

19        Plaintiff tries to resuscitate his attempt at manufacturing a claim by nitpicking the Privacy

20   Policy hyperlink.  *See* FAC ¶ 42.  Numerous cases make clear that the items about which Plaintiff

21   complains do not defeat the adequacy of notice[7]:

22   •    Hyperlinks do not have to be underlined for a reasonably prudent Internet user to know

23        they are, in fact, hyperlinks.  The shade of blue, font size, and capitalization status about

24        which Plaintiff complains are comparable to other blue hyperlinks that were deemed

25   _____

26   [6] This conclusion is reinforced by the fact that Plaintiff previously participated as a plaintiff in a
     lawsuit to compel arbitration based on his acceptance of Lyft's terms of service.  *See supra* n.2.

27   [7] "A court may take judicial notice of undisputed matters of public record, which may include
     court records available through PACER."  *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001
28   (9th Cir. 2018) (citations omitted).

sufficient in other cases.  Klaus Decl. Ex. 1 (webpage from *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017)); *id.* Ex. 2 (webpage from *Crawford*, *supra*); *id.* Ex. 3 (webpage from *Swift*, *supra*); *id.* Ex. 4 (webpage from *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683 (E.D. Va. 2020)).  Unlike cases where hyperlinks did not sufficiently stand out, here, "a user would not need to click on every word of the sentence in case one of them is actually a link."  *Peter v. DoorDash, Inc.*, 2020 WL 1967568, at *5 (N.D. Cal. Apr. 23, 2020); *see* Klaus Decl. Ex. 5 (webpage from *Peter*).

- The fact that the text was below the "View My Quote" button rather than above it does not render the notice insufficient.  Klaus Decl. Ex. 3 (webpage from *Swift*, *supra*); *id.* Ex. 4 (webpage from *Melo*, *supra*); *id.* Ex. 5 (webpage from *Peter*); *id.* Ex. 6 (webpage from *Cordas*, *supra*); *id.* Ex. 7 (webpage from *Graf v. Match.com, LLC*, 2015 WL 4263957 (C.D. Cal. July 10, 2015)); *id.* Ex. 8 (webpage from *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)); *id.* Ex. 9 (webpage from *Meyer*, *supra*); *id.* Ex. 10 (webpage from *Selden v. Airbnb, Inc.*, 2016 WL 6476934 (D.D.C. Nov. 1, 2016)).

- The fact the hyperlinks were on the "View My Quote" page does not make the notice insufficient.  Clickwrap agreements may use a single button to signify assent to contractual terms and other website activity.  *See, e.g.*, *Meyer*, 868 F.3d at 80 ("The fact that clicking the register button had two functions—creation of a user account and assent to the Terms of Service—does not render Meyer's assent ambiguous.").  Klaus Decl. Ex. 1 (webpage from *DeVries*, *supra*); *id.* Ex. 2 (webpage from *Crawford*, *supra*); *id.* Ex. 3 (webpage from *Swift*, *supra*); *id.* Ex. 4 (webpage from *Melo*, *supra*); *id.* Ex. 5 (webpage from *Peter*, *supra*); *id.* Ex. 6 (webpage from *Cordas*, *supra*); *id.* Ex. 7 (webpage from *Graf*, *supra*); *id.* Ex. 8 (webpage from *Starke*, *supra*); *id.* Ex. 9 (webpage from *Meyer*, *supra*); *id.* Ex. 11 (webpage from *Selden*, *supra*).

"[T]here are infinite ways to design a website or smartphone application."  *Meyer*, 868 F.3d at 75. None of Plaintiff's scattershot complaints change the fact Plaintiff was on notice of, and assented to, the Privacy Policy.

Plaintiff also complains that he was not presented with the hyperlink to the Privacy Policy on the "View My Quote" webpage until he had already entered information on the preceding webpages. FAC ¶ 42. That contention makes no sense: at that point in the webform, Plaintiff knew he had provided the information, and he nevertheless agreed to the Privacy Policy. *See Grice*, 2020 WL 497487, at \*11 (rejecting plaintiff's argument that notice of terms was too late "because Plaintiff received notice of the Terms before *completing* the registration process").

