**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          jsmith@bursor.com
          breed@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENTINO JAVIER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSURANCE IQ, LLC and ACTIVEPROSPECT INC.,<br><br>Defendants. | Case No. 4:20-cv-02860-JSW<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:  September 11, 2020<br>Time:  9:00 a.m.<br>Courtroom:  5 – 2nd Floor<br>Judge:  Hon. Jeffrey S. White |

# TABLE OF CONTENTS

**PAGE(S)**

SUMMARY OF ARGUMENT.................................................................................................vi

BACKGROUND..............................................................................................................................1

ARGUMENT ...................................................................................................................................2

I.      PLAINTIFF DID NOT CONSENT TO BEING WIRETAPPED .........................................2

          A.    *Ex Post Facto* Consent Is Not Valid.............................................................2

          B.    Plaintiff Was Not On Notice Of Defendant's Privacy Policy, And So Could Not Have Assented To Being Wiretapped..............................................3

          C.    Assurance's Privacy Policy Does Not Disclose That It Was Using TrustedForm To Wiretap Plaintiff.................................................................6

II.     DEFENDANTS' OTHER ARGUMENTS FOR DISMISSAL OF THE CIPA CLAIM LACK MERIT .......................................................................................9

          A.    Defendants' Statute of Limitations Argument Fails Under *Franklin*........................9

          B.    Assurance's Argument That A Party to a Communication Cannot Be Liable Under CIPA Is Contrary to Section 631(a) and *In re Facebook* ..................11

                1.    Assurance's Argument Contradicts the Plain Text of Section 631(a)....................................................................................11

                2.    The Ninth Circuit Rejected the Same Argument Assurance Makes Here.........................................................................13

III.    PLAINTIFF'S COMMON LAW INVASION OF PRIVACY CLAIM TURNS ON A QUESTION OF FACT ...................................................................14

IV.    CONCLUSION ...............................................................................................15

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

**CASES**

3

4

*Anderson v. SeaWorld Parks and Enter., Inc.*,
2016 WL 8929295 (N.D. Cal. Nov. 7, 2016) ................................................................ 11

5

*Applebaum v. Lyft, Inc.*,
6
263 F. Supp. 3d 454 (S.D.N.Y. 2017) ................................................................. 3, 4, 6

7

*Bonnichsen v. U.S.*,
367 F.3d 864 (9th Cir. 2004) ............................................................................... 11

8

*Campbell v. Facebook Inc.*,
9
77 F. Supp. 3d 836 (N.D. Cal. 2014) ..................................................................... 8

10

*Colgate v. JUUL Labs, Inc.*,
11
402 F. Supp. 3d 728 (N.D. Cal. 2019) ........................................................... vi, 3, 4

12

*Cordas v. Uber Techs., Inc.*,
13
228 F. Supp. 3d 985 (N.D. Cal. 2017) ................................................................... 6

14

*Cothron v. White Castle System, Inc.*,
2020 WL 3250706 (N.D. Ill. June 16, 2020) ..................................................... vi, 2

15

*Crawford v. Beachbody, LLC*,
16
2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ......................................................... 5

17

*Cullinane v. Uber Tech., Inc.*,
18
893 F.3d 53 (1st Cir. 2018) ............................................................................... 4, 6

19

*DeBruyne v. Equitable Life Assur. Soc. of U.S.*,
920 F.2d 457 (7th Cir. 1990) ............................................................................... 10

20

*Devries v. Experian Information Solutions, Inc.*,
21
2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ......................................................... 5

22

*Dohrmann v. Intuit, Inc.*,
23
2020 WL 4601254 (9th Cir. Aug. 11, 2020) ......................................................... 6

24

*Folgestrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (Cal. Ct. App. 2011) ....................................................... 15

25

*Fox v. Ethicon Endo-Surgery, Inc.*,
26
35 Cal. 4th 797 (2005) ......................................................................................... 9

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Franklin v. Ocwen Loan Servicing, LLC*,
  2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) ................................................ vi, 9, 10

*Goodman v. HTC Am., Inc.*,
  2012 WL 2412070 (W.D. Wash. June 26, 2012) .......................................... 14, 15

*Graf v. Match.com, LLC*,
  2015 WL 4263957 (C.D. Cal. July 10, 2015) .................................................... 5

*Grice v. Uber Techs., Inc.*,
  2020 WL 497487 (C.D. Cal. Jan. 2020) ............................................................ 2

*Hernandez v. Hillsides*,
  47 Cal. 4th 272 (Cal. 2009) ............................................................................ 14

*Hodosh, Lyon & Hammer, Ltd. v. Barracuda Networks, Inc.*,
  2016 WL 705272 (D.R.I. Jan. 4, 2016) .............................................................. 5

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ................................................................... Passim

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................. 15

*In re Google Android Consumer Privacy Litig.*,
  2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) .................................................. 15

*In re Google Inc.*,
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ............................................... 3, 8

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................... 15

*In re Lenovo Adware Litig.*,
  2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .................................................. 11

*In re Vizio, Inc. Consumer Privacy Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................... 14

*Kauders v. Uber Techs., Inc.*,
  2019 WL 510568 (Mass. Super. Ct. Jan. 3, 2019) ............................................ 2

*Long v. Provide Commerce, Inc.*,
  245 Cal. App. 4th 855 (Cal. Ct. App. 2016) ...................................................... 4

*Melo v. Zumper, Inc.*,
  439 F. Supp. 3d 683 (E.D. Va. 2020) ................................................................ 6

