1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

12

FLORENTINO JAVIER,

        Plaintiff,

    v.

ASSURANCE IQ, LLC, et al.,

        Defendants.

Case No.  20-cv-02860-CRB

**ORDER GRANTING MOTION TO DISMISS**

13

14

15

16

17

18

19

      Plaintiff Florentino Javier ("Javier") sues Assurance IQ, LLC, an insurance website operator, and ActiveProspect Inc., a software provider (together, "Defendants"), for violations of Section 631 the California Invasion of Privacy Act ("CIPA") and Invasion of Privacy under the California Constitution.  See SAC (dkt. 38).  Javier alleges that during his visit to Assurance's website, Nationalfamily.com, Defendants, through Active Prospect's software, "secretly observe[d] and record[ed] [his] keystrokes, mouse clicks, and other electronic communications."  Id. ¶ 4.

20

21

22

23

24

25

26

27

28

      After two prior orders on motions to dismiss before Judge White, which held that Javier consented to Defendants' information collection by assenting to Assurance's Privacy Policy at the end of his interaction with the website, the Ninth Circuit reversed, holding that Javier plausibly pleaded that he did not consent to any information collection that occurred prior to assenting to the Privacy Policy.  Javier v. Assurance IQ, LLC, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022).  The Ninth Circuit did not reach "Defendants' other arguments, including whether Javier impliedly consented to the data collection, whether ActiveProspect is a third party under Section 631(a), and whether the statute of limitations has run."  Id. at *2.  Judge White ordered a third round of motion to

1  dismiss briefing on those issues.  After that briefing was completed, the case was

2  reassigned to this Court.

3          Finding this matter suitable for resolution without oral argument pursuant to Civil

4  Local Rule 7-1(b), and finding that Javier has failed to plead facts sufficient to invoke the

5  delayed discovery doctrine, thus rendering his claims time-barred, the Court GRANTS

6  Defendants' motion to dismiss.

7  **I.      BACKGROUND**

8          **A.      Facts**

9          Assurance runs an online platform for users to obtain life insurance quotes.

10  SAC ¶¶ 6–9. A user enters information about their demographics, family situation, and

11  medical history, and then clicks "View My Quote."  Id. ¶¶ 38–45.  At the final step, the

12  website states that by clicking "View my Quote," the user provides an "electronic

13  signature as an indication of . . . intent to agree to the website's Privacy Policy" and

14  "Terms of Service."  Id. ¶ 45.

15          Assurance partners with ActiveProspect to provide software for its website.

16  Id. ¶¶ 29–31. ActiveProspect makes a software product called "TrustedForm," which is a

17  "lead certification product that helps businesses comply with regulations like the [TCPA] .

18  . . by documenting consumer consent."  Id. ¶ 12.  Specifically, TrustedForm is a piece of

19  code that can be pasted into a form page to record "keystrokes, mouse clicks, data entry,

20  and other electronic communications of visitors to websites," id. ¶ 21, and "begins the

21  moment a user accesses or interacts with" a website.  Id. ¶ 22.  As a result, a website owner

22  has a record of a users' entire interaction on its website, which is hosted on

23  ActiveProspect's servers.  Id. ¶ 57.

24          Javier visited Nationalfamily.com in January 2019.  Id. ¶ 35.  He entered all of the

25  required information, including health data, and presumably later obtained a life insurance

26  quote.  Id. ¶ 38–45.  In April 2020, Javier sent a letter through counsel "over purported

27  violations of the Telephone Consumer Protection Act."  Id. ¶ 51.  The TrustedForm

28  VideoReplay recording was produced to Javier's counsel in response to that letter.  Id.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Javier alleges that he had "no way of knowing Defendants had recorded his activities prior

2  to the production of this recording because the video was private and exclusively in

3  Defendants' possession." Id.

4          **B.      Procedural History**

5          In March 2021, Judge White granted Defendants' first motion to dismiss, finding

6  that Javier had consented to their collection of his information by clicking "View my

