**EXHIBIT A**



1  **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
2  Joel D. Smith (State Bar No. 244902)
   ~~Blair E. Reed (State Bar No. 316791)~~
3  1990 North California Boulevard, Suite 940
   Walnut Creek, CA  94596
4  Telephone: (925) 300-4455
   Facsimile:  (925) 407-2700
5  E-Mail: ltfisher@bursor.com
          jsmith@bursor.com
6
   **BURSOR & FISHER, P.A.**
7  Max S. Roberts (*Pro Hac Vice*)
   888 Seventh Avenue
8  New York, NY 10019
   Telephone: (646) 837-7150
9  Facsimile:  (212) 989-9163
   E-Mail: mroberts ~~breed~~@bursor.com
10
                              **BURSOR & FISHER, P.A.**
11                            ~~Max S. Roberts (*Pro Hac Vice*)~~
                              ~~888 Seventh Avenue, Third Floor~~
12                            ~~New York, NY 10019~~
                              ~~Telephone: (646) 837-7150~~
13                            ~~Facsimile:  (212) 989-9163~~
                              ~~E-Mail: mroberts@bursor.com~~
14
15                            ~~*Attorneys for Plaintiff*~~
16 *Attorneys for Plaintiff*

17              **UNITED STATES DISTRICT COURT**

18            **NORTHERN DISTRICT OF CALIFORNIA**

19
20 FLORENTINO JAVIER, individually and        Case No. ~~43~~:20-cv-02860-~~JSW~~CRB
   on behalf of all others similarly situated,
21                                             ~~SECOND~~THIRD **AMENDED CLASS ACTION
                          Plaintiff,           COMPLAINT**
22
              v.                               **JURY TRIAL DEMANDED**
23
   ASSURANCE IQ, LLC and
24 ACTIVEPROSPECT INC.,

25                        Defendants.
26
27
28

~~SECOND~~THIRD AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED
CASE NO. ~~43~~:20-cv-02860-~~JSW~~CRB

1  Plaintiff Florentino Javier ("Plaintiff"), individually and on behalf of all others similarly
2  situated, by and through his attorneys, makes the following allegations pursuant to the investigation
3  of his counsel and based upon information and belief, except as to allegations specifically pertaining
4  to himself and his counsel, which are based on personal knowledge.

5  **NATURE OF THE ACTION**

6  ~~1.~~ This is a class action suit brought against ~~Defendants Assurance IQ, LLC~~
7  ~~("Assurance IQ") and~~ Defendant ActiveProspect Inc. ("ActiveProspect") ~~(collectively,~~
8  ~~"Defendants")~~ for wiretapping the electronic communications of visitors to Defendant Assurance
9  ~~IQ's websites~~IQ, LLC ("Assurance IQ") (collectively with ActiveProspect, "Defendants") websites,
10  Assurance.com and Nationalfamily.com (collectively, the "Websites").[1] ~~The wiretaps, which are~~
11  ~~embedded in~~This class action suit is also brought against Defendant Assurance IQ for aiding,
12  agreeing with, employing, or otherwise enabling ActiveProspect's wiretapping of visitors to
13  Assurance IQ's websites.

14  ~~1.~~2.  Through the ~~computer code on the Websites, are used~~use of its TrustedForm
15  software, ActiveProspect, as enabled by ~~Defendants to~~ Assurance IQ, secretly ~~observe~~observes and
16  ~~record website~~records Website visitors' keystrokes, mouse clicks,[2] and other electronic
17  communications, including the entry of Personally Identifiable Information ("PII") and Protected
18  Health Information ("PHI"), in real time. By doing so, Defendants have violated the California
19  Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631~~and invaded Plaintiff's and class~~
20  ~~members' privacy rights in violation of the California Constitution.~~(a).

21  ~~2.~~3.  In January 2019, Mr. Javier visited Nationalfamily.com. During this visit,
22  ~~Defendants Assurance IQ and~~ActiveProspect ~~as enabled by Assurance IQ~~ recorded Mr.
23  Javier's electronic communications in real time, used the intercepted data to attempt to learn his
24  identity, zip code, date of birth, height, weight, use of prescription medications and tobacco

---

[1] NATIONAL FAMILY, https://app.nationalfamily.com/life?token=184410293-Wi6Hgnf41WcYc9eT-uddhtwJQNnu1S8dVGPtq98patUNRRZP65r7zJZpFa7XRXxM#life_control/Life_Landing_Current ly_Insured.

[2] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe," and similar gestures used on touchscreen devices.

Formatted: Line spacing: Exactly 12 pt

1  products, and other PII and PHI.

2      3.4.     Plaintiff brings this action on behalf of himself and a class of all persons whose

3  electronic communications were intercepted through the use of Defendants'

4  wiretapActiveProspect's wiretapping on the Websites.

5

6                                      **THE PARTIES**

7      4.5.     Plaintiff Florentino Javier is a California resident of San Jose, California and intends

8  to remain there, and therefore is a domiciliary of California.  In January 2019, before filing this

9  lawsuit, Mr. Javier browsed Defendant Assurance IQ's website at Nationalfamily.com while

10  investigating life insurance policies.  Mr. Javier was in San Jose when he visited the website.

