**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: mroberts@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

FLORENTINO JAVIER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ASSURANCE IQ, LLC AND ACTIVEPROSPECT INC.,

Defendants.

Case No. 3:20-cv-02860-CRB

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Date: April 28, 2023
Time: 10:00 a.m.
Courtroom: 6 – 17th Floor
Judge: Hon. Charles R. Breyer

# TABLE OF CONTENTS


**PAGE(S)**

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENTS DO NOT SUPPORT DISMISSAL ..... 3

A. Javier Sufficiently Alleges The Elements Of The Delayed Discovery Rule ..... 3

B. The Privacy Policy Does Not Defeat The Delayed Discovery Rule ..... 5

1. Under Berman, Javier Was Not On Constructive Notice Of The Privacy Policy ..... 5

2. The Privacy Policy Did Not Disclose The Wiretapping, And Did Not Disclose The Wiretapping Occurred Before Javier Clicked The "View My Quote" Button ..... 8

II. DEFENDANTS' "IN TRANSIT" ARGUMENTS LACK MERIT ..... 10

III. DEFENDANT ASSURANCE IQ IS LIABLE FOR ATTORNEYS' FEES UNDER CAL. CODE CIV. P. § 1021.5 ..... 14

CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Autotel v. Nevada Bell Telephone Co.*,
697 F.3d 846 (9th Cir. 2012) .......... 14

*Benson v. Double Down Interactive, LLC*,
798 F. App'x 117 (9th Cir. 2020) .......... 7

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 2, 5, 6, 7

*Burzdak v. Universal Screen Arts, Inc.*,
2021 WL 3621830 (N.D. Cal. Aug. 16, 2021) .......... 7

*Byrd v. Aaron's, Inc.*,
2012 WL 12887775 (W.D. Pa. 2012) .......... 2, 12

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 13

*Castro v. ABM Industries, Inc.*,
2018 WL 2197527 (N.D. Cal. May 14, 2018) .......... 9

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) .......... 6

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*,
411 F. Supp. 3d 905 (N.D. Cal. 2019) .......... 14

*Farrell v. Boeing Employees Credit Union*,
761 F. App'x 682 (9th Cir. 2019) .......... 13

*Franklin v. Ocwen Loan Servicing, LLC*,
2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) .......... passim

*Goldstein v. Fandango Media, LLC*,
2021 WL 6617447 (S.D. Fla. July 27, 2021) .......... 7

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 2, 11, 12, 13

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 11

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) .......... 13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 12

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .......... 2, 5, 7, 10

*Javier v. Assurance IQ, LLC*,
2021 WL 3669343 (N.D. Cal. Aug. 6, 2021) .......... 10

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 1, 11

*Javier v. Assurance IQ, LLC*,
2023 WL 114225 (N.D. Cal. Jan. 5, 2023) .......... 1, 3, 4

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 11

*Krause v. Rarity*,
285 P. 879 (Cal. Dist. Ct. App. 1930) .......... 2, 9, 10

*Krause v. Rarity*,
210 Cal. 644 (1930) .......... 2, 9

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) .......... 2, 12

*Lyddon v. Tuthill*,
2012 WL 676983 (Cal. Ct. App. Feb. 29, 2012) .......... 9

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 11

*McAdory v. M.N.S. & Associates, LLC*,
952 F.3d 1089 (9th Cir. 2020) .......... 13

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 5

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 11

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) .......... 5

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 11

*Rhodes v. Robinson*,
621 F.3d 1002 (9th Cir. 2010) .......... 1, 3, 4

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .................................................. 2, 10, 11

*Russell v. Citigroup, Inc.*,
748 F.3d 677 (6th Cir. 2014) .................................................. 9

*San Disk Corp. v. Round Rock Research LLC*,
2014 WL 2700583 (N.D. Cal. June 13, 2014) .................................................. 9

*Techshell, Inc. v. Max Interactive, Inc.*,
2019 WL 4422682 (C.D. Cal. Aug. 5, 2019) .................................................. 13

*Vaughn v. Tesla, Inc.*,
87 Cal. App. 5th 208 (2023) .................................................. 2, 9, 10

*Wilson v. Redbox Automated Retail, LLC*,
2020 WL 1445622 (N.D. Ill. Mar. 25, 2020) .................................................. 6

