KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
VIRGINIA GRACE DAVIS (State Bar No. 336732)
grace.davisfisher@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077

Attorneys for Defendants
ASSURANCE IQ, LLC and
ACTIVEPROSPECT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FLORENTINO JAVIER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ASSURANCE IQ, LLC and ACTIVEPROSPECT, INC.,<br><br>Defendants. | Case No. 3:20-cv-02860-CRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date:  June 9, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. Charles R. Breyer<br>Ctrm: 6 – 17th Floor |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. PLAINTIFF AGAIN FAILS TO SAVE HIS CLAIM FROM CIPA'S ONE-YEAR STATUTE OF LIMITATIONS ...........................................................................................3

    A. The Opposition Confirms That Plaintiff Had Constructive Notice Of The Conduct About Which He Complains More Than A Year Before Filing Suit ..........3

    B. *Berman* Does Not Undermine The Court's Conclusion That Plaintiff Had Sufficient Notice Of Assurance's Privacy Policy .......................................................6

    C. Plaintiff Cannot Avoid This Court's Holding That The Privacy Policy Disclosed Defendants' Alleged Conduct .................................................................7

III. PLAINTIFF'S OPPOSITION CONFIRMS THAT HE HAS NOT ALLEGED FACTS PLAUSIBLY SHOWING THAT HIS COMMUNICATIONS WERE INTERCEPTED "IN TRANSIT" UNDER SECTION 631 ......................................................9

IV. PLAINTIFF'S DISCOVERY DEMAND REGARDING HIS REQUEST FOR ATTORNEY'S FEES UNDER CAL. CIV. PROC. CODE § 1021.5 IS MERITLESS ........................................................................................................................11

V. CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Adler v. Community.com, Inc.*,
    No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ............................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................. 11

*Berman v. Freedom Financial Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ............................................................................................ 2, 6, 7

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................................. 10

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
    No. C14-02513 CRB, 2017 WL 912188 (N.D. Cal. Mar. 8, 2017) ................................. 11, 12

*Dodson Int'l Parts, Inc. v. Williams Int'l Co.*,
    12 F.4th 1212 (10th Cir. 2021) ............................................................................................... 9

*Ellis v. J.P. Morgan Chase & Co.*,
    No. 12-CV-03897-YGR, 2016 WL 5815734 (N.D. Cal. Oct. 5, 2016) ................................. 12

*Franklin v. Ocwen Loan Servicing, LLC*,
    2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) ....................................................................... 5

*Garcia v. Enter. Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) .................................................................................... 7

*Garcia v. Haskett*,
    No. C 05-3754 CW, 2006 WL 1821232 (N.D. Cal. June 30, 2006) ..................................... 11

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................................................ 10

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ................................................................................................ 6

*Revitch v. New Moosejaw, LLC*,
    No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................... 10

*Russell v. Citigroup, Inc.*,
    748 F.3d 677 (6th Cir. 2014) .................................................................................................. 8

*Silver v. Stripe Inc.*,
    No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ............................. 7

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017) ...................................................................................7

*In re Vizio, Inc., Consumer Privacy Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................................11

**STATE CASES**

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ............................................................................................................3

*Krause v. Rarity*,
  285 P. 879 (Cal. Dist. Ct. App. 1930) ................................................................................2, 8

**STATE STATUTES**

Cal. Civ. Code § 14 .........................................................................................................................8

Cal. Civ. Proc. Code § 1021.5 ............................................................................................2, 11, 12

Cal. Bus. & Prof. Code § 14 ..........................................................................................................11

Cal. Corp. Code § 11 .....................................................................................................................11

Cal. Fin. Code § 10 .........................................................................................................................8

Cal. Health & Safety Code § 11 .....................................................................................................8

Cal. Penal Code § 631 ........................................................................................................ 1, passim

Cal. Pub. Util. Code § 11 ................................................................................................................8

Cal. Rev. & Tax. Code § 11 ..........................................................................................................11

**FEDERAL RULES**

Fed. R. Evid. 407 ............................................................................................................................7

## I. INTRODUCTION

Plaintiff's Opposition ("Opp.") doubles down on arguments that this Court and Judge White repeatedly rejected, including most recently when this Court dismissed the Second Amended Complaint ("SAC") as time-barred. Dkt. 75 at 15–16. In a final attempt to keep alive an action that began with Plaintiff threatening to assert a fraudulent TCPA claim, Plaintiff regrettably resorts to factual misrepresentations in his Third Amended Complaint ("TAC") and legal arguments in his Opposition that, at best, strain credulity. Nothing in the Opposition, the TAC, or the cases Plaintiff has already put forward without success changes the result. The TAC should be dismissed, this time with prejudice.