In sum, Plaintiff as a matter of law consented to the practices upon which each of his claims is based. Because this is fatal, the FAC should be dismissed in its entirety. *See Garcia*, 78 F. Supp. 3d at 1137 (dismissing complaint "given the express provisions of the Privacy Policy and TOS, which ostensibly contradict [plaintiff's] bare allegation that he did not consent.").

### B.   Plaintiff's CIPA Claim Fails On Independent Grounds

#### 1.   Plaintiff's Claim Is Time-Barred

CIPA has a one-year statute of limitations. *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 & n.1(1987). All of Plaintiff's claims arise from his interaction with Assurance's website in January 2019. FAC ¶ 2. Because he did not file suit until 15 months later, in April 2020, Plaintiff's CIPA claim is time-barred.

Plaintiff alleges that the "delayed discovery" doctrine rule saves his claim. FAC ¶ 46. It does not. To avail himself of this doctrine, Plaintiff must "specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (citation omitted). Plaintiff attempts to plead the first element by alleging he was presented with the TrustedForm record of his visit in response to his false claim that he did not consent to an insurance company contacting him by phone. FAC ¶ 46. But Plaintiff fails to plead the second element: "that, despite diligent investigation of the circumstances of the injury, he … could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 35 Cal. 4th at 809. Under California law, plaintiffs "are charged with presumptive knowledge of an injury if they have 'information of circumstances to put them on inquiry,' or if they have '*the opportunity to obtain knowledge* from sources open to their

investigation." *Id.* at 807-08 (internal alterations omitted).  "[S]uspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." *Id.* at 807.

Plaintiff claims he "had no way of knowing" that Defendants were collecting his information.  FAC ¶ 46.  But this is belied by the FAC and the documents it incorporates.  Plaintiff admits he visited Assurance's website to "investigat[e] life insurance policies," and he voluntarily entered information to obtain a quote.  *Id.* ¶ 4.  It is implausible that Plaintiff did not know his information was being collected as he moved from screen to screen in the webform.  If the information was not being collected on each page, there would have been no point for Plaintiff to have entered it.  Plaintiff had to have known his responses were being captured as he moved through the webform, and he therefore was on notice of the injury of which he complains as of the date of his visit in January 2019.  Additionally, when Plaintiff and his counsel threatened a TCPA claim against an insurance company, his demand letter alleged the company had called his cell phone.  *See* Swenson Decl. Ex. C.  Assurance transferred the lead the same day Plaintiff completed the webform, January 19, 2019, *id.* ¶ 8, and Plaintiff notably does not allege there was any meaningful delay between that date and the date on which he received the purportedly unconsented-to call.  That call would have placed Plaintiff on inquiry notice that his data had been collected, but he still did not file suit until 15 months after he used the website.

The Privacy Policy, which was available to Plaintiff in January 2019, also undermines his claim he did not know his responses were being collected.  Regardless of whether Plaintiff agreed to the Privacy Policy, that Policy clearly was a "source[] open to [his] investigation," and it gave Plaintiff "*the opportunity to obtain knowledge*" about the complained-of conduct.  *Fox*, 35 Cal. 4th at 807-08 (internal alterations omitted); *see NYC Topanga, LLC v. Bank of Am.*, 2015 WL 4075844, at *6 (C.D. Cal. July 2, 2015) ("Plaintiff's failure to read the Agreement cannot support a claim for delayed discovery."); *DeBruyne v. Equitable Life Assur. Soc'y of U.S.*, 920 F.2d 457, 466 (7th Cir. 1990) ("[P]laintiffs cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put them on inquiry notice.").

2.     **Assurance Cannot Be Liable Under Section 631 Because It Was A Party To Plaintiff's Alleged Communication**

"[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and *not to recording by a participant to a conversation.*"  *In re Facebook*, 956 F.3d at 607 (emphasis added) (quoting *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979)) (emphasis added); *see also Powell v. Union Pacific R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) ("Published cases are in accord that section 631 applies only to third parties and not participants.") (collecting cases).  Plaintiff admits he visited Assurance's website and voluntarily entered information to obtain a life insurance quote.  FAC ¶¶ 1, 4, 30-40.  Assurance was the intended recipient of Plaintiff's information—and a party to the communication—when he provided Assurance with information to "investigat[e] life insurance policies."  *Id.* ¶ 4.  Plaintiff's CIPA claim fails as to Assurance.