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ............................................................................... 5

*Moretti v. Hertz Corp.*,
   2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ................................................. 6

*Moule v. United Parcel Service Co.*,
   2016 WL 3648961 (E.D. Cal. July 7, 2016) ..................................................... 5

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ......................................................................... 3

*Nicosia v. Amazon.com, Inc.*,
   384 F. Supp. 3d 254 (E.D.N.Y. 2019) .............................................................. 5

*NYC Topanga, LLC v. Bank of Am.*,
   2015 WL 4075844 (C.D. Cal. July 2, 2015) ................................................... 10

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........................................................... 15

*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016) ............................................. 6, 7, 8, 15

*People v. Snyder*,
   22 Cal. 4th 304 (2000) ................................................................................... 11

*Peter v. DoorDash, Inc.*,
   2020 WL 1967568 (N.D. Cal. Apr. 23, 2020) ................................................. 6

*Powell v. Union Pac. Railroad Co.*,
   864 F. Supp. 2d 949 (E.D. Cal. Mar. 31, 2012) ...................................... 12, 13

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ............................. vi, 12, 13, 15

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) ............................................................................. vi, 12

*Roney v. Miller*,
   705 F. App'x 670 (9th Cir. 2017) .................................................................. 15

*Selden v. Airbnb, Inc.*,
   2016 WL 6476934 (D.D.C. Nov. 1, 2016) .................................................. 3, 6

*Sgouros v. TransUnion Corp.*,
   817 F.3d 1029 (7th Cir. 2016) ......................................................................... 4

*Shulman v. Group W Prods., Inc.*,
  18 Cal. 4th 200 (1998) ................................................................................. 14

*Starke v. Gilt Groupe, Inc.*,
  2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ............................................... 5

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ......................................................... 6

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (1979) ........................................................................ 13

*Wilson v. Redbox Automated Retail, LLC*,
  2020 WL 1445622 (N.D. Ill. Mar. 25, 2020) ............................................... 3

*Yunker v. Pandora Media, Inc.*,
  2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ............................................ 15

**STATUTES**

Cal. Penal Code 631(a) ........................................................................ 11, 12, 13

## SUMMARY OF ARGUMENT

**Issue No. 1: Consent**.  Defendants' consent arguments fail for three separate reasons.  First, Defendants dodge the most significant issue concerning consent; namely, ActiveProspect—a company that has nothing to do with life insurance—began secretly recording Plaintiff's communications *as soon as he began using Assurance's website*.  FAC, ¶¶ 16-18, 30-39.  Even by Defendants' own account, by the time Assurance purportedly asked for consent or presented its Privacy Policy, ActiveProspect had already been recording Plaintiff's communications for more than three minutes.  *Id.* at ¶¶ 40, 45; *see also* MTD FAC, 2:14 (Defendants presented a hyperlink to the Privacy Policy "at the end of the questionnaire").  Defendants did not ask Plaintiff for retroactive consent, nor did he provide it.  *See*, *e.g.*, *Cothron v. White Castle System, Inc*., 2020 WL 3250706, at *6 (N.D. Ill. June 16, 2020).  Second, even if it were possible to get retroactive consent here, Plaintiff did not have notice of the Privacy Policy because the hyperlink was inconspicuous.  *See* Swenson Decl., Ex. A (Dkt. No. 28-4).  *See*, *e.g.*, *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019).  Third, the Privacy Policy does not disclose the conduct at issue here.

**Issue No. 2: Statute of limitations**.  Plaintiff's CIPA claim is timely under the delayed discovery rule.  The facts here are very similar to those in *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018), where the delayed discovery rule applied.

**Issue No. 3:  Assurance's liability under CIPA**.  The plain text of section 631(a) imposes liability for "any person" who "aids, agrees with, employs, or conspires with" anyone who violates section 631(a).  This provision applies to parties to a communication.  *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, *1 (N.D. Cal. Oct. 23, 2019); *Ribas v. Clark*, 38 Cal. 3d 355 (1985).  Further, earlier this year, the Ninth Circuit rejected the same argument Assurance makes here in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020).

**Issue No. 4: The common law privacy claim**.  The question of whether surreptitiously recording communications disclosing health information is egregious enough to support a common law invasion of privacy claim is a question of fact not suitable for resolution on the pleadings.  *Id.* at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.").

## BACKGROUND

Defendant Assurance owns Nationalfamily.com, which offers quotes on life insurance. FAC ¶ 9.  Co-defendant ActiveProspect is not a life insurance company and offers no insurance-related products to consumers.  *See id.* ¶¶ 11-12.  Instead, ActiveProspect offers companies a product called "TrustedForm," which secretly records, in real time, all of a consumer's website interactions, including keystrokes and mouse clicks.  *Id.* ¶¶ 2, 18, 32-39.  The software also captures other information about website visitors, such as their location, the amount of time spent on a webpage, and some of the user's internet browsing history.  *Id.* at ¶¶ 19, 21.