7  Quote," because the conduct Javier complained of was disclosed in Assurance's Privacy

8  Policy. Javier v. Assurance IQ, LLC, 20-cv-2860, 2021 WL 940319, at *2–3 (N.D. Cal.

9  Mar. 9, 2021). After Javier filed the second amended complaint (the same complaint at

10 issue in this order), Judge White again dismissed Javier's claims on the same grounds, this

11 time without leave to amend. Javier v. Assurance IQ, LLC, 20-cv-2860, 2021 WL

12 3669343, at *3–4 (N.D. Cal. Aug. 6, 2021). Javier appealed this ruling to the Ninth

13 Circuit,[1] and the Ninth Circuit reversed, holding that Javier did not consent under Section

14 631 to any information collection that occurred prior to assenting to the Privacy Policy.

15 Javier, 2022 WL 1744107. The Ninth Circuit did not reach "Defendants' other arguments,

16 including whether Javier impliedly consented to the data collection, whether

17 ActiveProspect is a third party under Section 631(a), and whether the statute of limitations

18 has run." Id. at *2. Judge White ordered a third round of motion to dismiss briefing on

19 those issues. After that briefing was completed, this case was reassigned to this Court.

20 **II.    LEGAL STANDARD**

21         Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be

22 dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P.

23

24 ─────────────
   [1] Javier only appealed Judge White's dismissal of his Section 631 claims, not his constitutional
25 claims. See Pl.-Appellant's Opening Br. *4–5, Javier v. Assurance IQ, LLC, No. 21-16351, 2021
   WL 4995795 (9th Cir. filed Oct. 18, 2021) (stating the issue in the case as "[w]hether the lower
26 court erred by finding that retroactive or after-the-fact consent was valid under Cal. Penal Code
   § 631(a)"). The Ninth Circuit thus only reversed Judge White's dismissal of the Section 631(a)
27 claim and did not disturb the dismissal of the constitutional claim. Javier, 2022 WL 1744107.
   Because Javier's time to appeal Judge White's dismissal of the constitutional claim has passed, see
28 Fed. R. App. P. 4(a)(1)(A), that dismissal is final, and the only claim remaining in the case is the
   Section 631 claim.

12(b)(6).  Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory.  <u>Godecke v. Kinetic Concepts, Inc.</u>, 937 F.3d 1201, 1208 (9th Cir. 2019).  Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u> at 678.  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).  However, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754–55 (9th Cir. 1994).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  <u>Leadsinger, Inc. v. BMG Music Publ'g</u>, 512 F.3d 522, 532 (9th Cir. 2008) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296–97 (9th Cir. 1990).

## III.    DISCUSSION

The Court addresses Defendants' three arguments for dismissal of Javier's Section 631 claim in the following order: (1) Javier impliedly consented to Assurance and ActiveProspect's collection of his data; (2) ActiveProspect is an "extension" of Assurance, rather than a third-party eavesdropper; and (3) Javier failed to plead requisite facts to assert

United States District Court
Northern District of California

delayed discovery, thus requiring dismissal on statute of limitations grounds.

### A.    Implied Consent

Defendants argue that Javier "impliedly consented to the data collection he now challenges from the moment he arrived at Assurance's website." Mot. (dkt. 58) at 5. Because, while he may have impliedly consented to Assurance's collection of his information, he did not impliedly consent to <u>ActiveProspect</u> doing so, this argument fails.

"In the wiretapping context, a finding of implied-in-fact consent requires 'circumstances indicating that the [party] knowingly agreed to the surveillance.'" <u>Negro v. Superior Ct.</u>, 230 Cal. App. 4th 879, 892 (2014) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 117 (1st Cir. 1990)). Such circumstances "will vary from case to case," but "will ordinarily include language or acts which tend to prove (or disprove) that a party knows of, or assents to, encroachments on the routine expectation that conversations are private." <u>Griggs-Ryan</u>, 904 F.2d at 117. "The typical case involves the user's continued use of a communication device or system after receiving notice that his or her communications may be intercepted." <u>Negro</u>, 230 Cal. App. 4th at 892.