11  During the visit, Mr. Javier's keystrokes, mouse clicks, and other electronic communications,

12  including the entry of his name, zip code, date of birth, height, weight, information about his use of

13  prescription medications and tobacco products, and other PII and PHI, were intercepted in real time

14  by ActiveProspect—as enabled by Assurance IQ—and were disclosed to Assurance IQ and

15  ActiveProspect through the wiretap.  Mr. Javier was unaware at the time that his keystrokes, mouse

16  clicks, and other electronic communications, including the information described above, were being

17  intercepted in real-time and would be disclosed to ActiveProspect, nor did Mr. Javier consent to the

18  same.

19      5.6.     Defendant Assurance IQ is a Washington limited liability company with its principal

20  place of business at 10500 Northeast 8th Street, Suite 1450, Bellevue, Washington 98004.  It is a

21  wholly owned subsidiary of Prudential Financial.

22      6.7.     Assurance IQ describes itself on its website as a "leading insurance platform."

23      7.8.     Assurance IQ does business throughout California and the entire United States.

24      8.9.     Assurance IQ owns and operates Assurance.com.

25      9.10.    As of at least January 2019, Assurance IQ owned and operated a website called

26  Nationalfamily.com.

27      10.11.   Defendant ActiveProspect is a Nevada corporation with its principal place of

28  business at 4203 Guadalupe Street, Austin, Texas 78751.

1    ~~11.~~12.  ActiveProspect is a marketing software-as-a-service ("SaaS") company.

2    ~~12.~~13.  In connection with its services to website operators, ActiveProspect provides a

3    product called "TrustedForm," which is a "lead certification product that helps [businesses] comply

4    with regulations like the [Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (hereinafter

5    the "TCPA")] by documenting consumer consent."

6    <u>**JURISDICTION AND VENUE**</u>

7    ~~13.~~14.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)

8    because this case is a class action where the aggregate claims of all members of the proposed class

9    are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the

10   proposed class is citizen of state different from at least one Defendant.

11   ~~14.~~15.  This Court has personal jurisdiction over Defendants because each of the Defendants

12   have purposefully availed themselves of the laws and benefits of doing business in this State, and

13   Plaintiff's claims arise out of each of the Defendants' forum-related activities.  Furthermore, a

14   substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

15   ~~15.~~16.  Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a

16   substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this

17   District.

18   <u>**STATEMENT OF FACTS**</u>

19   **I.    <u>Overview Of The Wiretaps</u>**

20   ~~16.~~17.  Defendant ActiveProspect provides a variety of "real time" products for companies

21   who engage in telemarketing.

22   ~~17.~~18.  One of ActiveProspect's products is called "TrustedForm," which purports to help

23   businesses comply with the Telephone Consumer Protection Act by documenting evidence of

24   consent to receive telemarketing calls.

25   ~~18.~~19.  On its website, ActiveProspect says that one of the "key features and benefits" of

26   TrustedForm is the "VideoReplay" feature, which records, in real time, a website visitor's

27   keystrokes, mouse clicks and other interactions with a website:

28   *//*

~~SECOND~~THIRD AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    3
CASE NO. ~~4~~3:20-cv-02860-~~JSW~~CRB

1   //
2   //
3   //
4   //
5   //
6
7
8
9
10
11
12
13
14          19.20.  ActiveProspect also advertises other data that TrustedForm can acquire, including
15   the "time on page," "lead age," and "geographic location of user":
16
17
18
19
20
21
22
23
24
25
26
27
28



20.21.  ActiveProspect instructs prospective partners to "simply paste the TrustedForm javascript into the html of your form page, and it will automatically generate a unique Certificate for every lead."  "The script will pass the Certificate as a hidden field with the rest of the lead data."

21.22.  This parcel of code allows ActiveProspect to record the keystrokes, mouse clicks, data entry, and other electronic communications of visitors to websites where the code is installed. It also allows ActiveProspect to track the "website of origin" (i.e., part of the visitor's internet browsing history), amount of time spent on the website, geographic location of the visitor, and other information described above.  ActiveProspect then provides this information to its clients.

22.23.  The recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with the Websites.

23.24.  ActiveProspect's patent—which references "monitoring" website visitors eleven times—further elaborates on the technology.

24.25.  The patent states the collection occurs contemporaneously (in real time) as a user enters information into a form:- "the verification server collects information about the visitor and the lead generator **during the communication session** during which the lead generator receives contact information and other relevant information (i.e. lead data) submitted by the visitor."

25.26.  The patent further explains that ActiveProspect's software transmits to Active Prospect's server, the "the URL of the web page" a website visitor is using.  "At this point, the [Active Prospect's] server is 'aware' of the URL of the form and begins to monitor the web page for

1  any changes … From there on, the verification server monitors the web page … [F]or each change

2  detected, snapshots of the web page are captured including at least one of the HTML, image files,

3  and a high-resolution, full-length image of the web page."

4      26.27.  Technology like TrustedForm is not only highly intrusive, but dangerous.  In a 2017

5  study by Princeton University researchers concerning similar technology, the researchers noted

6  "[c]ollection of page content by third-party replay scripts may cause sensitive information such as

7  medical conditions, credit card details and other personal information displayed on a page to leak to

8  the third-party as part of the recording. This may expose users to identity theft, online scams, and

9  other unwanted behavior."