**STATUTES**

Cal. Code Civ. P. § 1021.514 .................................................. 2, 14

Cal. Penal Code § 631 .................................................. 10, 11

Cal. Penal Code § 631(a) .................................................. 10, 11, 12

**INTRODUCTION**

Over the course of three years of litigation and five motions to dismiss, Defendants' various defenses have fallen to the wayside. *First*, the Ninth Circuit rejected Defendants' argument that after-the-fact consent is permissible. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("*Javier III*"). Then, this Court rejected Defendants' arguments that Javier impliedly consented to the wiretapping and that ActiveProspect was a party to the communication. *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *3-6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) ("*Javier IV*"). Now, only two barriers remain before this case can finally proceed to discovery: whether Javier's claims are timely and whether Javier's communications were intercepted "in transit." Both should be torn down.

*First*, Defendants assert this action is barred by the one-year statute of limitations governing CIPA claims. While the Court previously sustained these arguments in *Javier IV*, the Third Amended Complaint (ECF No. 79) (the "TAC") now controls this action and fixes the prior pleading deficiencies. *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("As a general rule, when a plaintiff files an amended complaint, the amended complaint super[s]edes the original, the latter being treated thereafter as non-existent.") (cleaned up). The TAC does not inadvertently allege a direct wiretapping claim against Assurance IQ—which Javier never intended to do—and only pleads a wiretapping claim against ActiveProspect. And, Javier alleges he did not and could not have learned of ActiveProspect's wiretapping in January 2019 when he visited nationalfamily.com. TAC ¶¶ 58-71. Instead, the first instance Javier could have learned (and did learn) of the wiretapping was in April 2020, when Javier's counsel received a video recording of his visit to the website. *Id.* ¶ 61. Thus, "[d]rawing all inferences in favor of the [P]laintiff, and [given] that resolution of this question is typically one of fact … [P]laintiff has alleged sufficient facts to avail himself of California's delayed discovery rule," and Javier's claim is therefore timely. *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450 (N.D. Cal. Nov. 13, 2018), *order clarified*, 2019 WL 452027 (N.D. Cal. Feb. 5, 2019) (Illston, J.).

*Second*, Defendants contend the Privacy Policy put Javier on constructive notice of his wiretapping claims in January 2019. It did not. As an initial matter, Judge White's prior

conclusion that the design and content of nationalfamily.com was sufficient to put Javier on notice of the Privacy Policy, *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *3 (N.D. Cal. Mar. 9, 2021) ("*Javier I*"), is no longer good law in light of *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022). Thus, under *Berman*, Javier was not on notice of the Privacy Policy on nationalfamily.com.

Further, even if Javier was on notice of the Privacy Policy (and he was not), it did not disclose the wiretapping. Assurance IQ's post-litigation updates to the Privacy Policy—which explicitly name ActiveProspect and the content it collects—evidence that the language in the Privacy Policy at the time Javier visited the website did not disclose the wiretapping. TAC ¶ 69. And, even if the Privacy Policy disclosed some wiretapping occurred, it did not disclose that the wiretapping occurred *before* Javier clicked the "View My Quote" button. *Id.* ¶ 70. Here too, Judge White's prior holding that the present-tense language in the Privacy Policy disclosed the earlier wiretapping must be reconsidered in light of California Court of Appeals decisions to the contrary that Judge White did not consider. *Krause v. Rarity*, 285 P. 879, 887 (Cal. Dist. Ct. App. 1930), *superseded*, 210 Cal. 644 (1930) ("[W]ords used in the present tense do not include the past."); *see also Vaughn v. Tesla, Inc.*, 87 Cal. App. 5th 208, 223 (2023) ("The present tense usually does not refer to the past.") (cleaned up).