This Court held that Plaintiff's Section 631 claim was time-barred because in January 2019, well over a year before filing suit, Plaintiff had constructive notice of Assurance's Privacy Policy. Dkt. 75 at 14–16. Under that policy, Plaintiff therefore had notice not only of the fact that a "third party," as well as Assurance, could be collecting the information he provided, but also of the fact that the third party's collection would be done to "assist" Assurance with "'*monitoring and analyzing* Site activity.'" *Id*. (quoting Privacy Policy) (emphasis added). Plaintiff insists he can now avoid the consequences of this knowledge because he has dropped his quite deliberate assertion (made over the course of repeated filings in the District Court and Ninth Circuit) of being shocked to discover that Assurance collected his information. That changes nothing because Plaintiff still alleges that he did not know or have any reason to know that "*anyone*"—whether Assurance or a third party—collected his information "for purposes *other than* providing Plaintiff with a life insurance quote." TAC ¶ 63 (emphases added). But as this Court has already ruled, Plaintiff was on "inquiry notice as a result of his visit to Assurance's website in January 2019," and "assented to a Privacy Policy that disclosed possible monitoring by third parties like ActiveProspect." Dkt. 75 at 11–15.

The TAC and Opposition provide no basis for this Court to reverse its plain reading of a Privacy Policy that gave Plaintiff notice that Assurance and third parties could collect his information to "monitor[] and analyz[e]" site activity. That conduct is plainly activity "other than providing Plaintiff with a life insurance quote" and the alleged injury at the center of Plaintiff's

current Section 631 claim.  Had Plaintiff exercised reasonable diligence, he could have discovered "Assurance's use of ActiveProspect's software" at any time following his January 2019 website visit.  Dkt. 75 at 15.

Plaintiff's fallback arguments on the statute of limitations recycle contentions that he has raised, and that have been properly rejected, multiple times.  First, Plaintiff repeats his argument that the hyperlink to Assurance's Privacy Policy was not sufficiently conspicuous to put him on notice of the policy.  Opp. at 5–8.  The argument has been repeatedly rejected.  *See* Dkt. 37 at 6 (holding that Plaintiff "had sufficient notice" of the Privacy Policy); Dkt. 48 at 4 (same); *see also* Dkt. 75 at 15 ("Javier assented to a Privacy Policy that disclosed possible monitoring by third parties like ActiveProspect.").  Plaintiff's claim that *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022), changed the law is wrong and inconsistent with Plaintiff's prior position that (notwithstanding his citation of *Berman*), he was "not seek[ing] reconsideration of the Court's earlier decision" regarding the sufficiency of the notice.  Dkt. 60 at 15 n.3.

Second, Plaintiff repeats his failed argument that the Privacy Policy "did not disclose" that the monitoring would include his communications "*before* he clicked 'View My Quote.'"  Opp. at 4, 9.  *Contra* Dkt. 37 at 7 (the Privacy Policy "disclosed the specific conduct at issue here"); Dkt. 48 at 6 (same); Dkt. 75 at 15 (similar).  Plaintiff's contention that the Court should "reconsider[]" these holdings "in light of" a 93-year-old superseded case that Plaintiff previously—and *unsuccessfully*—cited in support of the same argument is meritless.  *See* Opp. at 2 (citing *Krause v. Rarity*, 285 P. 879, 887 (Cal. Dist. Ct. App. 1930), *superseded*, 210 Cal. 644 (1930)).

Plaintiff's remaining arguments that his conclusory allegations suffice to plead that his communications were intercepted "in transit," or while "*being* sent," Cal. Penal Code § 631(a) (emphasis added); or that he has been a "successful party," entitled to attorney's fees, Cal. Civ. Proc. Code § 1021.5, are meritless.