Plaintiff cannot avoid this result by claiming that Assurance is liable for aiding or conspiring with ActiveProspect's alleged violation of Section 631.  In *Powell*, the plaintiff alleged that a third party surreptitiously eavesdropped on a call between him and his supervisor.  864 F. Supp. 2d at 953.  Because California law barred Plaintiff from claiming his supervisor eavesdropped on the call, Plaintiff alleged the supervisor "should be liable for aiding or conspiring with [the] third party."  *Id.* at 954.  The court rejected this argument on the ground that the "settled nature" of Section 631 squarely focuses on the liability of a third party—not a party—to the communication.  *Id.* at 955-56 (citation omitted).[8]  The same result follows here:  Assurance was a party to Plaintiff's communications.  The CIPA claim against Assurance therefore fails.

C.     **Plaintiff's Constitutional Privacy Claim Fails On Independent Grounds**

"The California Constitution and the common law set a high bar for an invasion of privacy claim . . . [as] [e]ven disclosure of personal information, including social security numbers, does

---

[8] Plaintiff will rely on *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), a case from this District filed by the same counsel that represents him.  In *Revitch*, the court declined to follow *Powell* and held that plaintiff alleged a Section 631 claim against the website with which he communicated by enabling a third party's collection of that communication.  *Id.* at *2 n.2.  *Revitch*, however, does not respond to the basis for the holding in *Powell*, namely, the "settled nature" of Section 631 as focusing on liability of persons *other than* parties to the communication.  864 F. Supp. 2d at 955-56.  *Revitch* should not control here.

No. 4:20-cv-02860-JSW
MOTION TO DISMISS

1   not constitute an egregious breach of the social norms to establish an invasion of privacy claims"

2   *Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (citations omitted).  Whether

3   allegations are sufficiently serious to meet this "high bar" may "be adjudicated as a matter of law."

4   *Id.*; *Lackner v. Dep't of Health Servs.*, 29 Cal. App. 4th 1760, 1765 (1994) (the question whether

5   conduct "constitutes a serious invasion of privacy" is a "matter of law for the court").

6          To establish a claim for an invasion of privacy under the California Constitution,

7   "Plaintiff[] must show that (1) [he] possess[es] a legally protected privacy interest, (2) [he]

8   maintain[s] a reasonable expectation of privacy, and (3) the intrusion is so serious as to constitute

9   an egregious breach of the social norms such that the breach is 'highly offensive.'"  *In re*

10  *Facebook*, 956 F.3d at 601 (citation and internal ellipses omitted).  Here, Plaintiff could not have

11  had any "reasonable expectation of privacy" in the collection and use of his information because

12  he admittedly provided the information to obtain a life insurance quote and because he consented

13  to the Privacy Policy, which disclosed the collection and use of the information he provided.

14         Plaintiff also fails to plead that the collection of his information constituted an egregious

15  breach of the social norms that is highly offensive.  "Courts in this district have consistently

16  refused to characterize the disclosure of common, basic digital information to third parties as

17  serious or egregious violations of social norms," regardless of whether Plaintiff consented.  *In re*

18  *Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 985, 987-88 (N.D. Cal. 2014) (alleged

19  disclosure of user data (such as PII, browsing habits, search queries, and demographic

20  information) "to third-party developers contrary to Google's own policies," did not demonstrate an

21  intrusion "highly offensive to a reasonable person"); *In re iPhone Application Litig.*, 844 F. Supp.

22  2d 1040, 1063 (N.D. Cal. 2012) ("[e]ven assuming" defendants collected and disclosed plaintiff's

23  unique device number, personal data, and geolocation "without Plaintiff's knowledge and consent

24  . . . such disclosure does not constitute an egregious breach of social norms").

25         Indeed, this Court and others have held that a defendant does not commit an egregious

26  breach of the social norms by collecting and disclosing this type of information even where—

27  unlike in this case—the plaintiff alleged such conduct violated the website's own privacy policies.