In January 2019, Plaintiff Javier Florentino visited Nationfamily.com to get a quote on life insurance.  *Id.* at ¶¶ 2, 30, 39.  At the time, he did not know that TrustedForm was operating on Nationalfamily.com, or that all of his website communications were being recorded as soon as he entered the website.  *Id.* at ¶¶ 46-47.  Nor did he have any way to know that all the health and medical information he was providing to Assurance was being recorded by and shared with ActiveProspect for reasons having nothing to do with getting a life insurance quote.  *See id.*

At the end of his visit to the website, Plaintiff was presented with a large blue button saying "View My Quote."  *Id.* at ¶ 39.  By that time, ActiveProspect had been recording Plaintiff's website communications for a little more than three minutes.  *Id.*  Underneath the button, there was a lengthy statement, punctuated with odd typos, that referenced a "Privacy Policy,Â [sic]" and Plaintiff's purported consent "to receive marketing & telemarketing contact … from insurance companies or their agents, the owner of this website, andÂ [sic] partner companies at the telephone number and email address I have provided."  *Id.* at ¶ 40.  The text also noted, "If you are Medicare-eligible, a representative may call you about" a variety of Medicare-related plans.  *Id.*; *see also* Swenson Decl., Ex. A (Dkt. No. 28-4).  Neither the above referenced text box nor the Privacy Policy disclosed the use of TrustedForm software or ActveProspect's recording of the website interactions.  *See* FAC ¶¶ 40-41, 48; Swenson Decl., Exs. A-B (Dkt. No. 28-4).

In April 2020, after Plaintiff complained about telemarketing calls he received, Defendants disclosed for the first time that they had recorded his website activity.  FAC ¶¶ 46-47.  Plaintiff commenced this action that same month.  *See* Original Complaint (Dkt. No. 1).

1

## <u>ARGUMENT</u>

**I.     PLAINTIFF DID NOT CONSENT TO BEING WIRETAPPED**

    **A.     *Ex Post Facto* Consent Is Not Valid**

      Plaintiff did not consent to being wiretapped because the link to Assurance's Privacy Policy was only displayed <u>after</u> Defendants had already begun recording Plaintiff's activities.  This *ex post facto* or after-the-fact consent is not valid.  "Colloquially … consent implies permission given <u>in advance</u>."  *Cothron v. White Castle System, Inc.*, 2020 WL 3250706, at *6 (N.D. Ill. June 16, 2020) (emphasis added) (finding no consent where White Castle asked plaintiff for consent to share biometric information after such information had already been shared); *Kauders v. Uber Techs., Inc.*, 2019 WL 510568, at *5 (Mass. Super. Ct. Jan. 3, 2019) ("Not until the third screen does the Uber App refer to the 'Terms & Conditions and Privacy Policy' … That exacerbates the inherent problem with a browsewrap agreement, which does not timely alert the user at the point in the process when he or she is agreeing to terms not shown on the screen.").

      Here, Defendants did not ask for Plaintiff's consent or reference any Privacy Policy until the end of the form on Assurance's website.  *See* FAC ¶ 40.  "[B]y the time a visitor reaches this point in the process, the wiretap has already been deployed."  FAC ¶ 41.  Accordingly, "any purported disclosure was [not] made [until] *after* the wiretap had already begun."  FAC ¶ 44 (emphasis in original).  Further, there is no retroactive consent provision in Assurance's Privacy Policy.  Swenson Decl Ex. B (Dkt. 28-4).  Thus, Plaintiff's alleged consent is invalid because it was obtained, if at all, after-the-fact.

      The only argument Defendants make concerning this issue is that by the time Plaintiff reached the last page of the process, he had already knowingly entered his personal information in the website.  MTD at 10:3-4.  That is irrelevant.  This case is about wiretapping.  Defendants do not argue (because they cannot) that Plaintiff knew that all of his communications were being recorded and shared with ActiveProspect (which is not an insurance company) in real time from the moment he entered the website.  The sole decision Defendants cite, *Grice v. Uber Techs., Inc.*, 2020 WL 497487, at *11 (C.D. Cal. Jan. 2020) is inapposite because it had nothing to do with the problem of retroactive consent.

**B.**     **Plaintiff Was Not On Notice Of Defendant's Privacy Policy, And So Could Not Have Assented To Being Wiretapped**

Even if after-the-fact consent could be binding—and it is not—Plaintiff did not consent to the wiretapping because there was insufficient notice of Assurance's Privacy Policy.  "The critical question with respect to implied consent is whether the parties whose communications were intercepted had adequate notice of the interception."  *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013).  When a hyperlink to an agreement is "not conspicuous enough to put [plaintiffs] on inquiry notice," then the agreement is not binding.  *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019).  The Ninth Circuit holds that "even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014).  Instead, courts consider factors such as color, size and font of the hyperlink, and whether the hyperlink is presented alone or in a clutter of text.  *See, e.g.*, *Colgate*, 402 F. Supp. 3d at 764; *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016).  As shown in Swenson Decl. Ex. A (Dkt. 28-4), the hyperlink to Assurance's Privacy Policy, is inconspicuous and therefore not binding for five reasons.[1]

First, the hyperlink's sole distinguishing feature is its light blue coloring, which barely contrasts with the white background and light grey of the surrounding text.  Courts have rejected the use of color alone to identify a hyperlink, including where, similar to here, the defendant used small "light blue on white background" text.  *Colgate*, 402 F. Supp. 3d at 765-66, RJN Ex. A ("I am not convinced that the mere change in color of the hyperlinks, without more, is enough."); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017), RJN Ex. B (hyperlink colored in light blue on a white background insufficient to provide notice.); *Wilson v. Redbox Automated Retail, LLC*, 2020 WL 1445622, at *6 (N.D. Ill. Mar. 25, 2020), RJN Ex. C ("Using a different color for the hyperlink from the surrounding text, by itself, is not sufficient to render the hyperlink

---

[1] On page 2 of their brief, Defendants include part of the language around the hyperlink.  However, that excerpt is misleading because the text is larger in size and in higher contrast font color than the original, and the excerpt does not include the surrounding clutter that users would actually see when on the website.

reasonably conspicuous"); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 859 (Cal. Ct. App. 2016) (finding insufficient notice of hyperlink where "[t]he hyperlink was displayed in what appears to have been a light green typeface on the Web site's lime green background").