Defendants argue that three facts demonstrate implied consent here: (1) Javier visited a website to get an insurance quote, which would necessarily require "answering questions relevant to a quote tailored to him"; (2) he "kept moving through the webform" even as it displayed evidence that "the information he was entering was being collected and processed"; and (3) Javier's assent to the Privacy Policy via clicking the "View My Quote" button is "'corroborative' of his earlier implied consent." Mot. at 6–7 (quoting <u>United States v. Johnson</u>, 875 F.3d 1265, 1278 n.7 (9th Cir. 2017)).

While Defendants' first two arguments may go to Javier's consent to Assurance's collection of his information to provide a quote,[2] they do not provide evidence of consent to ActiveProspect's collection of his data. The only evidence of that consent is Javier's

---

[2] And in any case, Javier admitted in his opposition that he expected Assurance to collect his information. <u>See</u> Opp'n (dkt. 60) at 1–2 ("Javier assumed that <u>Assurance</u> collected the information that he provided to Assurance on Assurance's website.").

assent to the Privacy Policy after entering his information, but the Ninth Circuit reversed Judge White's prior order on that basis. <u>Javier</u>, 2022 WL 1744107, at *2.  And in any case, Defendants have not demonstrated that Javier "continued [to] use" Assurance's website after he had constructive notice that his communications "may be intercepted" by ActiveProspect.  <u>Negro</u>, 230 Cal. App. 4th at 892.  Thus, implied consent does not provide a basis for dismissal of the Section 631 claim against ActiveProspect at this stage.

### B.    Whether ActiveProspect is a Third-Party Eavesdropper

Defendants argue that Javier's claims must be dismissed because "ActiveProspect acted solely as an extension of Assurance and therefore was not a third party within the meaning of Section 631."  Mot. at 8.  Whether software providers like ActiveProspect are third parties under California's eavesdropping statute, or mere tools used by websites, goes to the heart of the privacy concerns articulated in Section 631 and California cases interpreting it.

Section 631 creates four avenues for relief:

(1) where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument";

(2) where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";

(3) where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and

(4) where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

Cal. Penal Code § 631(a).  Javier alleges that ActiveProspect has violated the second prong of Section 631, and by employing ActiveProspect and using its software, Assurance has

6

violated the fourth prong. SAC ¶¶ 76–77.[3]

Two basic principles of Section 631 liability are undisputed. First, if a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third party), then the third party is liable under the second prong (and the participant is often liable under the fourth prong). Ribas v. Clark, 38 Cal. 3d 355, 361–62 (1985); see also Revitch v. New Moosejaw, LLC, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (extending liability under the fourth prong of Section 631 to website that employed a software similar to TrustedForm). Second, a party to a conversation can record it without the other party's knowledge without incurring Section 631 liability. Rogers v. Ulrich, 52 Cal. App. 3d 894, 899 (1975).

A brief explanation of Rogers v. Ulrich and Ribas v. Clark is useful here.  In Rogers v. Ulrich, Ulrich used a tape recorder jack installed in his telephone to record a conversation he had with Rogers, and then played the conversation for a third party.  52 Cal. App. 3d at 897–98.  Relying on the legislative finding that the law is intended to prevent "eavesdropping," the appellate court held that a party to a conversation cannot "eavesdrop" under the law: "It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation."  Id. at 899; see also Cal. Penal Code § 630 ("The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . .").  In Ribas v. Clark, which arose out of a feud over a divorce

---

[3] In his complaint, Javier appears to also allege a violation of the first prong of Section 631 as to both Defendants.  See SAC ¶ 75 ("Defendants intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and class members on the one hand, and Assurance IQ's Websites on the other hand.").  As Defendants correctly argue, the first prong of Section 631 does not apply to internet communications, see, e.g., Mastel v. Miniclip SA, 549 F. Supp. 3d 1129, 1134–36 (E.D. Cal. 2021), and Javier does not respond to this argument in his opposition.  See Opp'n.  Javier also alleges that the second prong applies to Assurance as well as ActiveProspect.  See SAC ¶ 76.  But as discussed in the prior section, Javier admits in his opposition that he "assumed" that Assurance would collect the information he provided to it.  See Opp'n at 1–2.  In any case, Assurance, as a party to the communication, cannot be held liable under the second prong of Section 631 for recording it. Rogers v. Ulrich, 52 Cal. App. 3d 894, 899 (1975).