10     27.28.  The study goes on to state that "the extent of data collected by these services **far**

11  **exceeds user expectations**; text typed into forms is collected **before the user submits the form**,

12  and precise mouse movements are saved, **all without any visual indication to the user**. This data

13  can't reasonably be expected to be kept anonymous."

14     28.29.  ActiveProspect's business model involves entering into voluntary partnerships with

15  various companies and providing their software to their partners.

16     29.30.  One of ActiveProspect's partners is Defendant Assurance IQ.

17     30.31.  Assurance IQ utilizes TrustedForm on Assurance.com.

18     31.32.  Assurance IQ utilizes TrustedForm on Nationalfamily.com.

19     32.33.  Assurance IQ knows that ActiveProspect, through its TrustedForm software,

20  captures the keystrokes, mouse clicks and other communications of visitors to its websitethe

21  Website, and pays ActiveProspect to supply that informationconduct these activities.

22     33.34.  Pursuant to an agreement with ActiveProspect, Assurance IQ enabled TrustedForm

23  by voluntarily embedding ActiveProspect's software code on Nationalfamily.com and

24  Assurance.com.

25     34.35.  As currently deployed, TrustedForm, as employed by Assurance IQ, functions as a

26  wiretap. ActiveProspect, functions as a wiretap, and ActiveProspect as a third-party wiretapper.

27  *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023).

28  **II.**     **Defendants Wiretapped Plaintiff's Electronic Communications**

1    35.36.  In January 2019, Plaintiff visited Nationalfamily.com.  During this visit, Plaintiff

2    provided certain information to the website for the sole purpose of requesting a life insurance quote.

3    36.37.  During that visit, ActiveProspect, through its the TrustedForm VideoReplay feature,

4    created a video capturing Plaintiff's keystrokes and mouse clicks on the website.  The TrustedForm

5    wiretap also captured the date and time of the visit, the duration of the visit, Plaintiff's IP address,

6    his location at the time of the visit, his browser type, and the operating system on his device.

7    37.38.  When Plaintiff visited Nationalfamily.com, he was on the website for 3 minutes and

8    35 seconds.  The ActiveProspect, through its the TrustedForm VideoReplay feature, captured every

9    second of that visit.  Still images of the video of Plaintiff's interactions on Nationalfamily.com are

10    shown in the paragraphs that follow.

11    38.39.  Beginning at approximately four seconds into the video, the TrustedForm

12    video ActiveProspect captures Plaintiff entering information about his gender:

13

14

15

16

17

18

19

20

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28    //



39.40.   Beginning at approximately eight seconds into the video, ~~the TrustedForm video~~ActiveProspect captures Plaintiff entering information about whether he smokes:

40.41.   Beginning at approximately eleven seconds into the video, ~~the TrustedForm video~~ActiveProspect captures Plaintiff entering information about his marital status and children:



41.42.  Beginning at approximately twenty-six seconds into the video, ~~the TrustedForm~~ ~~product~~ActiveProspect captures Plaintiff entering information about his age, which is redacted here:



42.43.  Beginning at approximately thirty-two seconds into the video, ~~the TrustedForm product~~ActiveProspect captures Plaintiff entering information about his height and weight:

Formatted: Indent: Left: 0"

Formatted: Right: 0.02", Line spacing: Exactly 12 pt



**Formatted:** Line spacing: Exactly 24 pt

43.44.  Beginning at approximately fifty-eight seconds into the video, ~~the TrustedForm product~~ActiveProspect captures Plaintiff responding to a series _of_ questions about his medical history, including whether Plaintiff suffered from anxiety or depression, heart or circulatory disorders, cancer, chronic pain, diabetes, or other medical conditions.  Screenshots of those portions of the video are intentionally excluded here.

44.45.  Beginning at approximately 3 minutes and 5 seconds into the video, ~~the TrustedForm product~~ActiveProspect captures Plaintiff entering his name and contact information, which is partially redacted here:

1

2

3   45.46.  As shown at the end of the video, at the end of the process (*i.e.*, **after** Plaintiff

4   entered in all of his personal information), Plaintiff and ~~class members~~Class Members who visited

5   the Websites were presented with the following message:

6           By clicking 'View My Quote', IÂ [SIC] provide my electronic signature as
        an indication of my intent to agree to this website'sÂ [SIC] Privacy
7           Policy,Â [SIC]Terms of Service, and expressly consent to receive
        marketing & telemarketing contact, including cellular phones, via automatic
8           telephone dialing system, artificial/pre-recorded message (including pre-
        recorded messages using soundboard technology), email, and/or text
9           message from insurance companies or their agents, the owner of this
        website, andÂ [SIC] partner companies, at the telephone number and email
10          address I have provided. I understand that my consent to receive
        communications in this manner is not required as a condition of purchasing
11          any goods or services, my telephone company may impose charges for these
        contacts, and my consent can be revoked at any time. If you are Medicare-
12          eligible a representative may call you about a Medicare Advantage plan,
        Medicare Prescription Drug plan, Medicare Supplement plan or other
13          Medicare plans. Not affiliated with the United States Government or the
        federal Medicare program.
14

15

16

17   46.    ~~The above-quoted disclosure does not say anything about wiretaps, and by~~By the

18   time a visitor reaches this point in the process, the wiretap has already been deployed.