*Third*, for the first time in three years of litigation, Defendants now contend Javier's communications were not intercepted "in transit." But as the California Supreme Court has held, this is not required to state a claim under CIPA § 631(a). *Ribas v. Clark*, 38 Cal. 3d 355, 359-60 (1985). Instead, all that Javier must allege—and does allege—is that his communications were "sent from … a place within this state." *Id.* at 360. Regardless, Javier does plausibly allege his communications were intercepted "in transit." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1078 (N.D. Cal. 2015) (Chen, J.); *Luis v. Zang*, 833 F.3d 619, 624 (6th Cir. 2016); *Byrd v. Aaron's, Inc*., 2012 WL 12887775, at *7 (W.D. Pa. 2012)

*Finally*, Javier alleges entitlement to catalyst damages under Cal. Code Civ. P. § 1021.5. "Assurance IQ represented to this Court that expressly disclosing to website users, prior to any interactions on their sites, that a website used third-party tools to monitor website visitors would be

'a technologically impractical and far-from-user-friendly solution.'" TAC ¶ 72 (quoting ECF No. 58 at 10:4-6). "When Assurance IQ made that statement to the Court, however, it failed to disclose that it was *already providing* such a disclosure on the Websites." *Id.* ¶ 73 (emphasis in original). Further, as noted above, Assurance IQ's Privacy Policy now explicitly names ActiveProspect and lists the exact content it collects. *Id.* ¶ 75. Javier's lawsuit "was either the sole motivating factor or a substantial motivating factor" for Assurance IQ to more conspicuously disclose its Privacy Policy hyperlink and ActiveProspect's conduct. *Id.* ¶ 76. Thus, because Assurance IQ does not move to dismiss Javier's request for catalyst damages in its Motion, Javier's request should proceed past the pleadings stage.

## ARGUMENT

### I. DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENTS DO NOT SUPPORT DISMISSAL

In *Javier IV*, the Court held "[i]f Javier 'assumed' that Assurance was collecting his information in January 2019, he at least had a suspicion of his direct claim under Section 631 as to Assurance," and thus "had constructive notice of the Privacy Policy, which states that Assurance 'may use third party vendors to assist' it with the collection of visitors' personal information, including 'monitoring and analyzing Site activity.'" *Javier IV*, 2023 WL 114225, at *7-8. While Javier never intended to assert a direct liability claim against Assurance IQ in any prior pleading, the TAC—which controls as to any allegations in this case—cures any prior pleading deficiencies. *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("As a general rule, when a plaintiff files an amended complaint, the amended complaint super[s]edes the original, the latter being treated thereafter as non-existent.") (cleaned up). Thus, Javier's claim is timely under the delayed discovery rule and Defendants' statute of limitations arguments should be rejected.

#### A. Javier Sufficiently Alleges The Elements Of The Delayed Discovery Rule

Under California law, the delayed discovery rule "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Javier IV*, 2023 WL 114225, at *7 (cleaned up). To invoke the delayed discovery doctrine, a plaintiff must plead facts to show the "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite

reasonable diligence." *Id.* (cleaned up). "A plaintiff has inquiry notice when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Id.* (cleaned up). "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Id.* (cleaned up).

Here, Javier has alleged entitlement to the delayed discovery rule. *First*, Javier alleges he first discovered "his activities on nationalfamily.com had been recorded in realtime by a third party, ActiveProspect, from the moment Plaintiff accessed the website" "[o]n April 9, 2020, when "counsel for Health IQ provided Plaintiff's counsel with the TrustedForm VideoReplay of Plaintiff's visit to nationalfamily.com." TAC ¶ 61.

*Second*, Javier did not know and had no reason to know his activities on nationalfamily.com were wiretapped by ActiveProspect prior to this time. Any inadvertent references to a wiretapping claim against Assurance IQ have been removed in the TAC, which "super[s]edes the [prior complaint], the latter being treated thereafter as non-existent," and so what Javier may or may not have known about Assurance IQ's conduct is irrelevant. *Rhodes*, 621 F.3d at 1005. As to ActiveProspect, the recording of Javier's website visit "was private and exclusively in ActiveProspect's possession." TAC ¶ 62. Further, "when Plaintiff visited nationalfamily.com in January 2019, he … did not know, nor did he have a reason to know, his information was being collected by anyone—let alone a third party like ActiveProspect—for purposes other than providing Plaintiff with a life insurance quote [such as alleged TCPA verification], and *prior to* the final page of the web form where Plaintiff was ostensibly asked to consent to the collection of his data." TAC ¶ 63 (emphasis in original). Finally, as explained in more detail below, Javier was not on constructive notice of the Privacy Policy, and the Privacy Policy did not disclose ActiveProspect's wiretapping, much less than ActiveProspect's wiretapping occurred *before* Javier clicked the "View My Quote" button. TAC ¶¶ 64-70; *see also* Argument § II.A.2, *infra*. Accordingly, Javier could not have discovered ActiveProspect's wiretapping earlier than April 2020 despite reasonable diligence.