Plaintiff's relitigating issues repeatedly decided against him is troubling enough.  More troubling still is Plaintiff's refusal to withdraw his factual misrepresentations regarding when he claims to have first had the opportunity to learn of the existence of the TrustedForm software.  Plaintiff currently alleges in the TAC that it was only the purported "inundation" of phone calls

from Health IQ starting in February 2020, *more than a year after his January 2019 visit*, that gave him any "reason to take any steps" to discover the TrustedForm video. TAC ¶¶ 58, 62. To be clear, and as this Court held, whether and when Plaintiff received a call from Health IQ is irrelevant to the conclusion that he was on constructive notice more than a year before filing suit, of the conduct about which he complains, barring his claim. Dkt. 75 at 14–15. However, the implication that Plaintiff would not have been contacted by any insurer for *13 months* after his January 2019 visit is not credible, and Plaintiff's silence in response to Defendants' showing on when he actually started receiving calls is deafening. Conspicuously absent from Plaintiff's Opposition is any response to having received 15 calls from Assurance immediately following his January 2019 visit, and 20 more calls in response to his April 2019 visit to an affiliated Assurance website. *See* Mot. to Dismiss TAC at 4–5. Rather than respond or dismiss this action knowing full well that he was contacted immediately following each of his January and April 2019 visits, Plaintiff has chosen to press forward with the allegation he was not contacted until February 2020. Plaintiff's conduct continues a pattern of misrepresentation that started with a baseless threat to file a fraudulent TCPA class action, notwithstanding that he expressly consented to be contacted about the quote he requested. On this motion, Plaintiff's TAC should be dismissed, with prejudice. Defendants reserve the right to seek appropriate relief regarding Plaintiff's allegations in the TAC by separate motion.

## II.    PLAINTIFF AGAIN FAILS TO SAVE HIS CLAIM FROM CIPA'S ONE-YEAR STATUTE OF LIMITATIONS

### A.    The Opposition Confirms That Plaintiff Had Constructive Notice Of The Conduct About Which He Complains More Than A Year Before Filing Suit

This Court held that Plaintiff had constructive notice of Defendants' alleged conduct in January 2019, when he consented to a Privacy Policy that "disclosed possible monitoring by third parties like ActiveProspect." Dkt. 75 at 14–15. The Court thus held that Plaintiff could not invoke the delayed discovery doctrine to avoid CIPA's one-year statute of limitations. *Id.*; *see Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (a plaintiff claiming delayed discovery must "specifically plead facts to show … the inability to have made earlier discovery despite reasonable diligence" (citation omitted)).

Far from "fix[ing]" the SAC's pleading deficiencies, Opp. at 1, the TAC repeats the same allegations that confirm Plaintiff in January 2019 had constructive notice about the very conduct that is the basis for his Section 631 claim. Plaintiff again alleges that he visited Assurance's website in January 2019, SAC ¶ 3, TAC ¶ 3; that he completed a webform to request a life insurance quote, SAC ¶¶ 38–44, TAC ¶¶ 39–45; and that at the end of that webform, he clicked "View My Quote," thereby consenting to (and thus receiving notice of) Assurance's Privacy Policy, SAC ¶ 45–48, TAC ¶ 46–48. The bases for this Court's holding that Plaintiff "assented to [the] Privacy Policy," which "disclosed possible monitoring by third parties like ActiveProspect," over a year before filing suit remain unchanged. Dkt. 75 at 15.

Plaintiff nevertheless insists that the result should be different because he no longer "inadvertent[ly]" alleges that *Assurance* directly violated Section 631 by collecting his answers. Opp. at 1, 3–4. As an initial matter, Plaintiff's assertion that he "never intended" to allege a direct Section 631 violation by Assurance, *id*. at 1, is disingenuous. Plaintiff maintained that claim in the District Court and the Ninth Circuit for nearly three years. His attempt to walk away from his repeated factual allegations that he was "shocked" and "surprised" to discover that Assurance was collecting information he voluntarily submitted to a site for obtaining an insurance quote reflects a lack of candor. *See, e.g.*, First Am. Compl. ¶ 47; SAC ¶ 52.