28  *See Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (White,

J.) (rejecting constitutional privacy claim where plaintiff alleged "Pandora obtained his PII and provided that information to advertising libraries for marketing purposes, in violation of the terms of Pandora's Privacy Policy"); *see also In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236, at *2, *11 (N.D. Cal. Mar. 26, 2013) (rejecting constitutional privacy claim where plaintiffs alleged that Google used hidden code to collect, inter alia, names, gender, zip codes, app activity (including search terms or selections), geolocation, and unique device IDs, while allegedly "misrepresent[ing] that users PII would be anonymized").[9]

Plaintiff also does not plead an egregious breach of the social norms by alleging that Defendants collected and disclosed what he labels PHI, by which Plaintiff means his responses regarding gender, parental status, prior tobacco use, height and weight, and prior medical diagnosis. FAC ¶¶ 33-37. There is nothing offensive or egregious about asking for such information from someone requesting a quote for *life insurance*. On the contrary, this is the type of information necessary to generate what Plaintiff concedes he requested—a life insurance quote. Likewise, there is nothing offensive or egregious about the use of ActiveProspect's TrustedForm in collecting Plaintiff's information. TrustedForm simply verified Plaintiff's responses on Assurance's website, including his acceptance of the Privacy Policy and his consent to be contacted. *See* Section II.A, *supra*. Plaintiff does not, and cannot, allege that ActiveProspect did anything with this information other than for legitimate business purposes, namely, to preserve it for verification purposes. That use is not a highly offensive, egregious breach of the social norms. *See, e.g.*, *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (2011) ("we have found no case which imposes liability based on the defendant obtaining unwanted access to the plaintiff's private information which did not also allege that the *use* of plaintiff's information was highly offensive"); *Mitchell v. Regional Serv. Corp.*, 2014 WL 12607809, at *5 (N.D. Cal. Apr. 23, 2014) (defendant's physical trespass onto plaintiff's property while taking photos of occupants was not

---

[9] Plaintiff will rely on *Revitch*'s holding that a constitutional privacy claim could proceed, but that holding is inapposite. There, the plaintiff alleged the defendant embedded code into its website that allowed a third party to redirect plaintiff's communications while he browsed the site. 2019 WL 5485330, at *1. The court held that plaintiff stated a constitutional privacy claim by alleging the third party "*scanned [his] computer* for files that revealed his identity and browsing habits. *Id.* at *3 (emphasis added). The FAC here alleges no comparable conduct.

1    an egregious breach of social norms where defendant used the information for legitimate business

2    purposes (to remove the occupants because of a mortgage default)).

3         **D.**      **The FAC Should Be Dismissed With Prejudice**

4         "A party is not entitled to an opportunity to amend his complaint if any potential

5    amendment would be futile." *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1173 (9th Cir.

6    2013) (alteration omitted).  "The district court's discretion to deny leave to amend is particularly

7    broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911

8    F.2d 367, 373 (9th Cir. 1990); *El Dorado Cmty. Serv. Ctr. v. Cty. of L.A.*, 2017 WL 6017297, at *3

9    (C.D. Cal. Jan. 3, 2017) ("Plaintiff has already amended his Complaint once and has failed to

10   provide the Court with any facts or argument that indicate leave to amend would not be futile.").

11        Even after attempting to remedy the deficiencies in his Complaint, Plaintiff fails to put

12   forth plausible allegations that support his claims.  Moreover, because Plaintiff manifested his

13   intent to be bound by the Privacy Policy, any further amendment would be futile.  *See Derby v.*

14   *AOL, Inc.*, 2015 WL 5316403, at *4, *6 (N.D. Cal. Sept. 11, 2015) (dismissing TCPA claims with

15   prejudice and holding amendment would be futile where recipients of defendant's

16   communications consented to them); *Silha v. ACT, Inc.*, 2014 WL 11370441, at *4 (N.D. Ill. Dec.

17   15, 2014) ("[A]ny amendment would be futile because Plaintiffs admit in their allegations that

18   they consented to Defendants sharing their PII with colleges, universities and other third parties.");

19   *Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572, at *4 (N.D. Ill. Jan. 31, 2017) (same).  Finally,

20   any amendment to Plaintiff's CIPA claim would be futile because the statute of limitations bars

21   that claim.  *Faulkner v. ADT Sec. Servs., Inc.*, 624 F. App'x 544, 544 (9th Cir. 2015).

22   **III.**     **CONCLUSION**

23        Defendants respectfully request that the Court dismiss Plaintiff's FAC with prejudice.

24   DATED:  August 4, 2020          MUNGER, TOLLES & OLSON LLP

25

26             By:       */s/ Kelly M. Klaus*

27                      KELLY M. KLAUS

28             *Attorneys for Defendants*