     Second, the hyperlink is not in all capital letters, not underlined, bolded, or italicized, and is not a different size or font from the surrounding text, such that the hyperlinks could be easily distinguished. *Colgate*, 402 F. Supp. 3d at 766 (hyperlinks insufficient where "[t]hey are not underlined [and] they are the same size as the sentence they are in.").

     Third, the hyperlink was not presented on a screen prominently indicating to a user that they were entering a binding contract. *Applebaum*, 263 F. Supp. 3d at 467 ("[T]he entire screen was structured as part of a process to verify a phone number, not to enter a detailed contractual agreement.").  Rather, the most prominent portion of the screen (i.e., the large blue button) informed users that they were about to view a quote for life insurance.  In addition, the sentence containing the hyperlink states that the website visitor agrees to be *called by telemarketers*, while saying nothing about being wiretapped by ActveProspect's technology.  This surrounding text undermines any purported "notice" regarding the wiretapping because it implies the Privacy Policy focused on telemarketing.  *See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016), RJN Ex. D ("TransUnion undid whatever notice it might have been furnishing in its bold text block by explicitly stating that a click on the button constituted assent for TransUnion to obtain access to the purchaser's personal information.  That text distracted the purchaser from the Service Agreement by informing him that clicking served a particular purpose unrelated to the Agreement.").

     Fourth, the hyperlink was on a page with far more distracting features, including boxes to enter personal information and a large blue "View My Quote" button.  *Cullinane v. Uber Tech., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018), RJN Ex. E ("The inclusion of the additional payment option and the placement of a large blue PayPal button in the middle of the screen were more attention-grabbing and displaced the hyperlink to the bottom of the screen.").  Unlike many of the cases Defendants rely on, the hyperlink here was buried in a wall of text discussing telemarketing calls and containing strange typos.  *See* Swenson Decl. Ex. A.

Fifth, courts have enforced hybrid wrap agreements where the hyperlink appears *above* the button users are required to click on.  *See Hodosh, Lyon & Hammer, Ltd. v. Barracuda Networks, Inc.*, 2016 WL 705272, at *6 (D.R.I. Jan. 4, 2016), *report and recommendation adopted*, 2016 WL 727166 (D.R.I. Feb. 23, 2016) (noting a "hybrid click-wrap" agreement was enforced in *Crawford v. Beachbody, LLC*, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) "because [the] link to terms with warning that they are binding [was] conspicuously placed above button to place [an] order").  But here, the hyperlink is displayed several lines under the "View My Quote" button.  Accordingly, if a user read the page top to bottom, *a user would be asked to click the button to consent before being presented with the terms he or she was consenting to*, which goes against notice.

A comparison of Swenson Decl. Ex. A and the various Exhibits attached to the Klaus Declaration show that Defendants' cases fall into several distinguishable categories:

- **Hyperlinks were located above the click button.**  *Devries v. Experian Information Solutions, Inc.*, 2017 WL 733096, at *5 (N.D. Cal. Feb. 24, 2017), Klaus Decl. Ex. 1 (Dkt. 28-2) ("directly above the 'Submit Secure Order' button"); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014), Klaus Decl. Ex. 2 ("appear[ed] immediately above the 'PLACE ORDER' button").

- **Hyperlinks are also underlined and/or in all capital letters.**  *Graf v. Match.com, LLC*, 2015 WL 4263957 (C.D. Cal. July 10, 2015), Klaus Decl. Ex. 7 (hyperlinks are blue and underlined); *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014), Klaus Decl. Ex. 8 (hyperlinks are black against gray text and underlined); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017), Klaus Decl. Ex. 9 (hyperlinks are blue, underlined, and in all capital letters); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 280-81 (E.D.N.Y. 2019) (hyperlinks blue or orange, are underlined, and shown multiple times throughout sign-up process).

- **User is automatically directed to a page labeled as terms and conditions, or required to take other affirmative steps.**  *Moule v. United Parcel Service Co.*, 2016 WL 3648961, at *5 (E.D. Cal. July 7, 2016) ("The first time a user processes a package for shipment through the website, and anytime thereafter if the UPS Terms have been amended, the user is automatically directed to a screen entitled 'Service Terms and Conditions Update.'") (internal

quotations omitted); *Moretti v. Hertz Corp.*, 2014 WL 1410432, at \*3 (N.D. Cal. Apr. 11, 2014) (plaintiff had to affirmatively check a box "acknowledging the acceptance of Hotwire's terms and conditions and other acceptable rules") (internal quotations omitted).