United States District Court
Northern District of California

United States District Court
Northern District of California

settlement, the wife asked her friend, Clark, to listen in (via an extension) to a conversation with her former husband, Ribas, about a prior conversation Ribas had had with the wife's attorney. Ribas, 38 Cal. 3d at 358.[4] The California Supreme Court held that such an act is eavesdropping under the statute, because the statute differentiates between "the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor." Id. at 360–61. "[S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." Id. at 361.

Thus, the Court must decide whether ActiveProspect is more akin to the tape recorder in Rogers, held by Assurance, or the friend in Ribas (in which case, Assurance is the wife who allowed ActiveProspect to listen in). See Yoon v. Lululemon USA, Inc., 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door?"). Javier's counsel has brought many similar cases in this Circuit,[5] with two general avenues of decision.

The first set of cases holds that software providers like ActiveProspect are third parties within the meaning of Section 631 and Ribas. Revitch v. New Moosejaw involved NaviStone, a "marketing company and data broker" that embeds a "small parcel of computer code" onto participating websites to "spy on the visitor as he or she browses the website" and then "uses this information to attempt to de-anonymize website visitors." Second Amended Class Action Complaint ¶¶ 15, 17, Revitch, No. 18-CV-06827-VC, dkt. 43 (N.D. Cal. filed May 22, 2019). Judge Chhabria held that Revitch pleaded that NaviStone "acted as a third party" because "the code embedded into the Moosejaw.com

---

[4] There is some dispute between the parties as to whether Clark was the wife's lawyer in Ribas. See Opp'n at 8; Reply (dkt. 62) at 7. From a review of the disposition at the court of appeals, Defendants appear to be correct that Clark only listened as the wife's friend, not her lawyer or employee. Ribas v. Clark, 154 Cal. App. 3d 1007 (1984).

[5] See, e.g., Graham v. Noom, Inc., 533 F. Supp. 3d 823 (N.D. Cal. 2021); Johnson v. Blue Nile, Inc., No. 20-CV-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021); Yale v. Clicktale, Inc., No. 20-CV-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021); Revitch, 2019 WL 5485330; Yoon, 549 F. Supp. 3d 1073; Saleh v. Nike, Inc., 562 F. Supp. 3d 503 (C.D. Cal. 2021).

pages functioned as a wiretap that redirected [Revitch's] communications to NaviStone

while he browsed the site." <u>Revitch</u>, 2019 WL 5485330, at *1.  Similarly, in <u>In re</u>

<u>Facebook, Inc., Internet Tracking Litigation</u>, the Ninth Circuit held that Facebook, when it

intercepted communications between a user's browser and a third-party website, was not

as a matter of law a "party" to that communication.  956 F.3d 589, 607–08 (9th Cir. 2020);

<u>see also</u> <u>Yoon</u>, 549 F. Supp. 3d at 1081 ("Yoon's first claim for relief survives Quantum

Metric's participant exception challenge because she alleges that QM captures, stores, and

interprets her real-time data—which extends beyond the ordinary function of a tape

recorder."); <u>Saleh v. Nike, Inc.</u>, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021) ("Here, as in

<u>Revitch</u>, FullStory did not become a "party" to the communication simply because it was

providing recording and transmission services for Nike.").