19   ~~47.    Further, the hyperlink to the Privacy Policy is in light blue amidst light gray text, not~~

20   ~~underlined, is the same size as the surrounding text—text which refers only to consent to receive~~

21   ~~telemarketing calls and not to be wiretapped, is not in all caps, is below much more obvious and~~

22   ~~distracting features, such as the large blue "View My Quote" button and boxes to enter text, and is~~

23   ~~found on a page for requesting a quote, not for entering a contract.~~

24   ~~48.    Users, including Plaintiff, are thus not on notice of the Privacy Policy when they~~

25   ~~click "View My Quote," or that they are ostensibly agreeing to Assurance IQ's Privacy Policy by~~

26   ~~clicking "View My Quote."~~

27   49.47.  ~~Assurance IQ did not tell~~ Accordingly, visitors ~~to its~~do the Websites ~~that their~~

28   ~~keystrokes, mouse clicks and other communications were being recorded and shared with~~

1  ~~ActiveProspect.  Alternatively, any purported disclosure was made~~do not and cannot consent to the

2  wiretapping because the alleged consent comes **after** the ~~wiretap had already begun.   wiretapping~~

3  ~~has begun.~~  *Javier v. Assurance IO, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022).  Nor

4  do Website visitors impliedly consent to being wiretapped.  *Javier*, 2023 WL 114225, at *4.

> Formatted: Font: Bold, Not Italic, Underline

5  ~~50.~~    Neither Plaintiff nor any Class member consented to being wiretapped on the

6  Websites by ActiveProspect, or to ~~have~~having their communications recorded and shared with

7  ActiveProspect.  Any purported consent that was obtained was ineffective because ~~(i)~~ the

8  wiretapping began from the moment Plaintiff and Class ~~members~~Members accessed the Website~~;~~

9  ~~(ii) the Privacy Policy did not disclose the wiretapping or ActiveProspect; (iii) the Privacy Policy~~

10  ~~was located at bottom of the webpage or tucked away in obscure corners of the website where users~~

11  ~~were unlikely to see it; and (iv) the "consent" option at the end of the form on the Websites only~~

12  ~~discloses telemarketing communications and not wiretapping.~~

13  ~~51.    Any applicable statute(s) of limitations has been tolled by the "delayed discovery"~~

14  ~~rule.  Plaintiff did not know that his activities on Nationfamily.com had been recorded in real-time~~

15  ~~until April 2020.  The recording was first produced to Plaintiff in April 2020 in response to a letter~~

16  ~~sent by, yet~~ Plaintiff's ~~counsel over purported violations of the Telephone Consumer Protection~~

17  ~~Act, 47 U.S.C. § 227.  Plaintiff had no way of knowing Defendants had recorded his activities prior~~

18  ~~to the production of this recording because the video was private and exclusively in Defendants'~~

19  ~~possession.~~

20  ~~52.    Upon receipt of the recording, Plaintiff was surprised to learn that his activities on~~

21  ~~Nationalfamily.com had been recorded in real-time from the moment Plaintiff accessed the website.~~

22  ~~Assurance IQ does not disclose that it will be recording users in real time before or at any time~~

23  ~~while a user is browsing the Websites.~~

24  ~~53.~~48.  Assurance IQ likewise does not disclose that it is recording a user's activities in real-

> Formatted: Right:  0", Allow hanging punctuation

25  time in its Privacy Policy.  Further, even if Assurance IQ disclosed such activities in its Privacy

26  Policy, it was still acting without Plaintiff's consent because (i) Assurance IQ does not ask for

27  users'and Class member's alleged consent to being wiretapped did not occur until **after** ~~it has~~

> Formatted: Font: Bold, Underline

28  ~~already begun wiretapping them, and (ii) there is not sufficient notice of the Privacy Policy because~~

1  the Privacy Policy was located at bottom of the webpage or tucked away in obscure corners of the

2  website where users were unlikely to see it the wiretapping began.  *Javier*, 2022 WL 1744107, at *2.

3      54.1.    When ActiveProspect and its website-owner clients want to disclose

4  ActiveProspect's technology, they do so explicitly.  Model language is included in

5  ActiveProspect's standard form End User License Agreement ("EULA"), which states as follows:

6          We use ActiveProspect's TrustedForm Script to independently
7          document users' consent to be contacted.  The TrustedForm Script is
           embedded on our website and collects the following information when
8          you interact with the page(s) where the script is present: page URL,
           mouse movements and clicks, contact information inputted by the user,
9          a snapshot of the page, including IP address of the user's computer, time
           on the page, date and time that the TrustedForm Script was loaded, as
10         well as the date and time of the various user interactions with the page,
           and HTTP headers from the user's browser.

11 Assurance IQ's Privacy Policy *does not* contain this language, or anything close to it.  ECF No.

12 28-4, Ex. B.

13     55.49.  Visitors of NationalFamily.com and Assurance.com saw substantially the same

14 messaging, with both websites asking similar questions.  More importantly, both Websites utilized

15 TrustedForm through ActiveProspect through TrustedForm collected user data on both Websites,

16 and the wiretap worked exactly the same no matter which site a person visited.