In sum, "[d]rawing all inferences in favor of the [P]laintiff, and [given] that resolution of this question is typically one of fact … [P]laintiff has alleged sufficient facts to avail himself of California's delayed discovery rule," and Javier's claim is therefore timely. *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450 (N.D. Cal. Nov. 13, 2018), *order clarified*, 2019 WL 452027 (N.D. Cal. Feb. 5, 2019) (Illston, J.).

**B. The Privacy Policy Does Not Defeat The Delayed Discovery Rule**

Defendants argue Javier was "put on constructive notice" of Assurance IQ's Privacy Policy, and therefore, Javier was on notice of ActiveProspect's wiretapping "more than a year before filing suit." MTD at 9:3-4, 9:18-19 (cleaned up). That argument is wrong for at least two reasons.

**1. Under Berman, Javier Was Not On Constructive Notice Of The Privacy Policy**

As an initial matter, Judge White's prior conclusion that the design and content of nationalfamily.com was sufficient to put Javier on notice of the Privacy Policy, *Javier I*, 2021 WL 940319, at *3, is no longer good law in light of *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022). In *Berman*, contrary to Defendants' assertions (MTD at 9:13-19), the Ninth Circuit evaluated the exact question before the Court here: "[u]nder what circumstances can the use of a website bind a consumer to a set of hyperlinked 'terms and conditions' that the consumer never saw or read?" *Berman*, 30 F.4th at 853.[1] There, similar to here, the defendants argued that "by clicking on the 'continue' buttons, [the plaintiffs] had agreed to the hyperlinked terms and conditions, including the mandatory arbitration provision." *Id.* at 854. The Ninth Circuit disagreed, holding "the design and content of the webpages [the plaintiffs] visited did not adequately call to their attention [] the existence of the terms and conditions…." *Id.* at 858. Specifically:

[1] That the hyperlink here is to a privacy policy rather than terms and conditions is a distinction without a difference. Courts evaluate constructive notice of either under the same standard. *See, e.g.*, *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1073-1074 (N.D. Cal. 2016) (evaluating whether user had "constructive notice" of "hyperlinked, off-screen terms in the Privacy Policies" under *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), standard); *Nguyen*, 763 at 1178-79 ("[W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to *constructive notice*.") (emphasis added).

> The text disclosing the existence of the terms and conditions on these websites is the antithesis of conspicuous. It is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text. Far from meeting the requirement that a webpage must take steps to capture the user's attention and secure her assent, the design and content of these webpages draw the user's attention away from the most important part of the page.

*Id.* at 856-57 (cleaned up); *see also id.* at 857 ("Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists.").

So too here. The hyperlink to the Privacy Policy "is printed in a tiny [] font considerably smaller than the font used in the surrounding website elements," and "[t]he comparatively larger font used in all of the surrounding text [the larger form fields, the sentence "Last step! Your quote is ready," and the blue "View My Quote" button] naturally directs the user's attention everywhere else." *Id.* at 856-57; *see also* Swenson Decl. Ex. A. Further, "the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements [specifically, the large, blue "View My Quote" button and various form fields] draw the user's attention away from the barely readable critical text." *Berman*, 30 F.4th at 857; Swenson Decl. Ex. A. The fact that the hyperlinks here were blue is not dispositive; the hyperlinks in *Berman* were underlined but the same color as the surrounding text, while the hyperlinks here are blue but not emphasized in any other manner. *Compare Berman*, 30 F.4th at 854; *with* Swenson Decl. Ex. A. In any event, "[s]imply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Berman*, 30 F.4th at 854; *see also Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019) ("I am not convinced that the mere change in color of the hyperlinks, without more, is enough."); *Wilson v. Redbox Automated Retail, LLC*, 2020 WL 1445622, at *6 (N.D. Ill. Mar. 25, 2020) ("Using a different color for the hyperlink from the surrounding text, by itself, is not sufficient to render the hyperlink reasonably conspicuous").