More important, as Plaintiff now concedes, the allegation that he purportedly knew all through the website visit that Assurance was collecting his information solely for the purpose of providing him an insurance quote, TAC ¶ 63, does not save his time-barred claim. Far from it. As this Court (and Judge White) repeatedly held, Plaintiff in January 2019 had constructive notice of "possible monitoring by third parties like ActiveProspect." Dkt. 75 at 14–15. "He was therefore on notice that Assurance would collect his information and it 'may use third party vendors to assist' in that process." *Id.* at 15.

This Court previously recognized that Plaintiff's constructive notice extended to both his direct claim against Assurance and his direct claim against the third party (ActiveProspect). *See* Dkt. 75 at 14–15. Plaintiff squarely alleges that he "did not know" that "*anyone*"—Assurance or the third party—was collecting his information "for purposes *other than* providing [him] with a

life insurance quote." TAC ¶ 63 (emphases added).  But as this Court and Judge White held, the Privacy Policy put Plaintiff on notice that his information was being collected for more than that purpose:  that information also was being collected (including by third parties Assurance had the right to use) for the purpose of "monitoring and analyzing site activity." Dkt. 75 at 14–15 (quoting Privacy Policy); *see* Dkt. 37 at 7 (the Privacy Policy "disclosed the specific conduct at issue here").  Plaintiff has never alleged that this "monitoring and analyzing" was done for purposes of providing him with a life insurance quote.  *See* TAC ¶ 63.  To the contrary, Plaintiff has made clear that "ActiveProspect did *not* monitor and record [his] internet activity to provide an insurance quote." Ninth Circuit Opening Br. at 20–21 n.6 (emphasis added); *see* Dkt. 60 at 14 (contending that "monitoring and analyzing" could include activities beyond those necessary to provide an insurance quote, such as "monitoring the volume of website traffic, or processing other information such as demographic usage").  Plaintiff has consistently claimed that such "monitoring" itself "violated [CIPA] § 631(a)." Dkt. 60 at 1.  Thus, by Plaintiff's own admission, the "monitoring and analyzing" disclosed in the Privacy Policy, *see* Dkt. 37 at 6–7; Dkt. 75 at 15, went beyond what Plaintiff believed "anyone" was authorized to do.  TAC ¶ 63.  Plaintiff thus knew of his injury then and there and was put on inquiry notice to discover information that, in the exercise of reasonable diligence, he could have discovered in January 2019.

    Tellingly, the only delayed discovery case Plaintiff cites is one this Court held is inapposite.  Opp. at 1, 5, 7–9 (citing *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450 (N.D. Cal. Nov. 13, 2018)); Dkt. 75 at 15 (*Franklin* does not control here).  Plaintiff admits that "the Court previously distinguished" *Franklin*, Opp. at 8, but insists the case nevertheless "applies here." *Id.* at 8–9.  But as this Court recognized, "[t]he very nature of plaintiff's allegations" in *Franklin* was that the alleged "recordings were done surreptitiously." Dkt. 75 at 15 (quoting *Franklin*, 2018 WL 5923450, at *3).  Plaintiff cannot "plausibly allege that Assurance 'surreptitiously' hid its use of *ActiveProspect's software* when the Privacy Policy discloses that it 'may use third party vendors to assist' with 'monitoring and analyzing Site activity.'" *Id.* (emphasis added) (quoting Privacy Policy).  A fortiori, ActiveProspect's conduct was not surreptitiously hidden from Plaintiff either.  Plaintiff's reliance on *Franklin* remains unavailing.