- **Single sentence informing user the clicking the button indicates consent to terms and conditions, and hyperlinks are not buried in a wall of text.** *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011), Klaus Decl. Ex. 3[2]; *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683 (E.D. Va. 2020), Klaus Decl. Ex. 4; *Peter v. DoorDash, Inc.*, 2020 WL 1967568, at \*4 (N.D. Cal. Apr. 23, 2020), Klaus Decl. Ex. 5 (noting "[t]he screens are similarly uncluttered and wholly visible"); *Selden v. Airbnb, Inc.*, 2016 WL 6476934 (D.D.C. Nov. 1 2016), Klaus Decl. Ex. 10 (hyperlinks were also in red amongst surrounding text in black and so did not blend in); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017), Klaus Decl. Ex. 6[3];

Finally, last week, the Ninth Circuit issued a decision in *Dohrmann v. Intuit, Inc.*, 2020 WL 4601254 (9th Cir. Aug. 11, 2020), applying the principles cited above. The contrast between the facts in *Dohrmann* and here is instructive. In *Dohrmann*, the plaintiff had sufficient notice because—unlike here—the relevant warning and hyperlink "were the only text on the webpage in italics, were located directly below the sign-in button, and the sign-in page was relatively uncluttered." *Dohrmann*, 2020 WL 4601254, at \*2, RJN Ex. F. By contrast, the hyperlink here is not italicized and is not the only text on the webpage, but instead is buried in a wall of text dealing with telemarketing calls and containing strange typos.

### C.   Assurance's Privacy Policy Does Not Disclose That It Was Using TrustedForm To Wiretap Plaintiff

"[C]onsent is only effective if the person alleging harm consented to the particular conduct, or to substantially the same conduct, and if the alleged tortfeasor did not exceed the scope of that consent." *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072-73 (N.D. Cal. 2016) ("*Opperman II*") (internal quotations omitted). If there is a dispute over the scope of a privacy policy or

---

[2] The *Applebaum* court distinguished *Swift* due to the "prominence of the hyperlinks." *Applebaum*, 263 F. Supp. 3d at 468 n.4.

[3] The First Circuit held the same Terms & Conditions at issue in *Cordas* did not provide sufficient notice to consumers. *See Cullinane*, 893 F.3d at 63.

---

whether it adequately discloses the conduct at issue, then that is a question of fact that cannot be resolved on the pleadings.  *See id.* (holding that "a reasonable jury could find that Yelp's Privacy Policy provisions do not explicitly address—and thus do not obtain knowing consent for—the uploading of a user's address book data for the purpose of finding friends who are already registered Yelp users").

Here, Defendants rely on a portion of Assurance's Privacy Policy stating it "may use third party vendors to assist us with the Service," such as by "monitoring and analyzing Site activity." Swenson Decl. Ex. B at 1.  The Privacy Policy also notes that it will "transfer [] data to our partners or those individuals or entities we engage to provide Services in connection with your transaction."  There are four reasons a jury could conclude these words do not disclose that Assurance wiretapped Plaintiff in real-time using TrustedForm.

First, Assurance's Privacy Policy has a section entitled "Cookies and tracking technology," which is the most logical place one would expect to find a disclosure about ActiveProspect. Swenson Decl. Ex. B at 1.  There is no such disclosure.  The only tracking technology described in this section are "Web Beacons," which "track your navigation on a website."  Swenson Decl. Ex. B at 1.  But Web Beacons only track how many visits a website receives; they do not record a video of every mouse click and keystroke made on a website in real time like TrustedForm does.  *See* WHAT IS A WEB BUG/BEACON?, https://whatismyipaddress.com/web-beacon.

Second, the "tracking technology" section states, "we use these technologies to enhance your shopping experience," but that is not the purpose of ActiveProspect's technology.  *See* FAC, ¶¶ 12, 17 (explaining ActiveProspect's purpose).  In fact, even assuming that TCPA compliance— the purpose of TrustedForm—"enhances" a user's shopping experience, TrustedForm was not solely used in this way because Assurance employed TrustedForm beyond the program's intended purpose.  Specifically, Assurance employed TrustedForm on *all* pages of Nationalfamily.com, not just the page asking for a user's consent to be called.  FAC ¶¶ 25-38.  Defendants cannot rationally argue that monitoring a user's mouse movements and keystrokes on these other pages "enhances" a user's shopping experience.

<u>Third</u>, as to the terms quoted by Defendants, the Privacy Policy states that Assurance "may" use third party vendors, not that it is definitively using a third party to monitor and record every visitor to its website in real time.  "That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent."  *In re Google Inc.*, 2013 WL 5423918, at *12 (emphasis in original).  Likewise, the Privacy Policy does not define what is meant by "monitoring and analyzing Site activity."  It does not disclose that Plaintiff's actions were being recorded in real time.  That lack of clarity and specificity defeats any purported notice or consent.  *See Opperman II*, 205 F. Supp. 3d at 1074 ("[I]t is unclear whether the language in the relevant Privacy Policy provisions even applies to the Friend Finder function at issue in this lawsuit."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[A]ny consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising.").  On the contrary, "monitoring and analyzing Site activity" could simply mean recording basic data about the number of website visits (such as through the Web Beacons disclosed in the tracking sections), not each individual mouse click or movement made by a consumer.  Without a definition provided by Assurance, users cannot know what they are allegedly agreeing to.

<u>Fourth</u>, the "transfer of [] data" does not imply that Plaintiff's actions are being monitored in real time.  Indeed, the remainder of the clause refers to "individuals or entities we engage to provide Services."  Swenson Decl. Ex. B at 1.  As stated in Defendants' Motion to Dismiss, "Assurance is an online platform that allows users to obtain life insurance quotes, from either Assurance or its insurance company partners."  MTD at 1:5-6.  Accordingly, a more reasonable interpretation would be the transfer of customer information to insurance company partners, not to a company secretly wiretapping consumers.  This reading is also supported by the text surrounding the Privacy Policy hyperlink, which refers to telemarketing calls "from insurance companies or their agents, the owner of this website, and[] partner companies."  Swenson Decl. Ex. A.