      The second set of cases, led by Judge Beeler in <u>Graham v. Noom</u>, holds that

software vendors like ActiveProspect are "extension[s]" of the websites that employ them,

and thus not third parties within the meaning of the statute.  533 F. Supp. 3d 823, 832

(N.D. Cal. 2021).  In <u>Graham</u>, the software vendor, FullStory, "provide[d] a tool – like the

tape recorder in <u>Rogers</u> – that allow[ed] Noom to record and analyze its own data in aid of

Noom's business," and thus was "not a third-party eavesdropper" under the statute.  <u>Id.</u> at

832–33.  Judge Beeler distinguished <u>Moosejaw</u> and <u>In re Facebook</u> because both of the

third parties in those cases were alleged to have used the data for their own benefit and not

for the sole benefit of the party to the communication.  <u>Id.</u> at 832 ("NaviStone and

Facebook were independent parties who mined information from other websites and sold

it: NaviStone through its code on participating e-commerce sites and Facebook through its

plug-ins on third-party sites.").  Judge Beeler then applied this reasoning in two other

cases. <u>Johnson v. Blue Nile, Inc.</u>, No. 20-CV-08183-LB, 2021 WL 1312771, at *2 (N.D.

Cal. Apr. 8, 2021); <u>Yale v. Clicktale, Inc.</u>, No. 20-CV-07575-LB, 2021 WL 1428400, at *3

(N.D. Cal. Apr. 15, 2021).  Substantially similar reasoning regarding a different website's

use of ActiveProspect's TrustedForm software was also recently adopted by Judge Alsup

in <u>Williams v. What If Holdings, LLC</u>, 22-cv-3780, dkt. 49 (N.D. Cal. Dec. 22, 2022), slip

United States District Court
Northern District of California

1   op. at 2–7. Defendants argue that the Court should agree with Judges Beeler and Alsup and

2   hold that where "the alleged third party is doing only what the party to the communication

3   directs, then that purported third party is nothing more than 'an extension' of the party and

4   cannot be liable under a statute concerned only with non-party recording."  Mot. at 12

5   (quoting Graham, 533 F. Supp. 3d at 832).

6          There are two problems with this reading of Section 631.  The first is that it

7   interprets the second prong of the statute—"willfully and without consent of all parties to

8   the communication, or in any unauthorized manner, reads, or attempts to read, or to learn

9   the contents or meaning of any message, report, or communication while the same is in

10  transit"—based on the intentions and usage of the prospective third party.  See Cal. Penal

11  Code § 631(a).  But the third prong of the statute already penalizes "use"—"us[ing], or

12  attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any

13  information so obtained."  Id.  Thus, reading a use requirement into the second prong

14  would add requirements that are not present (and swallow the third prong in the process).

15  The second problem with this view is that it was not the California Supreme Court's stated

16  rationale in Ribas:  The Ribas Court did not consider the wife's friend's intentions or the

17  use to which they put the information they obtained.  Instead, it emphasized the privacy

18  concerns at issue with having an "unannounced second auditor" listening in on the call,

19  when Section 631 concerns "the right to control the nature and extent of the firsthand

20  dissemination of [their] statements."  Ribas, 38 Cal. 3d at 360–61.

21         There are only two other grounds upon which to conclude that ActiveProspect is not

22  an "unannounced second auditor" of the interaction between Javier and Assurance: (1) If

23  ActiveProspect does not have the capability to use its record of the interaction for any

24  other purpose (just as a tape recorder has no independent capability to divulge the

25  recording for any other purpose but that of its owner); or (2) the ubiquity of services like

26  ActiveProspect on the internet effectively renders it party to the "firsthand dissemination"

27  of Javier's information to Assurance.  Id.  As to the first, Javier pleads that ActiveProspect

28  monitors, analyzes, and stores information about visits to Assurance's websites, and that

1    Active Prospect can use that information for other purposes, even if Javier has not alleged

2    that they have done so in this case.  See, e.g., SAC ¶¶ 21–25, 57, 62.  As the court in Yoon

3    v. Lululemon articulated, this is "beyond the ordinary function of a tape recorder."  Yoon,

4    549 F. Supp. 3d at 1081.  As to the second, Javier pleads that he was "unaware at the time

5    that his keystrokes, mouse clicks, and other electronic communications . . . would be

6    disclosed to ActiveProspect," and the Court treats this allegation as true on a motion to

7    dismiss.  See SAC ¶ 4.