17     50.    The violations here are rendered all the more egregious due to the data collected here

18 versus ActiveProspect's stated "mission."  Despite holding itself out solely as helping companies

19 verify consumers have consented to receive telemarketing calls, as the above paragraphs indicate,

20 ActiveProspect collected far more information than was needed to verify a consumer's consent to

21 be called.  Providing proof of consent does not require a showing of a consumer's height, weight, or

22 medical conditions.  Yet, that is exactly the information ActiveProspect collected here: highly

23 intrusive and personal information unrelated to its purported mission.

24 **III.    Active Prospect Recorded And Received The Data Concerning
             Plaintiff's Website Interactions**

25

26     56.51.   As a software-as-a-service ("SaaS") company, Active Prospect provides services

27 to companies, not just products.  Those services include wiretapping website interactions through

28 the use of its product, TrustedForm.

57.52.  All videos of customer data are hosted on Active Prospect's servers, not the servers or computers of ActiveProspect's clients, such as Assurance IQ here.  To access the video of website visitor's interactions, one must have access to a unique URL link provided by ActiveProspect, which directs visitors to a webserver on trustedform.com where the video can be viewed.  The link corresponds with a unique ID and a "certificate" which is generated and issued by ActiveProspect, not ActiveProspect's clients.  For example, the URL link to Plaintiff's video is here:  https://cert.trustedform.com/d369bb4718e20b3a2bf3132b63667104daecd7b2/ assets/#snapshot.

58.53.  When a person accesses the aforementioned URL link provided by Active Prospect, the first thing they will see is a certificate which states, "This certificate was issued by TrustedForm.com from ActiveProspect, the independent Internet lead certification authority."



59.54.  On ActiveProspect's website, the company also states that "TrustedForm **independently** collects and stores information about who filled out a form, when, and where." This ostensibly provides "unbiased, third party documentation of consent."

60.55.  In 2020, ActiveProspect's CEO Steve Rafferty appeared on a video podcast for the "TCPAWorld" blog called "Unprecedented," where he and the CEO of a competitor, Jornaya, discussed their respective businesses.[3]  In describing the interview, the podcast's producers stated,

---

[3] *Unprecedented Episode 19*, TCPAWORLD, https://players.brightcove.net/5807743129001/ default_default/index.html?videoId=6217015344001.

1  "You know these companies as the guardian angels of the TCPAWorld–**keeping watch over**

2  **millions of website interactions each month**."  (Emphasis added).  In the interview,

3  ActiveProspect's CEO repeatedly refers to the company as an "independent third party" who

4  "monitors" activity on the website.  As stated by the company's CEO, ActiveProspect is "there as

5  an independent third party [who can] say, 'hey this is what really happened.'  You don't have to

6  trust the buyer or the seller of the lead, you can trust us [i.e., ActiveProspect].  We were there.  Here

7  is what happened [on a given website]."  He also explained that "we [i.e., ActiveProspect] can send

8  [information] directly" to those who request it.

9     61. 56.  ActiveProspect's patent also states "**the verification server collects information**

10  about the visitor and the lead generator during the communication session during which the lead

11  generator receives contact information and other relevant information (i.e. lead data) submitted by

12  the visitor."

13     62. 57.  ActiveProspect's standard form EULA with its website-operator clients contains

14  several provisions confirming that ActiveProspect records and receives data from website visitors:

- The EULA provides that "when a site visitor visits the [client's website], the TrustedForm Script contacts the Trusted Form Server, which then collects information about that site visit."

- The EULA requires website owners to agree that ActiveProspect "cannot and does not guarantee that Your Content and Data will not be accessed by unauthorized persons."  The term "Content and Data" is defined to include "information pertaining to Leads [i.e., website visitors] that may contain individual, personally identifiable information."

- The EULA expressly gives Active Prospect the right to use aggregate data collected from website visitors for anything it deems to be a legitimate business purpose, including for tracking and reporting on industry trends.

- The model language for privacy policies contained in the EULA states that TrustedForm "independently document[s] users' consent to be contacted" and "collects" information.

**IV.    The Delayed Discovery Rule Applies And Tolls The Statute Of Limitations**

     58.    On or about February 28, 2020, Plaintiff first began receiving telemarketing calls

1    from a company called "Health IQ."

2        59.    After being inundated with these calls multiple times a day and for weeks on end,

3    Plaintiff retained undersigned counsel to represent him in a potential Telephone Consumer

4    Protection Act ("TCPA") action against Health IQ.

5        60.    On March 31, 2020, shortly after retaining undersigned counsel, undersigned

6    counsel sent a demand letter on Plaintiff's behalf to Health IQ, informing Health IQ that Plaintiff

7    intended to bring a class action under the TCPA and instructive Health IQ to cease calling Plaintiff.

8    ECF No. 28-4, at Ex. C.

9        61.    On April 9, 2020, counsel for Health IQ provided Plaintiff's counsel with the

10   TrustedForm VideoReplay of Plaintiff's visit to nationalfamily.com.  ECF No. 28-4, at Ex. D.  This

11   is the first time Plaintiff learned that his activities on nationalfamily.com had been recorded in real-

12   time by a third party, ActiveProspect, from the moment Plaintiff accessed the website.