Indeed, the hyperlinks here are *less conspicuous* than those in *Berman*. Whereas the hyperlinks in *Berman* were nestled within a single sentence stating "I understand and agree to the Terms & Conditions, which includes mandatory arbitration and Privacy Policy," the hyperlinks here are several lines down into a lengthy paragraph discussing telemarketing calls. *Compare Berman*, 30 F.4th at 859-61 (Appendix A and Appendix B); *with* Swenson Decl. Ex. A. This lengthy paragraph further diminishes notice of the hyperlinks. *Burzdak v. Universal Screen Arts, Inc.*, 2021 WL 3621830, at *6 (N.D. Cal. Aug. 16, 2021) ("[T]he value of the visual proximity is reduced by the fact that the reference to the Terms of Use is buried in a relatively lengthy paragraph that largely focuses on and promotes free shipping and the VIP Insider program."). And whereas the hyperlinks in *Berman* were above the large "Continue" buttons, the hyperlinks here are *below* the "View My Quote" button. *Compare Berman*, 30 F.4th at 859-61 (Appendix A and Appendix B); *with* Swenson Decl. Ex. A. Again, this diminishes notice beyond what *Berman* allows. *See also Goldstein v. Fandango Media, LLC*, 2021 WL 6617447, at *3 (S.D. Fla. July 27, 2021) ("[It is significant that Fandango's notice regarding the binding nature of its Terms and Policies was placed *beneath* the large, orange … click button, rather than above it … It is not reasonable to expect a user to continue reading below the highly conspicuous purchase button.") (emphasis in original).[2]

In sum, Judge White's conclusion that Javier had "sufficient notice" of the Privacy Policy hyperlink (*Javier I*, 2021 WL 940319, at *3) is no longer good law under *Berman* because *Berman* held that users were not on notice of hyperlinks that were equally as inconspicuous, if not less inconspicuous, than the hyperlinks at issue here. *Berman*, 30 F.4th at 858. Accordingly, Javier was not on constructive notice of the Privacy Policy in January 2019 and therefore could not and did not know of ActiveProspect's wiretapping at that time.

---

[2] To the extent Defendants argue on reply that Javier's visit to a *completely different website* operated by Assurance IQ in April 2019 would put Javier on notice of the Privacy Policy (Swenson Decl. ¶ 8), that argument is without merit. "Repeated use of a website or mobile application does not contribute to constructive notice because users are no more likely to stumble upon inconspicuous hyperlinks on their hundredth or thousandth visit than they are on their first." *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 119-20 (9th Cir. 2020).

**2. The Privacy Policy Did Not Disclose The Wiretapping, And Did Not Disclose The Wiretapping Occurred Before Javier Clicked The "View My Quote" Button**

Even if Javier had constructive notice of the Privacy Policy in January 2019—and he did not—the delayed discovery rule would still apply because the Privacy Policy did not disclose the conduct at issue here. *First*, Javier also respectfully stands by his position that the Privacy Policy does not disclose any sort of wiretapping at all. The Privacy Policy at the time Javier visited the website stated Assurance "collect[s] all of the information described in this Privacy Policy," and that Assurance "may use third party vendors to assist us with," the collection including by "monitoring and analyzing Site activity." Swenson Decl. Ex. B. But, "[a]fter this litigation began, Defendant Assurance IQ changed its Privacy Policy to specifically disclose 'our Websites may also use third-party analytics tools such as … ActiveProspect … to track page content and click/touch, movement, scroll, and keystroke activity.'" TAC ¶ 69. "If the Privacy Policy had adequately disclosed ActiveProspect's involvement during the relevant period here, then there would have been no need to make these updates to the Privacy Policy." *Id*. Accordingly, the Privacy Policy did not disclose any sort of wiretapping when Javier visited nationalfamily.com in January 2019.

*Second*, even if the Privacy Policy disclosed ActiveProspect's wiretapping (and the Privacy Policy did not), the Privacy Policy did not disclose that Javier's communications were collected by ActiveProspect (or any entity for that matter) *before* Javier reached the end of the web form. Although the Court previously distinguished it, Javier respectfully submits that *Franklin* is instructive. In *Franklin*, "[b]etween 2011 and 2015, defendant, which was servicing plaintiff's home mortgage, placed numerous phone calls to Plaintiff." *Franklin*, 2018 WL 5923450, at *1 (cleaned up). "[I]n or around February 2018 … through discovery in other litigation with Defendant," the plaintiff learned "Defendant began recording its conversations with Plaintiff at the outset of its calls prior to disclosing to Plaintiff that the calls were being recorded." *Id.* (cleaned up). The plaintiff sued for violations of CIPA and the defendant moved to dismiss the complaint as time barred. *Id.*, at *2. The court held "plaintiff has adequately pled that he did not discover, or suspect that wrongdoing had occurred, until he received the recorded phone calls from defendant through litigation in February 2018." *Id.*, at *3. Crucially, the court found "[e]ven if plaintiff