### B.     *Berman* Does Not Undermine The Court's Conclusion That Plaintiff Had Sufficient Notice Of Assurance's Privacy Policy

Plaintiff also contends that the Ninth Circuit's 2022 decision in *Berman* overruled Judge White's holding that the hyperlink to Assurance's Privacy Policy was sufficiently conspicuous to put him on notice of the policy.  Opp. at 5–7 (citing *Berman*, 30 F.4th 849); *see* Dkt. 37 at 6 ("[T]he clean and uncluttered page by which [Plaintiff] affirmatively consented, while having full ability and immediate opportunity to read the privacy policy, shows that he had sufficient notice" of the policy); *see also* Dkt. 48 at 4 (similar).  But Plaintiff effectively admitted that *Berman* did not affect—much less overrule—Judge White's holding.  Plaintiff cited *Berman* in his opposition to Defendants' Motion to Dismiss his SAC, but admitted that he was "not seek[ing] reconsideration of" Judge White's decision.  Dkt. 60 at 15 n.3.  And in any event, this Court itself subsequently held that Plaintiff had sufficient notice of Assurance's Privacy Policy.  Dkt. 75 at 11, 14–15.  Plaintiff does not contend that *Berman*—which was decided nine months before this Court's decision—somehow disturbed the Court's holding.  *See* Opp. at 5–7.

Plaintiff also does not and cannot contend that *Berman* announced a new standard for notice.  *See* Opp. at 2, 5–7.  The court in *Berman* applied existing law to determine whether the plaintiffs had entered into enforceable agreements to arbitrate their claims, when the terms of the agreements were accessible only via hyperlinks in font "so small that it is barely legible to the naked eye."  *Berman*, 30 F.4th at 856–57 (applying standard announced in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014)).  Judge White applied the same law when he held that the "clean and uncluttered page by which Javier affirmatively consented, while having full ability and immediate opportunity to read the privacy policy, show[ed] that he had sufficient notice" of the Privacy Policy here.  Dkt. 37 at 6 (citing *Nguyen*, 763 F.3d at 1176).

Plaintiff's insistence that "the hyperlinks here are *less conspicuous* than those in *Berman*," Opp. at 7, is wrong.  A comparison between the two hyperlinks in *Berman* and the hyperlink to Assurance's Privacy Policy is telling.  *See* Appendix A–C, pp. 13–15 *infra*.  As those images demonstrate, the hyperlinks in *Berman* were the "antithesis of conspicuous":  they appeared in "tiny gray font" amidst larger text that "direct[ed] the user's attention everywhere else."  *Berman*,

30 F.4th at 856–57.  Here, in contrast, the hyperlink to Assurance's Privacy Policy appears on a "clean and uncluttered page," Dkt. 37 at 6, and is displayed in blue font, "the color typically used to signify the presence of a hyperlink." *Berman*, 30 F.4th at 854.  *Berman* confirms Judge White's and this Court's previous holdings that Plaintiff had sufficient notice of the Privacy Policy here.

### C. Plaintiff Cannot Avoid This Court's Holding That The Privacy Policy Disclosed Defendants' Alleged Conduct

Plaintiff does not contest that this Court and Judge White have now held three times that the Privacy Policy "disclosed the specific conduct at issue here."  Dkt. 37 at 7; Dkt. 48 at 6 (same); Dkt. 75 at 15 (the Privacy Policy "disclosed possible monitoring by third parties like ActiveProspect").  Rather, Plaintiff argues that because Assurance updated its Privacy Policy at some point "[a]fter this litigation began," this Court's and Judge White's holdings are wrong.  Opp. at 8 ("If the Privacy Policy had adequately disclosed ActiveProspect's involvement during the relevant period here, then there would have been no need to make these updates to the Privacy Policy." (quoting TAC ¶ 69)).  But Plaintiff cites no authority to support imposing liability solely because Assurance updated a Privacy Policy that Judge White and this Court have repeatedly held was sufficient.[1]  *See id.*  Indeed, courts have held time and again that less detailed privacy policies established consent to defeat CIPA and Wiretap Act claims.[2]

---

[1] Plaintiff's allegations also run afoul of Fed. R. Evid. 407, which prohibits relying on evidence of subsequent remedial measures to establish liability.