## II.      DEFENDANTS' OTHER ARGUMENTS FOR DISMISSAL OF THE CIPA CLAIM LACK MERIT

### A.      Defendants' Statute of Limitations Argument Fails Under *Franklin*

Contrary to Defendants' assertions, Plaintiff's CIPA claim is timely because the statute of limitations did not begin until Plaintiff received the recorded video from Defendants in April 2020. MTD at 10; FAC ¶ 46.  That is because "[u]nder California's delayed discovery rule, the statute of limitations does not start to run until the plaintiff discovers, or has reason to discover, the cause of action." *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018), *order clarified*, 2019 WL 452027 (N.D. Cal. Feb. 5, 2019) (internal quotations omitted). "To utilize the delayed discovery rule, the plaintiff 'must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" *Id.* (emphasis in original).  Both factors are readily met.

Judge Illston's holding in *Franklin* is instructive because the plaintiff similarly alleged that "[t]hrough discovery in other litigation with Defendant, Plaintiff learned that it was Defendant's policy to verify certain personal identification information and account information prior to disclosing that its calls are recorded." *Id.* at *1.  Further, although some calls allegedly had recording disclosures, the plaintiff "was shocked to discover that Defendant began recording its conversations with Plaintiff at the outset of its calls prior to disclosing to Plaintiff that the calls were being recorded."  Analyzing these facts through Defendants' own authority, *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005), the *Franklin* court held "that plaintiff has adequately pled that he did not discover, or suspect that wrongdoing had occurred, until he received the recorded phone calls from defendant." *Franklin*, 2018 WL 5923450, at *3.

Here, Plaintiff's allegations are even more detailed than those in *Franklin*.  Like *Franklin*, Plaintiff alleges he "did not know that his activities on Nationalfamily.com had been recorded in real-time until April 2020 [when] [t]he recording was first produced to Plaintiff in April 2020 in response to a letter sent by Plaintiff's counsel" and that "[u]pon receipt of the recording, Plaintiff was shocked to discover that his activities on Nationalfamily.com had been recorded in real-time from the moment Plaintiff accessed the website."  FAC ¶¶ 46-47.  Plaintiff goes a step further than

1    *Franklin* by alleging he "had no way of knowing Defendants had recorded his activities prior to the

2    production of this recording because the video was private and exclusively in Defendants'

3    possession" and "Assurance IQ does not disclose that it will be recording users in real time before

4    or at any time while a user is browsing the Websites" or "in its Privacy Policy." FAC ¶¶ 46-48.

5    Under *Franklin*, these allegations support application of the delayed discovery doctrine, such that

6    the statute of limitations did not begin until April 2020.

7         Defendants argue that Plaintiff cannot claim "he 'had no way of knowing' that Defendants

8    were collecting his information" because if "the information was not being collected on each page,

9    there would have been no point for Plaintiff to have entered it." MTD at 11:8-10. That is a straw

10   man argument. It does not logically follow that when Plaintiff input information on Assurance's

11   website, he must have known that an unseen third party (ActiveProspect) was surreptitiously

12   recording and collecting that information in real time and for undisclosed purposes. Likewise,

13   Defendants' argument that Plaintiff should have been put on notice when "the company called his

14   cell phone," MTD at 11:13-14 fails for the same reason: receiving a call from a company is not

15   related to Defendants recording Plaintiff's mouse clicks, keystrokes and other information in real

16   time. *Id.* Defendants do not (because they cannot) argue that the telemarketing call Plaintiff later

17   received disclosed that his earlier website visit had been recorded in real time by ActiveProspect.

18   The most that Plaintiff could infer is that Assurance gave his phone number to the telemarketer

19   who called him (as suggested in the disclosure on Ex. A of the Swenson Declaration).

20        Finally, Defendants argue the Privacy Policy put Plaintiff on notice that his responses were

21   being collected. MTD at 11:19-20. But as discussed in Section I above, the recording began as

22   soon as Plaintiff was on the website (before the hyperlink to the Privacy Policy was shown to

23   Plaintiff), the hyperlink to the Privacy Policy was obscured, and it did not disclose

24   ActiveProspect's real-time recording. For these reasons, Defendants' authorities are both

25   inapposite and easily distinguishable because they do not address the failure to disclose salient

26   terms in the context of a privacy policy. *NYC Topanga, LLC v. Bank of Am.*, 2015 WL 4075844, at

27   *5 (C.D. Cal. July 2, 2015) (holding delayed discovery doctrine not applicable for parties' failure

28   to read a $3 million business contract); *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d

---

457, 466 (7th Cir. 1990) (holding delayed discovery doctrine not applicable when plaintiffs suspected well before lawsuit that the retirement fund was not properly balanced).

**B.   Assurance's Argument That A Party to a Communication Cannot Be Liable Under CIPA Is Contrary to Section 631(a) and *In re Facebook***

Quoting a single sentence from *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607 (9th Cir. 2020) ("*In re Facebook*"), Assurance argues it cannot be liable under CIPA because "[S]ection 631 … has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation." MTD*,* at 12:2-3.  As set forth below, that argument fails because: (1) it contradicts the plain text of Section 631; and (2) *In re Facebook* reversed dismissal where the defendant made the same argument Assurance makes here.

**1.   Assurance's Argument Contradicts the Plain Text of Section 631(a)**

As this Court has held, statutory interpretation begins "with the language of the statute itself."  *Anderson v. SeaWorld Parks and Enter., Inc.*, 2016 WL 8929295, at *10 (N.D. Cal. Nov. 7, 2016) (White, J.).  The plain text of Section 631, as well as caselaw, establish Assurance can be liable for enabling ActiveProspect's eavesdropping.