8         Defendants' arguments to the contrary are also unavailing.  First, Defendants

9    contend that the ubiquity of third-party tools like ActiveProspect's software "would force

10   websites to either expressly disclose" the presence of those tools, or "create those tools in-

11   house."  Mot. at 10.  Defendants call the first option "technologically impractical and far-

12   from-user-friendly" and the second "wildly inefficient."  Id.  The acquisition of consent

13   when visiting websites (for the collection of cookies, for example) is a regular occurrence

14   and hardly particularly "technologically impractical."  Second, Defendants argue that

15   "Plaintiff would have no claim if Assurance had created the TrustedForm software itself."

16   Id. at 9.  This is true.  But under Section 631, it has always mattered who is holding the

17   tape recorder: If Rogers is holding it, there is no claim; but if Ribas is, there surely is one.

18   This is because the Ribas Court viewed "the right to control the nature and extent of the

19   firsthand dissemination of [one's] statements" as critical to the purposes of Section 631,

20   and there is no reason to suspect that it would decide differently in this context.  Ribas, 38

21   Cal. 3d at 361.

22        Thus, Javier has plausibly alleged that ActiveProspect is a third party under Section

23   631, and Defendants' argument that ActiveProspect is an "extension" of Assurance does

24   not provide a basis for dismissal at this stage.

25        **C.    The Delayed Discovery Doctrine**

26        Defendants argue that Javier fails to plead facts necessary to invoke the delayed

27   discovery doctrine.  Because the Court finds that Javier was on inquiry notice as a result of

28   his visit to Assurance's website in January 2019, Defendants' motion to dismiss is granted

11

1    on this basis.

2         CIPA has a one-year statute of limitations.  Cal. Civ. Proc. Code § 340(a).  Because

3    the alleged Section 631 violation occurred in January 2019, and Javier did not file suit until

4    April 24, 2020, Javier must plead facts that toll the statute to bring his claim.  He argues

5    that the delayed discovery doctrine applies, because he "did not know that his activities on

6    Nationalfamily.com had been recorded in real-time until April 2020" when that recording

7    was produced to Javier.  SAC ¶ 51.  Javier alleges that he "had no way of knowing

8    Defendants had recorded his activities prior to the production of this recording because the

9    video was private and exclusively in Defendants' possession."  Id.  However, in his

10   opposition, Javier clarifies that "Javier assumed that Assurance collected his information"

11   during his website visit, but "[w]hat matters is when he learned that ActiveProspect had

12   surveilled his internet communications."  Opp'n at 10 (emphasis added).

13        To invoke the delayed discovery doctrine, a plaintiff must plead facts to show the

14   "(1) the time and manner of discovery and (2) the inability to have made earlier discovery

15   despite reasonable diligence."  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808

16   (2005).  But the delayed discovery doctrine "only delays accrual until the plaintiff has, or

17   should have, inquiry notice of the cause of action."  Id. at 807.  A plaintiff has inquiry

18   notice "when the plaintiff suspects or should suspect that her injury was caused by

19   wrongdoing, that someone has done something wrong to her."  Jolly v. Eli Lilly & Co., 44

20   Cal. 3d 1103, 1110 (1988).  "[P]laintiffs are required to conduct a reasonable investigation

21   after becoming aware of an injury, and are charged with knowledge of the information that

22   would have been revealed by such an investigation."  Fox, 35 Cal. 4th at 807.  "The

23   question when a plaintiff actually discovered or reasonably should have discovered the

24   facts for purposes of the delayed discovery rule is a question of fact unless the evidence

25   can support only one reasonable conclusion."  Ovando v. County of Los Angeles, 159 Cal.