13       62.    Plaintiff had no way of knowing that ActiveProspect wiretapped him before the

14   production of this video in April 2020.  *First*, the video was private and exclusively in

15   ActiveProspect's possession.  And, prior to first receiving the calls in February 2020, Plaintiff

16   would have no reason to take any steps that would have led to the discovery or the video.

17       63.    *Second*, when Plaintiff visited nationalfamily.com in January 2019, he did not know

18   his information was being collected by ActiveProspect (or any third party) in real-time, as he was

19   filling out the form.  Plaintiff did not know, nor did he have a reason to know, his information was

20   being collected by anyone—let alone a third party like ActiveProspect—for purposes other than

21   providing Plaintiff with a life insurance quote, and **prior to** the final page of the web form where

22   Plaintiff was ostensibly asked to consent to the collection of his data.

23       64.    *Third*, Plaintiff was neither on constructive notice nor inquiry notice of the privacy

24   policy on Assurance IQ's website.  As indicated above, the hyperlink to the Privacy Policy is in

25   light blue amidst light gray text, not underlined, is the same size as the surrounding text—text

26   which refers only to consent to receive telemarketing calls and not to be wiretapped—is not in all

27   caps, is below much more obvious and distracting features, such as the large blue "View My

28   Quote" button and boxes to enter text, and is found on a page for requesting a quote, not for

1   entering a contract.

2        65.     Users, including Plaintiff, are thus not on notice of the Privacy Policy when they

3   click "View My Quote," or that they are ostensibly agreeing to Assurance IQ's Privacy Policy by

4   clicking "View My Quote." *See generally Berman v. Freedom Financial Network, LLC*, 30 F.4th

5   849 (9th Cir. 2022).

6        66.     ActiveProspect's own video of Plaintiff's website communications and interactions

7   show that he did not read the privacy policy.

8        67.     *Finally*, even if users are on notice of the Privacy Policy (and they are not), the

9   Privacy Policy does not disclose the wiretapping.  During the relevant period, the Privacy Policy

10  made no mention of ActiveProspect, TrustedForm, or that user data is being collected specifically

11  by ActiveProspect.

12       68.     When ActiveProspect and its website-owner clients want to disclose

13  ActiveProspect's technology, they do so explicitly.  Model language is included in

14  ActiveProspect's standard form End User License Agreement ("EULA"), which states as follows:

15           We use ActiveProspect's TrustedForm Script to independently
16           document users' consent to be contacted.  The TrustedForm Script is
             embedded on our website and collects the following information when
17           you interact with the page(s) where the script is present: page URL,
             mouse movements and clicks, contact information inputted by the user,
18           a snapshot of the page, including IP address of the user's computer, time
             on the page, date and time that the TrustedForm Script was loaded, as
19           well as the date and time of the various user interactions with the page,
             and HTTP headers from the user's browser.

20  Assurance IQ's Privacy Policy *does not* contain this language, or anything close to it.  ECF No.

21  28-4, Ex. B.

22       69.     After this litigation began, Defendant Assurance IQ changed its Privacy Policy to

23  specifically disclose "[o]ur Websites may also use third-party analytics tools such as …

24  ActiveProspect … to track page content and click/touch, movement, scroll, and keystroke

25  activity."[4] If the Privacy Policy had adequately disclosed ActiveProspect's involvement during the

26  relevant period here, then there would have been no need to make these updates to the Privacy

27  
_____

28  [4] https://nationalfamily.com/assurance-privacy-practices#TopPrivacyPolicy.

SECONDTHIRD AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED        19
CASE NO. 43:20-cv-02860-JSWCRB

Formatted: Font: Calibri, 11 pt

1    Policy.

2         70.    Further, the Privacy Policy does not tell users that ActiveProspect is collecting their

3    data prior to the completion of the form.  In fact, the Privacy Policy says the opposite: it is phrased

4    in the present and future tenses ("we collect," not "we collected") and so at best informs users that

5    their data is only being collected **after** the user completes the web form, not before.  *Castro v. ABM*

6    *Industries, Inc.*, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) ("[T]he CBAs' use of the

7    present tense 'arise' suggests that the clauses govern present and future, *but not past*, conduct.")

8    (emphasis added).  Accordingly, "it is a reasonable inference that [P]laintiff was not aware that the

9    recording had started before he [allegedly saw] the disclosure and [allegedly] gave consent."

10   *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *1 (N.D. Cal. Nov. 13, 2018).

11        71.    For the foregoing reasons, any applicable statute of limitations has been tolled by the

12   "delayed discovery" rule.  Plaintiff did not know or have reason to know that his activities on

13   Nationfamily.com had been recorded in real-time until April 2020, and timely commenced his

14   action based on that date.

15   **V.      Defendant Assurance IQ Is Liable For Attorney Fees Under**
     **California Code of Civil Procedure § 1021.5**

16

17        72.    Defendant Assurance IQ represented to this Court that expressly disclosing to

18   website users, prior to any interactions on their sites, that a website used third-party tools to monitor

19   website visitors would be "a technologically impractical and far-from-user-friendly solution."  ECF

20   No. 58 at 10:4-6.

21        73.    When Assurance IQ made that statement to the Court, however, it failed to disclose

22   that it was *already providing* such a disclosure on the Websites.  Specifically, after this litigation

23   began, both websites began including a banner on the home pages (*i.e.*, the first pages a website

24   visitor would see) disclosing that "By using this website, you consent to the real-time collection,

25   storage, use, and share [SIC] of information on your device, or provided by you (such as mouse

26   movements and clicks) for Assurance IQ, LLC and/or its third-party providers.  See our Privacy

27

28
     By using this website, you consent to the real-time collection, storage, use, and share of information on your device, or provided by you (such as mouse movements and clicks) for     X
     Assurance IQ, LLC and/or its third-party providers. See our Privacy Center for more information.