became aware during the course of certain calls that those calls were being recorded, *it does not follow that plaintiff should have known or inquired as to whether the calls were being illegally recorded before he gave his consent*." *Id.* (emphasis added). On the contrary, "[o]n calls where plaintiff received a recording disclosure, it is a reasonable inference that plaintiff was not aware that the recording had started before he heard the disclosure and gave consent." *Id.*

The same reasoning applies here. The Privacy Policy states Assurance "collect[s] all of the information described in this Privacy Policy," and that Assurance "may use third party vendors to assist us with the Service," including "monitoring and analyzing Site activity." Swenson Decl. Ex. B. Importantly, however, these statements are made in the present tense. And, when construing language in contracts, "*words used in the present tense do not include the past*." *Krause v. Rarity*, 285 P. 879, 887 (Cal. Dist. Ct. App. 1930), *superseded*, 210 Cal. 644 (1930) (emphasis added); *see also Vaughn v. Tesla, Inc.*, 87 Cal. App. 5th 208, 223 (2023) ("The use of the present-tense 'arise,' rather than the past-tense 'arose' or present-perfect 'have arisen,' suggests that the contract governs only disputes that begin—that arise—in the present or future. The present tense usually does not refer to the past.") (cleaned up); *Castro v. ABM Industries, Inc.*, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) (Gonzalez Rogers, J.) ("[T]he CBAs' use of the present tense 'arise' suggests that the clauses govern present and future*, but not past*, conduct.") (emphasis added); *San Disk Corp. v. Round Rock Research LLC*, 2014 WL 2700583, at *4 (N.D. Cal. June 13, 2014) (Seeborg, J.) ("Reading the present tense language as effectively imposing a past tense requirement—i.e. that the entities were owned or controlled by Toshiba by the time the contract first became effective—is unwarranted."); *Lyddon v. Tuthill*, 2012 WL 676983, at *3 (Cal. Ct. App. Feb. 29, 2012) ("In ordinary language, past events are described in the past tense, present events in the present."); *Russell v. Citigroup, Inc.*, 748 F.3d 677, 679 (6th Cir. 2014) ("The present tense usually does not refer to the past.").

In other words, the Privacy Policy may have disclosed that Javier's communications were collected and monitored by ActiveProspect at the time or after Javier ostensibly assented to the Privacy Policy. But, the Privacy Policy does not disclose Javier's communications were collected and monitored by ActiveProspect *before* he clicked "View My Quote"; in fact, the Privacy Policy

says the opposite, just like the defendant's statements in *Franklin*. *Franklin*, 2018 WL 5923450, at *3 ("On calls where plaintiff received a recording disclosure, it is a reasonable inference that plaintiff was not aware that the recording had started before he heard the disclosure and gave consent."). Thus, Javier could not have been and was not on notice that his communications were intercepted by ActiveProspect in January 2019 based on the plain language of the Privacy Policy.

Javier acknowledges that Judge White previously held "[t]he privacy policy here is phrased in present tense—'we collect' … not 'we will collect'—and thus gives fair notice that Javier consents to actions that may have already taken place." *Javier I*, 2021 WL 940319, at *3 (cleaned up). Judge White cited no caselaw in support of this proposition. Although Javier raised most of the aforementioned authorities indicating the present tense does not apply to past conduct in his Opposition to the Motion to Dismiss the Second Amended Complaint (ECF No. 40 at 6:7-22), Judge White did not address these arguments in his Order Granting the Motion to Dismiss the Second Amended Complaint. *See generally Javier v. Assurance IQ, LLC*, 2021 WL 3669343 (N.D. Cal. Aug. 6, 2021) ("*Javier II*"). Accordingly, Javier respectfully requests the Court reevaluate Judge White's earlier conclusion in light of his failure to consider these various authorities, particularly the California Supreme Court's holding in *Krause* and the California Court of Appeal's holding in *Vaughn*.