[2] *E.g.*, *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (court held CIPA claim barred by language Instacart's "partners"— without limitation— "use various technologies" to "collect information about your online activity over time and across different websites or online services"; language "plainly disclose[d] that partners like Stripe may install tracking software to collect data concerning users' activities across websites") (internal quotation marks and citations omitted); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1130, 1136 (N.D. Cal. 2015) (complaint claimed that defendants were sharing plaintiff's information with "'a third party data analytics company' which allegedly uses consumers' personal information to 'compile comprehensive profiles of consumers' entire digital lives'"; court held that the privacy policy—which simply stated "we may share your personal information with our agents, representatives, contractors and service provider"—"contradict[ed] Plaintiff's claim that he was unaware of and did not consent to the transfer of his personal information to a third party"); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (plaintiffs argued that Facebook's privacy policy was "too 'vague' and 'broad'" to

1    Plaintiff also argues that even if the Privacy Policy "disclosed that [his] communications were collected and monitored by ActiveProspect at the time or after [he] ostensibly assented to the Privacy Policy," it did "not disclose [that his] communications were collected and monitored by ActiveProspect *before* he clicked 'View My Quote.'" Opp. at 8–10.  Plaintiff's argument relies on the same inapposite cases Judge White and this Court already rejected in holding that the Privacy Policy disclosed *all* of the "specific conduct at issue here." Dkt. 37 at 7; Dkt. 48 at 6 (same); Dkt. 75 at 15 (similar).

Perhaps most strikingly, Plaintiff claims that because Judge White's Order granting Defendants' first Motion to Dismiss the SAC did not explicitly address some of the cases Plaintiff cited in opposing that motion—including a superseded case decided over 90 years ago—the Court should now "reevaluate" that Order.  *See* Opp. at 9–10 (citing *Krause*, 285 P. 879); *see also* Dkt. 40 at 6 (same); Dkt. 48 at 6 (holding that the Privacy Policy "disclosed the specific conduct at issue here").  But *Krause* is irrelevant:  it applied statutory rules of interpretation that do not control whether Plaintiff had constructive notice of his claims here.  *See Krause*, 285 P. at 887 (applying Cal. Civ. Code § 14).  Indeed, the California Legislature has almost always established the opposite presumption in its own rules of statutory interpretation.  *See, e.g.*, Cal. Health & Safety Code § 11 ("The present tense includes the past and future tenses; and the future, the present."); Cal. Bus. & Prof. Code § 14; Cal. Corp. Code § 11; Cal. Fin. Code § 10; Cal. Pub. Util. Code § 11; Cal. Rev. & Tax. Code § 11.  To the extent principles of statutory interpretation inform the question of constructive notice here, they dictate that the Privacy Policy's use of the present tense included the past.

Plaintiff's remaining cases simply note a general presumption about tense.  *See* Opp. at 9; *see also, e.g.*, *Russell v. Citigroup, Inc.*, 748 F.3d 677, 679 (6th Cir. 2014) ("The present tense *usually* does not refer to the past." (emphasis added)).  That general presumption does not hold if

---

cover sensitive medical information when it stated, "We collect information when you visit or use third-party websites . . . ."; court rejected plaintiffs' argument, noting that while "'information' might be broad," a "contractual term is not ambiguous just because it is broad," and the "[p]olicy discloses the precise conduct at issue in this case").  These cases are even more persuasive given that the question here is not whether Plaintiff *consented* to Defendants' conduct, but whether he merely had *constructive notice* of it.

context dictates otherwise.  *See, e.g.*, *Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, 12 F.4th 1212, 1225 (10th Cir. 2021) (distinguishing *Russell* and explaining that *Russell* involved "extrinsic evidence" showing that the parties did not "underst[and] the agreement to cover" a past dispute). Here, the Privacy Policy specifically identified information that Assurance collected—such as date of birth, height, and weight—that Plaintiff had entered before he reached the "View My Quote" webpage.  TAC ¶¶ 42–43.  That clearly indicated that the Privacy Policy was describing not just actions Plaintiff might take in the future, but also his past activity on the site.  The general (and inapposite) presumption on which Plaintiff relies offers no basis for the Court to depart from Judge White's and its own prior holdings that the Privacy Policy disclosed all of the conduct at issue here.