Section 631 not only prohibits eavesdropping, but also imposes liability for "*any person*" who "aids, agrees with, employs, or conspires with" anyone who violates section 631(a).  Cal. Penal Code 631(a) (emphasis added); *see also In re Lenovo Adware Litig*., 2016 WL 6277245, at *8 (N.D. Cal. Oct. 27, 2016) (denying motion to dismiss CIPA claim based solely on allegation that the defendant "aided, agreed with, or conspired with" another defendant to violate section 631).  Section 631(a) includes no exemption for participants to a conversation who permit third parties to eavesdrop on that conversation.  *See* Cal. Penal Code § 631(a).  In other contexts, the Ninth Circuit and California Supreme Court have held that the term "'[a]ny person' means exactly that, and may not be interpreted restrictively."  *Bonnichsen v. U.S.*, 367 F.3d 864, 874 (9th Cir. 2004); *see People v. Snyder*, 22 Cal. 4th 304, 314 (2000) ("we entertain no doubt that the reference to 'any person' in section 84301 should be construed according to its plain and obvious meaning").  There is no reason for a different interpretation here.

1    Judge Chhabria's decision in *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, *1 (N.D.

2 Cal. Oct. 23, 2019), is instructive because like here, a website operator (Moosejaw.com) hired a

3 third party (NaviStone) to "eavesdrop[] on [plaintiff's website] communications with Moosejaw."

4 The *Revitch* court rejected the same argument Assurance makes here, because even if Moosejaw

5 could not be liable for eavesdropping on its own communications, it could still be liable under

6 section 631 for "enabling NaviStone's wrongdoing." *Id.* at *2.

7    The *Revitch* court followed the California Supreme Court's decision in *Ribas v. Clark*, 38

8 Cal. 3d 355 (1985), which held that section 631 "was designed to protect a person placing or

9 receiving a call from a situation where the person on the other end of the line permits an outsider to

10 tap his telephone *or listen* in on the call." *Ribas*, 38 Cal. 3d at 363 (emphasis in original; internal

11 quotation omitted).  "Allow[ing] third persons to eavesdrop on conversations via extensions would

12 be a clear contradiction of the intent of section 631(a)." *Id.*  That reasoning applies here, because

13 Assurance "aids, agrees with, employs, or conspires with" ActiveProspect to eavesdrop on

14 communications on Assurance's websites.  *See* FAC, ¶¶ 59, 64 (aiding and abetting allegations);

15 *see also id.* at ¶¶ 24-29.

16    Assurance relies on *Powell v. Union Pac. Railroad Co.*, 864 F. Supp. 2d 949 (E.D. Cal.

17 Mar. 31, 2012), for the proposition that a party to a communication cannot be liable for aiding and

18 abetting under section 631.  As Assurance acknowledges in footnote 8 of its motion to dismiss,

19 Judge Chhabria did not share Assurance's interpretation of *Powell*, and for good reason.  For

20 starters, Assurance does not explain how to reconcile its interpretation of *Powell* with the plain text

21 of section 631.  Equally important, the *Powell* court did *not* hold that a party to a communication

22 can *never* be liable for aiding and abetting unlawful eavesdropping, as Assurance implies.  *See*

23 *Powell*, 864 F. Supp. 2d at 954-56.  Instead, *Powell* concluded there was no "third party" present

24 when two Union Pacific officers who were jointly conducting a company investigation participated

25 in a phone call with another Union Pacific employee.  *See id.* at 953 (describing circumstances of

26 eavesdropping claim); *id.* at 954-56 (explaining legal basis for the decision).  It logically follows

27 that if there was no "third party" in the first place, then there was no basis to find the defendants

28

1    "aided" in the violation of section 631 by a third party.  In short, the facts in *Powell* are easily

2    distinguishable here, just as they were in *Revitch*.

### 2.    The Ninth Circuit Rejected the Same Argument Assurance Makes Here

4        In the portion of *In re Facebook* quoted by Assurance, the Ninth Circuit began its analysis

5    by quoting *Warden v. Kahn*, 99 Cal. App. 3d 805 (1979), for the *general* proposition that 631

6    applies only to eavesdropping by third parties.  *In re Facebook,* 956 F.3d at 607.  Unlike here,

7    *Warden* involved a simple case of one person recording another, with no third-party involvement.

8    *See Warden*, 99 Cal. App. at 808-809 (describing allegations).  Hence, the principle cited in

9    *Warden* did not involve aiding and abetting liability under Section 631(a).

10       More importantly, the Ninth Circuit held the rule in *Warden* did not apply because

11   Facebook surreptitiously duplicated and forwarded information about the user's website activity.

12   *See In re Facebook* 956 F.3d at 608.  The court explained the intent of wiretap laws is to "prevent

13   the acquisition of the contents of a message by an *unauthorized third-party or an unseen*

14   *auditor*"—like ActiveProspect here.  *Id.* (emphasis added); *see also id.* at 598 (explaining similar

15   legislative purposes behind CIPA and the federal Wiretap Act).  "Permitting an entity to engage in

16   the unauthorized duplication and forwarding of unknowing users' information would render

17   permissible the most common methods of intrusion, allowing the exception to swallow the rule.