26   App. 4th 42, 61 (2008).

27        Javier argues that he was aware of Assurance's collection of his information, but he

28   was not aware of ActiveProspect's involvement until April 2020.  Opp'n at 10.  But under

12

the delayed discovery doctrine, knowledge of <u>injury</u>, not knowledge of a particular defendant's role in the injury, triggers inquiry notice.  In <u>Raifman v. Wachovia Securities</u>, for example, the plaintiffs alleged that they were on notice of one defendant's wrongdoing, and not the other defendant, within the statute of limitations period.  649 F. App'x 611, 612 (9th Cir. 2016).  The Ninth Circuit affirmed the district court's dismissal, because "a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of <u>all potential causes of that injury</u>."  <u>Id.</u> at 613 (quoting <u>Fox</u>, 35 Cal. 4th at 808).

　　Javier contends that he was unaware of the precise injury at issue following his visit to the website because he "did not know that ActiveProspect's spyware was installed on the website when he visited the site."  Opp'n at 12.  But this narrow characterization of the injury is belied by Javier's allegations in the complaint:  He alleges that <u>both</u> Assurance IQ and ActiveProspect wrongfully intercepted his information during his visit to Nationalfamily.com.  <u>See, e.g.</u>, SAC ¶ 2 ("During his visit, Defendants Assurance IQ and ActiveProspect recorded Mr. Javier's electronic communications in real time, used the intercepted data to attempt to learn his identity, zip code, date of birth, height, weight, use of prescription medications and tobacco products, and other PII and PHI."); <u>id.</u> ¶ 52 ("Upon receipt of the recording, Plaintiff was surprised to learn that his activities on Nationalfamily.com had been recorded in real-time from the moment Plaintiff accessed the website."); <u>id.</u> ¶ 76 (alleging that both Defendants violated the second prong of Section 631); <u>id.</u> ¶ 78 (alleging that Javier had not "consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiff['s] . . . electronic communications").  If Javier "assumed" that Assurance was collecting his information in January 2019, he at least had a suspicion of his direct claim under Section 631 as to Assurance.  Opp'n at 10; SAC ¶ 76; <u>see also</u> <u>Jolly</u>, 44 Cal. 3d at 1112 (holding that "a plaintiff is under a duty to reasonably investigate" and that "a <u>suspicion</u> of wrongdoing, coupled with a knowledge of the harm and its cause, will commence the limitations period").  Though Javier does not appear to pursue his theory of direct injury on this

1    motion (and for good reason, see supra note 3) it is still alleged in the second amended

2    complaint.

3          If Javier, by his own admission, was aware Assurance's collection of his

4    information in January 2019, he also had constructive notice of the Privacy Policy, which

5    states that Assurance "may use third party vendors to assist" it with the collection of

6    visitors' personal information, including "monitoring and analyzing Site activity."

7    Swenson Decl. (dkt. 58-2) Ex. B;[6] see also Eisenberg v. Citibank, NA, 787 F. App'x 929,

8    930–31 (9th Cir. 2019) ("Eisenberg had all the necessary information related to her claims

9    when she signed the loan paperwork at the end of July 2006. Even if the court credits her

10   assertion that she did not read or understand the documents, the documents put her on

11   constructive notice."). Thus, Javier was on inquiry notice of a possible third party who

12   would have been another "potential cause[] of [his] injury." Raifman, 649 F. App'x at 613

13   (emphasis omitted). It is of no consequence, too, that Javier did not know that

14   ActiveProspect was the third party involved. See Fox, 35 Cal. 4th at 807 ("The discovery

15   rule . . . allows accrual of the cause of action even if the plaintiff does not have reason to

16   suspect the defendant's identity."); see also Jolly, 44 Cal. 3d at 1111 ("A plaintiff need not

17   be aware of the specific 'facts' necessary to establish the claim; that is a process

18   contemplated by pretrial discovery.").