1    Center for more information."

2    74.    There was no such disclosure during Plaintiff's website visit at issue here.[5]

3    75.    Furthermore, as noted above, the Privacy Policy now expressly discloses

4 ActiveProspect and the website recording/monitoring at issue here, specifically stating, "Our

5 Websites may also use third-party analytics tools such as Verisk Analytics, ActiveProspect,

6 Jornaya, LogRocket, Datadog, Microsoft Clarity, and Google Tag Manager to track page content

7 and click/touch, movement, scroll, and keystroke activity."[6]  Again, there were no such disclosures

8 before Plaintiff commenced this lawsuit.

9    76.    This lawsuit was either the sole motivating factor or a substantial motivating factor

10 for the voluntary change in disclosures described above.  Indeed, Assurance IQ's current

11 disclosures are likely an attempt to comply with the Ninth Circuit's decision, which was achieved

12 through the efforts of Plaintiff and his counsel.

13    77.    As a result, a significant benefit has been conferred on the general public or a large

14 class of persons as a result of this litigation.  Assurance IQ can hardly dispute this fact after

15 representing to the Court that its disclosures were "technologically impractical."

16    78.    The necessity and financial burden of this private enforcement are such as to make

17 the award of fees here appropriate.

18    79.    Accordingly, Assurance IQ is liable for all attorney fees incurred in this litigation, or

19 alternatively, through the date that the above-described changes were made.

20                      **CLASS ACTION ALLEGATIONS**

21    63.80.  Plaintiff seeks to represent a class of all California residents who visited

22 Assurance.com or Nationalfamily.com, and whose electronic communications were intercepted or

23 recorded by ActiveProspect.  Plaintiff reserves the right to modify the class definition as appropriate

24 based on further investigation and discovery obtained in the case.

25        _____

26 [5] Plaintiff does not concede that the banner that now appears on the Websites is a conspicuous
browsewrap or clickwrap agreement that puts users on inquiry notice of the Privacy Policy.  To the

27 extent the Court finds the current disclosure is sufficient to put users on inquiry notice, however,
Plaintiff would be entitled to attorneys' fees under Cal. Civ. Code § 1021.5.

28 [6] https://nationalfamily.com/assurance-privacy-practices#TopPrivacyPolicy.

1    64.81.   Members of the Class are so numerous that their individual joinder herein is

2  impracticable.  On information and belief, members of the Class number in the thousands.  The

3  precise number of Class members Members and their identities are unknown to Plaintiff at this time

4  but may be determined through discovery.  Class members Members may be notified of the

5  pendency of this action by mail and/or publication through the distribution records of Defendants.

6    65.82.   Common questions of law and fact exist as to all Class members Members and

7  predominate over questions affecting only individual Class members Members.  Common legal and

8  factual questions include, but are not limited to, whether Defendants have violated the California

9  Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 and invaded Plaintiff's privacy rights in

10  violation of the California Constitution; and whether class members Class Members are entitled to

11  actual and/or statutory damages for the aforementioned violations.

12    66.83.   The claims of the named Plaintiff are typical of the claims of the Class because the

13  named Plaintiff, like all other class members Class Members, visited one of the Websites and had his

14  electronic communications intercepted and disclosed to ActiveProspect through the use of

15  ActiveProspect's wiretaps.

16    67.84.   Plaintiff is an adequate representative of the Class because his interests do not

17  conflict with the interests of the Class members Members he seeks to represent, he has retained

18  competent counsel experienced in prosecuting class actions, and he intends to prosecute this action

19  vigorously.  The interests of Class members Members will be fairly and adequately protected by

20  Plaintiff and his counsel.

21    68.85.   The class mechanism is superior to other available means for the fair and efficient

22  adjudication of the claims of Class members Members.  Each individual Class member may lack the

23  resources to undergo the burden and expense of individual prosecution of the complex and

24  extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases

25  the delay and expense to all parties and multiplies the burden on the judicial system presented by

26  the complex legal and factual issues of this case.  Individualized litigation also presents a potential

27  for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer

28  management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

69.86.  Plaintiff brings all claims in this action individually and on behalf of members of the Class against Defendants.

### CAUSES OF ACTION

### COUNT I
**Violation Of The California Invasion Of Privacy Act ("CIPA"),
Cal. Penal Code § 631**

70.87.  Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

71.88.  Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

72.89.  To establish liability under section CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct."  *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).  Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> *Or*

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

> *Or*

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

Formatted: Justified, Indent: Left: 0"

Formatted: Justified, Right: 1.01", Space After: 6 pt

73.90. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, ―956 F.3d ― 2020 WL 1807978589 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

74.91. ActiveProspect's TrustedForm product is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

75.92. At all relevant times, by using ActiveProspect's technology, DefendantsTrustedForm, ActiveProspect intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and class membersClass Members on the one hand, and Assurance IQ's Websites on the other hand.