## II. DEFENDANTS' "IN TRANSIT" ARGUMENTS LACK MERIT

Defendants argue that liability under section 631(a) depends on whether the communications were intercepted while they were "in transit," and that Javier fails to sufficiently allege that requirement. The Court should reject those arguments for three reasons.

*First*, as the California Supreme Court held in *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985), Defendants "ignore[] the plain language of section 631." Unlike the federal wiretapping law, section 631(a) is written in the disjunctive, imposing liability for eavesdropping on a communication "while [it] is in transit or passing over any wire, line, or cable, *or is being sent from, or received at any place within this state.*" Cal. Penal Code § 631(a) (emphasis added). Thus, CIPA § 631 penalizes third parties who intercept communications "while the communication[s] [are] *either* 'in transit' *or* [are] 'being sent from' … a place within this state."

*Ribas*, 38 Cal. 3d at 360 (emphasis added); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) ("the particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis," because "[s]ection 631's protections extend explicitly to the beginnings and ends of communications"). Accordingly, even if Javier's communications were not intercepted "in transit"—and they were—his communications were "sent from … a place within this state." TAC ¶ 5 ("Mr. Javier was in San Jose when he visited the website").

Defendants are also incorrect when they argue CIPA § 631 is ill-suited to address modern internet communications because the "in transit" requirement is "virtually impossible" to meet. MTD at 12:4-12. On the contrary, the Ninth Circuit explained *in this case* that "Section 631(a) applies to Internet communications." *Javier III*, 2022 WL 1744107, at *1. "[T]he California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (citing *Ribas*, 38 Cal. 3d at 360-61). So, numerous courts have held that CIPA applies to "new technologies" like the internet. *See*, *e.g.*, *id.*, at *20 ("[T]he Court is unpersuaded by Google's argument that CIPA can not apply to email because email did not exist at the time of CIPA's enactment."); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 596 (9th Cir. 2020) (reversing dismissal of CIPA claims based on Facebook's collection of consumers' Internet browsing history).

To support their argument, Defendants rely solely on cases where the plaintiffs alleged that the defendant accessed emails from plaintiffs after they had "already been received in an email account's inbox," *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014), or the defendant simply looked at a website without monitoring any communications occurring in real time, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 873 (9th Cir. 2002). As Judge Chen explained, "the common thread in these cases is that the challenged acquisition occurred *after the transmission was completed*—the e-mail messages at issue were received by the destination server and no further 'movement' of the message was necessary." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1078 (N.D. Cal. 2015) (explaining and distinguishing *NovelPoster* and

*Konop*). *NovelPoster* and *Konop* do not apply where, as here, the technology at issue "is alleged to operate on sent and received communications *during* the transmission process." *Id*.[3]

*Second*, regardless of whether the Court looks at the "in transit" or "is being sent from" language under section 631(a), the allegations here satisfy Rule 8's "short," "plain," and plausible standard. In *Luis v. Zang*, 833 F.3d 619, 624 (6th Cir. 2016), the Sixth Circuit rejected a similar argument to the one Defendants advance here, where the plaintiff alleged a program called "WebWatcher" "recorded all PC activity" including websites visited, webs searches, and "anything typed in real time." And in *Byrd v. Aaron's, Inc.*, 2012 WL 12887775, at *7 (W.D. Pa. 2012), another case involving keystrokes captured over the internet, the district court had "little trouble finding that the acquisition of Plaintiff's keystrokes constitutes an 'interception' under the [federal wiretapping] statute." Finally, in *In re Carrier IQ*, 78 F. Supp. 3d at 1078, Judge Chen held the plaintiffs sufficiently alleged an "in transit" interception because they alleged that the communications occurred "during the transmission process."