Plaintiff's Opposition reinforces this Court's holding that he had constructive notice of Defendants' alleged conduct over a year before he filed suit.  Dkt. 75 at 15–16.  Plaintiff's Section 631 claim must again be dismissed as barred by CIPA's one-year statute of limitations.  *See id.*

### III. PLAINTIFF'S OPPOSITION CONFIRMS THAT HE HAS NOT ALLEGED FACTS PLAUSIBLY SHOWING THAT HIS COMMUNICATIONS WERE INTERCEPTED "IN TRANSIT" UNDER SECTION 631

Plaintiff attempts to rewrite Section 631 by claiming that "even if [his] communications were not intercepted 'in transit,'" he need only allege that they "were 'sent from … a place within this state.'"  Opp. at 11 (quoting TAC ¶ 5).  That is wrong.  Section 631 encompasses only communications that are intercepted while they are either "in transit" or "*being* sent from, or received" in, California.  Cal. Penal Code § 631(a) (emphasis added).  Plaintiff's reading of Section 631 would nullify the statute's text and radically expand liability to *any* communication, regardless of when it was sent, so long as it originated in California.  *See* Opp. at 11.  Such an expansion of liability would be unprecedented.

Other courts have rejected Plaintiff's proposed reading of Section 631.  For example, in *Adler v. Community.com, Inc.*, No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021), the court recognized that reading "section 631 to prohibit access to any communications received in California . . . would be an interpretation of extraordinary breadth."  *Id*. at *4.  Rather, Section 631(a) "imposes liability for accessing a message '*being* sent from, or received' in

California." *Id.* (quoting § 631(a)) (dismissing the plaintiff's Section 631 claim because "there [was] no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received"). Similarly, in *Mastel v. Miniclip SA*, the court recognized that Section 631(a) applies only to "a communication that is 'in transit … or is being sent from, or received at any place within' California." 549 F. Supp. 3d 1129, 1136–37 (E.D. Cal. 2021) (citation omitted) (dismissing the plaintiff's Section 631 claim because the plaintiff failed to plead facts showing that the defendant had intercepted "one of his communications while it was still in transit, i.e., before it reached its intended recipient").

Plaintiff's reliance on *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019), is misplaced. *See* Opp. at 11. *Revitch* itself recognized that Section 631 "prohibit[s] eavesdropping of a message 'while [it] is in transit or passing over any wire, line, or cable, or *is being sent from, or received at any place within this state*." *Revitch*, 2019 WL 5485330, at *2 (quoting Cal. Penal Code § 631(a)). The court did not say that Section 631 could extend to the interception of any message sent from or received in California, without regard to the interception occurring *while* the message was *being* sent or received. *See id.*

Similarly, Plaintiff's citation to *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1078 (N.D. Cal. 2015), only confirms that his allegations are insufficient. *See* Opp. at 11–13. Unlike ActiveProspect's TrustedForm software, the software in *Carrier IQ* was alleged to intercept communications "*during* the transmission process," as demonstrated by, among other things, a YouTube video showing that the software "was 'intercepting incoming SMS text messages' and 'intercepting outgoing web queries and search terms.'" *Carrier IQ*, 78 F. Supp. 3d at 1078. The Court held that the "'incoming' and 'outgoing' qualifiers impl[ied] interception during transmission." *Id.* The plaintiff's detailed and technical allegations in *Carrier IQ* stand in stark contrast to Plaintiff's conclusory allegations regarding TrustedForm. Opp. at 12; TAC ¶¶ 25, 61.

Plaintiff also ignores that the TrustedForm patent itself contradicts his allegations. Opp. at 13. As Defendants explained, the patent illustrates that ActiveProspect simply does not "halt the transmission of" a website visitor's communications with Assurance. *See* Mot. to Dismiss TAC at 13–14. Rather than respond to Defendant's explanation, Plaintiff echoes the same generalized

language in the patent regarding ActiveProspect's "monitoring" and collection of information "during the communication session." Opp. at 12. But "monitoring" website visitors and collecting information at some point "during the communication session" are not the same as intercepting a communication *while it is in transit*. *See* Cal. Penal Code § 631(a); *see also* Mot. to Dismiss TAC at 13–14. Indeed, courts have held that more particularized allegations regarding interception "in real time" and "during transmission" are still insufficient to allege an interception in transit. *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 & n.9 (C.D. Cal. 2017); *Garcia v. Haskett*, No. C 05-3754 CW, 2006 WL 1821232, at *4 (N.D. Cal. June 30, 2006) (dismissing Wiretap Act claim where "Plaintiff allege[d] that her unread email was intercepted by Defendant while 'still in transit to Plaintiff's email box, i.e., accessed while in temporary, transient' storage").