18   Therefore, we conclude that Facebook is not exempt from liability as a matter of law under the

19   Wiretap Act or CIPA as a party to the communication."  *Id.*

20       The same reasoning applies here.  This case and *In re Facebook* both involve website

21   operators who surreptitiously record information about consumer's internet usage and activity.  *See*

22   FAC, ¶¶ 1, 16-29.  This case involves "the acquisition of the contents of a message by an

23   unauthorized third-party or an unseen auditor"—namely, ActiveProspect.  *In re Facebook*, 956

24   F.3d at 608; *see also* FAC, ¶¶ 16-22 (describing ActiveProspect's Trusted Form product).  The

25   amount of information Defendants monitor and record is more extensive here than it was in *In re*

26   *Facebook*:  Facebook only tracked website user's internet history, but Defendants record website

27   user's keystrokes and mouse clicks, medical information, partial internet history, geographic

28

location, amount of time spent on the website, IP address, browser type, and operating system. *Compare In re Facebook,* 956 F.3d at 596 *with* FAC, ¶¶ 18-19, 21, 31-39.  In sum, adopting Assurance's argument would not only contradict the plain text of 631(a), but also would be reversible error under *In re Facebook*.

### III.   PLAINTIFF'S COMMON LAW INVASION OF PRIVACY CLAIM TURNS ON A QUESTION OF FACT

To state a claim for invasion of privacy under the California Constitution, "Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'"  *In re Facebook, Inc.*, 956 F.3d at 601 (quoting *Hernandez v. Hillsides*, 47 Cal. 4th 272, 286 (Cal. 2009)).  Defendants do not contest that Plaintiff has a legally protected privacy interest.  As to the second factor, Defendants merely state that "Plaintiff could not have had any 'reasonable expectation of privacy' in the collection and use of his information because he admittedly provided the information."  MTD at 13:10-13.  That argument lacks merit, because there was no reason for Plaintiff to know that his communications disclosing personal and medical information were being recorded in real time by ActiveProspect, and for reasons that had nothing to do with providing a quote for life insurance.

Thus, Plaintiff need only show that the breach was highly offensive.  "California tort law provides no bright line on ['offensiveness']; each case must be taken on its facts."  *Hernandez*, 47 Cal. 4th at 287 (quoting *Shulman v. Group W Prods., Inc.,* 18 Cal. 4th 200, 237 (1998)).  Collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion.  *See*, *e.g.*, *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *14-15 (W.D. Wash. June 26, 2012); *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (same).  The bottom line, however, is that the question of whether Defendants' conduct was sufficiently offensive raises a question of fact.  On that basis, the Ninth Circuit reversed dismissal of an invasion of privacy claim where Facebook only obtained internet history—which is far less than the scope of information obtained here.  *See* 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable

individual is an issue that cannot be resolved at the pleading stage."); *see also Revitch*, 2019 WL 5485330, at *3 (denying motion to dismiss because whether conduct is offensive is a factual question); *Opperman*, 205 F. Supp. 3d at 1079 (same). Hence, Defendants are once again asking the Court to make the same reversible error made in *In re Facebook*.

Defendants primarily rely on *Folgestrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (Cal. Ct. App. 2011) and *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ("*In re iPhone*"), but neither supports the position advanced by Defendants. As Judge Tigar explained in *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014) ("*Opperman I*"), *Folgestrom* is "distinguishable" because it did not involve the "surreptitious" acquisition of personal information. Judge Tigar likewise rejected the argument that secretly acquiring personal information, like Defendants have done here, is "routine commercial behavior," and concluded that whether the conduct at issue was "highly offensive" was a factual dispute "best left for a jury." *Id.* at 1061; *see also In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."). Finally, Judge Tigar also declined to follow *In re iPhone*, explaining it was "not persuaded by cases that have mechanically applied *Folgelstrom* to invasion of privacy claims."[4]  *Opperman II*, 205 F. Supp. 3d at 1078.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss should be denied in its entirety. Alternatively, if the Court determines that the pleadings are deficient in any respect, Plaintiff respectfully requests leave to amend to cure any such deficiencies. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint).

---

[4] Likewise, *Yunker v. Pandora Media, Inc.,* 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) and *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236, at *2, *11 (N.D. Cal. Mar. 26, 2013) are inapposite because the facts at issue here are more akin to *Opperman*. *See also Goodman v. HTC Am., Inc.,* 2012 WL 2412070, at *14 (W.D. Wash. June 26, 2012) (privacy violation found when defendant "transmitted user data to a third-party tracking company").

1   Dated:  August 18, 2020                **BURSOR & FISHER, P.A**.

2                                          By:   _/s/ Joel D. Smith_
3                                                   Joel D. Smith

4                                          L. Timothy Fisher (State Bar No. 191626)
                                           Joel D. Smith (State Bar No. 244902)
5                                          Blair E. Reed (State Bar No. 316791)
                                           1990 North California Blvd., Suite 940
6                                          Walnut Creek, CA 94596
                                           Telephone: (925) 300-4455
7                                          Facsimile:  (925) 407-2700
                                           E-mail: ltfisher@bursor.com
8                                                    jsmith@bursor.com
                                                     breed@bursor.com
9
                                           **BURSOR & FISHER, P.A.**
10                                         Max S. Roberts (*Pro Hac Vice*)
                                           888 Seventh Avenue, Third Floor
11                                         New York, NY 10019
                                           Telephone: (646) 837-7150
12                                         Facsimile:  (212) 989-9163
                                           E-Mail: mroberts@bursor.com
13
14                                         *Attorneys for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28