19         Neither of the cases Javier relies upon require a different result. Javier cites Eidson

20   v. Medtronic, Inc. for the proposition that "the mere fact that information of a potential

21   claim is available to plaintiff does not defeat the delayed discovery rule if the plaintiff was

22   unaware of an injury or violation." Opp'n at 12 (citing 40 F. Supp. 3d 1202, 1221–22

23   (N.D. Cal. 2014)). In that case, regarding the implantation of a medical device, the

24   plaintiff alleged that the surgeon had not informed him that the device would be implanted,

25   nor did his consent form mention the device. Eidson, 40 F. Supp. 3d at 1216–17. It was

26   therefore plausible that the plaintiff would not "see a need to request or inspect his surgical

27

28   _____
     [6] Assurance's Privacy Policy remains subject to judicial notice. See Javier, 2021 WL 940319, at
     *2 n.1.

United States District Court
Northern District of California

1    records" for mention of the device.  Id. at 1219.  But the same is not true for this plaintiff:

2    Though he alleges a direct Section 631 claim against Assurance, he states that he

3    "assumed" Assurance would be collecting his information to provide an insurance quote;

4    and unlike the plaintiff in Eidson, whose consent form did not refer to the medical device

5    at issue, Javier assented to a Privacy Policy that disclosed possible monitoring by third

6    parties like ActiveProspect.  See Opp'n at 10; Swenson Decl. Ex. B.  He was therefore on

7    notice that Assurance would collect his information and it "may use third party vendors to

8    assist" in that process.  Similarly, Franklin v. Ocwen Loan Servicing, LLC concerned a

9    plaintiff who was notified during a call (rather than at the beginning) that the call was

10   being recorded, only to receive full recordings of the calls in discovery.  Franklin v. Ocwen

11   Loan Servicing, LLC, 18-cv-3333, 2018 WL 5923450, at *1 (N.D. Cal. Nov. 13, 2018).

12   The court in Franklin stated that "[t]he very nature of plaintiff's allegations is that the

13   recordings were done surreptitiously" and that "[o]n calls where plaintiff received a

14   recording disclosure, it is a reasonable inference that plaintiff was not aware that the

15   recording had started before he heard the disclosure and gave consent."  Id. at *3.  But

16   Javier does not allege any similar disclosure halfway through the form on

17   Nationalfamily.com; nor does he plausibly allege that Assurance "surreptitiously" hid its

18   use of ActiveProspect's software when the Privacy Policy discloses that it "may use third

19   party vendors to assist" with "monitoring and analyzing Site activity."  Swenson Decl. Ex.

20   B.

21          Because Javier states that he was aware that Assurance was collecting his

22   information in January 2019 despite alleging a direct Section 631 injury, and had

23   constructive notice that a third party may be aiding it in that process, Javier does not

24   plausibly plead that he was unable to discover Assurance's use of ActiveProspect's

25   software despite reasonable diligence.  After all, he received the VideoReplay recording

26   promptly after sending the letter alleging TCPA violations.  See Swenson Decl. Ex. C–D

27   (attaching Plaintiff's counsel's letter sent on March 31, 2020, and the email chain sending

28

Plaintiff's counsel the recording, dated April 10, 2020).[7]  There is no reason to expect that Plaintiff's counsel would have been any less successful if they had reached out before January 2020.[8]

As a result, Javier's Section 631 claim is dismissed because he has failed to plead sufficient facts to invoke the delayed discovery rule, and thus his claim is barred by the statute of limitations.  Because it is not clear that this defect cannot be cured by amendment, the Court will grant Javier leave to amend his delayed discovery allegations.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss with leave to amend his delayed discovery allegations.  Javier may file an amended complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: January 5, 2023

CHARLES R. BREYER
United States District Judge

---

[7] These documents are incorporated by reference, because they "form the basis of the plaintiff's" delayed discovery allegations.  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018); SAC ¶ 51.

[8] Defendants additionally argue that Javier does not plead the "time and manner of discovery" because he does not plead the date he was contacted by an insurer as a result of the information he entered on Assurance's website.  Mot. at 13.  Because Javier admits to "assum[ing]" that Assurance collected his information as of the date of his website visit, the Court need not address this argument.