76.93. At all relevant times, by using ActiveProspect's technology, DefendantsTrustedForm, ActiveProspect willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative class membersClass Members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

77.94. Defendants At all relevant times, Assurance IQ aided, agreed with, employed, and conspired with each other to implement ActiveProspect's technologyActiveProspect to have ActiveProspect wiretap consumers to Assurance IQ's Websites using TrustedForm and to accomplish the wrongful conduct at issue here. In addition, Assurance IQ employed ActiveProspect to accomplishThe fourth liability prong listed in Paragraph 80 above is the wrongful conduct at

1   ~~issue here.~~only basis of liability intended to be alleged with respect to Defendant Assurance IQ.  If

2   any other statement in this complaint suggests otherwise, the statement of intent in this Paragraph

3   controls.

4        ~~78.~~95.  Plaintiff and Class Members did not consent to ~~any of Defendants' actions in~~

5   ~~implementing ActiveProspect's wiretaps on the Websites.  Nor have Plaintiff or Class Members~~

6   ~~consented to Defendants'~~ActiveProspect's intentional access, interception, reading, learning,

7   recording, and collection of Plaintiff and Class Members' electronic communications.  Nor did

8   Plaintiff and Class Members consent to Assurance IQ aiding, agreeing with, employing, or

9   otherwise enabling ActiveProspect's conduct.

10       ~~79.~~96.  The violation of section 631(a) constitutes an invasion of privacy sufficient to confer

11  Article III standing.

12       ~~80.~~97.  Unless enjoined, Defendants will continue to commit the illegal acts alleged here.

13  Plaintiff continues to be at risk because he frequently uses the internet to search for information

14  about products or services.  He continues to desire to use the internet for that purpose, including for

15  the purpose of shopping for various forms of insurance.  Defendant Assurance IQ operates different

16  websites using various names, and partners with many other companies who operate their own

17  websites, such as Allstate, Liberty Mutual, and AIG.  Defendant ActiveProspect provides its

18  TrustedForm product to many other website operators who offer a wide array of services.  For many

19  websites that Plaintiff may or is likely to visit in the future, he has no practical way to know if his

20  website communications will be monitored or recorded by ActiveProspect, or by both Defendants.

21       ~~81.~~98.  Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2,

22  including injunctive relief and statutory damages of $5,000 per violation.

23                        ~~COUNT II~~

24              ~~Invasion Of Privacy Under California's Constitution~~

25       ~~82.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set~~

26  ~~forth herein.~~

27       ~~83.   Plaintiff brings this claim individually and on behalf of the members of the proposed~~

28  ~~Class against Defendants.~~

1    84.   Plaintiff and Class Members have an interest in: (1) precluding the dissemination

2    and/or misuse of their sensitive, confidential PII and PHI; and (2) making personal decisions and/or

3    conducting personal activities without observation, intrusion or interference, including, but not

4    limited to, the right to visit and interact with various Internet sites without being subjected to

5    wiretaps without Plaintiff's and Class Members' knowledge or consent.

6    85.   At all relevant times, by implementing ActiveProspect's wiretaps on Assurance IQ's

7    Websites, each Defendant intentionally invaded Plaintiff and Class Members' privacy rights under

8    the California Constitution, and procured the other Defendant to do so.

9    86.   Plaintiff and Class Members had a reasonable expectation that their PII, PHI, and

10    other data would remain confidential and that Defendants would not install wiretaps on the

11    Websites.

12    87.   Plaintiff and Class Members did not consent to any of Defendants' actions in

13    implementing ActiveProspect's wiretaps on the Websites.

14    88.   This invasion of privacy is serious in nature, scope and impact.

15    89.   This invasion of privacy alleged here constitutes an egregious breach of the social

16    norms underlying the privacy right.

17    90.   Plaintiff and Class Members seek all relief available for invasion of privacy claims

18    under California's Constitution.

19                              **PRAYER FOR RELIEF**

20    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

21    judgment against Defendants, as follows:

22    a.(a)   For an order certifying the Class under Rule 23 and, naming Plaintiff as the
        representative of the Class, and naming Plaintiff's attorneys as Class
23      Counsel to represent the Class;

24    b.(b)   For an order declaring that the Defendants' conduct violates the statutes
25      referenced herein;

26    c.(c)   For an order finding in favor of Plaintiff and the Class on all counts asserted
        herein;

27    d.(d)   For compensatory, punitive, and statutory damages in amounts to be
28      determined by the Court and/or jury;

e.(e)   For prejudgment interest on all amounts awarded;

f.(f)   For an order of restitution and all other forms of equitable monetary relief;

g.(g)   For injunctive relief as pleaded or as the Court may deem proper; and

h.(h)   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated: March 25, 2021 January 26, 2023          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ___, /s/ Joel D. Smith
      ___  Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Blair E. Reed (State Bar No. 316791)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
           jsmith@bursor.com
           breed@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)

New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163

888 Seventh Avenue, Third Floor

E-Mail: mroberts@bursor.com

*Attorneys for Plaintiff*

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com

*Attorneys for Plaintiff*