Here, as in *Luis*, *Byrd*, and *In re Carrier IQ*, it is at least *plausible* that a recording that captures every keystroke as it is being entered (TAC ¶¶ 38-44) is made in "real time" and while the website communications are either in transit or "being sent from, or received at any place within [California]." Cal. Penal Code § 631(a). The patent for the technology "references 'monitoring' website visitors eleven times." TAC ¶ 23. It also describes collecting the information "during the communication session," not later. *Id.* ¶¶ 25, 61. The patent further notes that once ActiveProspect receives the URL of the monitored webpage, it "begins to monitor the web page for any changes" and "[f]or each change detected, snapshots of the web page are captured." *Id.* ¶ 26. Finally, ActiveProspect's CEO described his company "keeping watch over millions of website interactions each month." *Id.* ¶ 60. As in *In re Carrier IQ*, the TAC contains numerous allegations that the information is collected in "real time," and ActiveProspect advertises its "real time"

[3] Other opinions that Defendants cite are distinguishable for similar reasons. *See*, *e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (plaintiffs' allegations "suggest[ed] that Vizio transmits their data to its Inscape platform *significantly after* the data arrive at their Smart TVs.") (emphasis added).

products. *Id.* ¶¶ 1-2, 4, 18; *see also id.* ¶ 16 ("ActiveProspect provides a variety of "real time" products for companies who engage in telemarketing")

*Third*, Defendants rely on an image in ActiveProspect's patent and declare—with barely any explanation— that it somehow proves that Javier's "in transit" allegations are incorrect. MTD at 13:13-17. This is a factual dispute that cannot be resolved on a 12(b)(6) motion. *See Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 841 (N.D. Cal. 2014) (holding same argument Defendants advance here involved a "premature" factual dispute); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1082 (factual arguments that communications were monitored while in "transitory storage" did not support motion to dismiss); *McAdory v. M.N.S. & Associates, LLC*, 952 F.3d 1089, 1093-94 (9th Cir. 2020) (factual disputes cannot be resolved on a 12(b)(6) motion). Defendants' factual arguments about the patent require the Court to draw inferences in their favor, but that, "of course, is the antithesis of the standard of review applicable to a motion to dismiss." *In re Flash Memory Antitrust Litig*., 643 F. Supp. 2d 1133, 1145 (N.D. Cal. 2009).

Finally, even if the Court took judicial notice of the patent, that does not mean that it may adopt Defendants' disputed interpretation of that patent as true. *See*, *e.g.*, *Farrell v. Boeing Employees Credit Union*, 761 F. App'x 682, 684 n.1 (9th Cir. 2019) (courts may take judicial notice of the existence of documents, but not the truth of their contents); *Techshell, Inc. v. Max Interactive, Inc.*, 2019 WL 4422682 at *2 (C.D. Cal. Aug. 5, 2019) (taking judicial notice of the prosecution history of a patent but noting that the court "does not assume the contents of the documents are true"). Indeed, Defendants ignore the language in the patent describing this diagram: "[i]n particular configurations, the verification server **130** collects information about the visitor **110** and the lead generator **120** *during the communication session* during which the lead generator **120** receives contact information and other relevant information (i.e. lead data) submitted by the visitor **110**." RJN Ex. 1 at 5:19-24 (emphasis added); *see also* TAC ¶¶ 25, 61. Thus, to the extent it can be considered at this stage, the diagram in the patent actually supports Javier's allegations that the wiretapping occurred while Javier's communications were "in transit."

## III. DEFENDANT ASSURANCE IQ IS LIABLE FOR ATTORNEYS' FEES UNDER CAL. CODE CIV. P. § 1021.5

Javier alleges that he is entitled to attorneys' fees under Cal. Code Civ. P. § 1021.5 because this lawsuit "was either the sole motivating factor or a substantial motivating factor" in causing Assurance IQ to disclose ActiveProspect's wiretapping on nationalfamily.com. TAC ¶¶ 72-79. Nowhere in its Motion does Assurance IQ dispute Javier's entitlement to this relief, and Assurance IQ cannot do so for the first time on reply. *See, e.g.*, *Autotel v. Nevada Bell Telephone Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012) ("Arguments raised for the first time in a reply brief are waived.") (cleaned up); *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F. Supp. 3d 905, 916 (N.D. Cal. 2019) ("Defendant raised this argument for the first time in the reply brief, and the Court need not consider arguments raised for the first time in a reply brief.") (cleaned up). Accordingly, Javier's request for catalyst damages should proceed past the pleadings and into discovery.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied. If the Court determines that the pleadings are deficient in any respect, Javier respectfully requests leave to amend to cure any such deficiencies.

Dated: April 6, 2023

**BURSOR & FISHER, P.A.**

By: */s/ Max Roberts*
Max Roberts

Max S. Roberts (*Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

E-mail: ltfisher@bursor.com
jsmith@bursor.com

*Attorneys for Plaintiff*