Plaintiff's Opposition confirms his failure to allege that ActiveProspect intercepted his communications with Assurance while they were "in transit" or "being sent from, or received at any place within this state." Cal. Penal Code § 631(a). Plaintiff has thus independently failed to state a Section 631 claim.

### IV.  PLAINTIFF'S DISCOVERY DEMAND REGARDING HIS REQUEST FOR ATTORNEY'S FEES UNDER CAL. CIV. PROC. CODE § 1021.5 IS MERITLESS

Plaintiff also contends that because Defendants' Motion to Dismiss did not "dispute [his] entitlement to" damages under Cal. Civ. Proc. Code § 1021.5, he must necessarily be granted discovery on his request. *See* Opp. at 14. Plaintiff's demand is meritless. At the motion to dismiss stage, the only relevant question is whether Plaintiff has pleaded "enough facts to state *a claim to relief* that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). Plaintiff asserted only one claim for relief: Section 631. The TAC does not assert a cause of action under Section 1021.5. *See* TAC ¶¶ 72–79. Defendants thus could not, and did not, move to dismiss Plaintiff's amorphous damages "request." *See* Opp. at 14.

Plaintiff's demand for fees also contravenes Section 1021.5 for a "number of reasons." *Citizens for Free Speech, LLC v. Cnty. of Alameda*, No. C14-02513 CRB, 2017 WL 912188, at *10 (N.D. Cal. Mar. 8, 2017) (Breyer, J.) (denying motion for attorney's fees under Section

1021.5).  Among other things, Plaintiff has not been a "successful party" under the statute, as he has not shown that his repeatedly dismissed complaints "vindicate[d] an important right so as to justify an attorney fee award under section 1021.5."  *See Ellis v. J.P. Morgan Chase & Co.*, No. 12-CV-03897-YGR, 2016 WL 5815734, at *4 (N.D. Cal. Oct. 5, 2016) (denying motion for attorney's fees under Section 1021.5), *aff'd sub nom. Ellis v. JPMorgan Chase & Co.*, 752 F. App'x 380 (9th Cir. 2018).  Indeed, the only basis for Plaintiff's fee request is that Assurance updated its Privacy Policy and added a "banner" to its website disclosing the third-party monitoring that both Judge White and this Court held was *already disclosed* in Assurance's Privacy Policy.  TAC ¶¶ 73–75; Dkt. 37 at 7; Dkt. 48 at 6; Dkt. 75 at 15.  Plaintiff does not and cannot allege that Assurance's revisions conferred any benefit—much less a "significant benefit"—on the public.  Dkt. 37 at 7; Dkt. 48 at 6 (same); Dkt. 75 at 15 (similar).  Nor has Plaintiff otherwise satisfied any of the requirements of Section 1021.5.  *See Citizens for Free Speech*, 2017 WL 912188, at *10.  The Court should reject Plaintiff's untimely and unfounded discovery demand.

## V. CONCLUSION

Plaintiff has now filed three amended pleadings in response to Defendants' motions and has failed each time to allege a single plausible claim for relief.  Defendants respectfully request that the Court dismiss the TAC with prejudice.

DATED:  April 20, 2023                              MUNGER, TOLLES & OLSON LLP

By:     */s/ Kelly M. Klaus*
           KELLY M. KLAUS

*Attorneys for Defendants*

**Appendix A: *Berman* Webpage #1**






*See Berman*, 30 F.4th at 859–60.

<h3 style="text-align:center">Appendix B: *Berman* Webpage #2</h3>

[Screenshot of Berman webpage #2 showing a "Shipping Information Required" form with Target $100 gift card image, fields for First Name, Last Name, Street Address, ZIP Code, Telephone, Date of Birth, Select Gender (Male/Female), terms and conditions acknowledgment, green "Continue »" button, and program requirements text from National Consumer Center.]

*See Berman*, 30 F.4th at 861.

**Appendix C: Assurance Webpage**



*See* TAC ¶ 45.